```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------X
                              :
LISA MIRO                     :    Civil No. 3:20CV00346(SALM)
                              :
v.                            :
                              :
CITY OF BRIDGEPORT            :    August 11, 2022
                              :
------------------------------X
```

**RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. #115]**

Plaintiff Lisa Miro ("plaintiff" or "Miro") brings this action pursuant to Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA") against defendant the City of Bridgeport ("defendant" or "the City"). Plaintiff alleges generally that she was subjected to sexual harassment, creating a hostile work environment, and that she was terminated from her employment with the City in retaliation for complaining about the harassment. See generally Doc. #43 (Second Amended Complaint). Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint ("SAC") in its entirety [Doc. #115]. Plaintiff has filed a memorandum in opposition to the Motion to Dismiss [Doc. #118], to which defendant has filed a reply [Doc. #121]. For the reasons stated herein, the Motion to Dismiss [**Doc. #115**] is **GRANTED** as to Count Four and Count Five of the SAC, and **DENIED** as to all other counts.

1

I.     **PROCEDURAL BACKGROUND**

Plaintiff filed this action, proceeding in forma pauperis, as a self-represented party on March 13, 2020. See Doc. #1. Upon initial review, all claims other than plaintiff's "hostile work environment sexual harassment claims under Title VII of the Civil Rights Act and the Connecticut Fair Employment Practices Act" were dismissed, without prejudice. Doc. #16.[1] On June 12, 2020, plaintiff, still self-represented, filed an Amended Complaint. See Doc. #17. Defendant filed a motion to dismiss the Amended Complaint on September 1, 2020. See Doc. #26. After a brief conference with the parties, the Court granted plaintiff an opportunity to file a Second Amended Complaint. See Doc. #39.

Plaintiff filed the SAC on February 16, 2021. See Doc. #43. That is now the operative complaint. Defendant moved to dismiss only Counts Four and Five of the SAC on March 9, 2021. See Doc. #45. On September 10, 2021, counsel appeared for plaintiff. See Doc. #62. This action was transferred to the undersigned on October 15, 2021. See Doc. #66.

The Court invited newly appearing counsel for plaintiff to

---

[1] The original Complaint named as a defendant Attorney Thomas W. Bucci, who had represented plaintiff in administrative proceedings related to the issues raised in this action. See Doc. #1 at 1. All claims against Attorney Bucci were dismissed on initial review, see Doc. #14 at 24-25, and plaintiff has not reasserted any such claims. The only defendant in this matter now is the City of Bridgeport.

2

file a supplemental response to the motion to dismiss, but counsel elected to rely on the plaintiff's objection filed as a self-represented party. On March 29, 2022, the Court conducted oral argument on the motion to dismiss. The Court ruled at that hearing as follows:

> Counts Four and Five of the Second Amended Complaint may proceed only as to plaintiff's claim that she was terminated in retaliation for "her complaints regarding the sexual harassment from John Ricci[.]" Doc. #43 at 8. Plaintiff's claims in Counts Four and Five that she was retaliated against for "filing her protected action with the Connecticut Labor Board[,]" see id., and for "her complaints regarding ... the failure of the Defendant to fulfill its promises with regard to salary, benefits, and unionization[,]" see id., are hereby **DISMISSED**.

Doc. #113.

Defendant filed the instant Motion to Dismiss the SAC, as limited by the Court's ruling as to Counts Four and Five, on April 27, 2022. See Doc. #115.

## II.  FACTUAL ALLEGATIONS

The Court accepts the well-pled allegations of the SAC as true for purposes of this ruling, as it must in considering a motion pursuant to Rule 12(b)(6). The Court recites here only those allegations necessary to resolution of the motion.

Plaintiff was hired by the City in or about June 2016. See Doc. #43 at 2. Beginning in or about February 2016, and continuing throughout the term of her employment with the City, plaintiff was "pursu[ed] ... in an inappropriate sexual manner"

3

by "John Ricci, [an] agent and/or employee of the Defendant City of Bridgeport[.]" Id. Plaintiff specifically alleges the following conduct:

> a. Prior to being hired, between the dates of February 7th and April 26th, 2016 the Plaintiff received numerous text messages from John Ricci inviting her out to celebrate and saying such things as "hope you agree to spend more time with me in the future, I need you in my life."
>
> b. Within one week of hiring on or about June 19, 2016 John Ricci requested that Plaintiff join him on a vacation to Florida so that they might "spend time alone."
>
> c. John Ricci repeatedly made comments including but not limited to, the Plaintiffs body, hair, "butt", and softness of skin.
>
> d. John Ricci informed Plaintiff by means of accounts of his other female companions that "favors" would likewise lead to financial benefits from Mr. Ricci.
>
> e. John Ricci inappropriately, outside work hours, at a work function at "Testo's" explained how he had plied other female employees and individuals with gifts and extended the offer to the Plaintiff that he would drape me in gold if I was his.
>
> f. In June of 2017 John Ricci made a physically humiliating comment publicly about the Plaintiff's butt getting larger than it was previously and continued to say he was still interested in her despite this fact.
>
> g. He also stated more than once that he was interested in the Plaintiff becoming his "companion" to go to movies, dinner, and to cuddle.
>
> h. In June 2017 John Ricci requested several times over the course of the day for Plaintiff to join him in going to see the new Wonder Woman movie, the Plaintiff felt uncomfortable by the prospect, but being fearful of Ricci's response, chose to evade the question.

> i. John Ricci explicitly stated to the Plaintiff that he could "breathe through his ears for hours." The Plaintiff understands this comment upon information and belief that this is a commonly used phrase in society to refer to a man's skill level at performing oral sex upon a female companion.
>
> j. On or about July 3, 2017 John Ricci went to the Plaintiff's office and puckered up his lips, he then blew a kiss to her while she sat at her desk.
>
> k. In July of 2017 at a work event at Testo's with other employees present John Ricci looked at the Plaintiff approaching the table, indicated the only available seat, which was next to him, visually and humiliatingly looked the Plaintiff up and down, and then mouthed an explicit comment of "what he could do with that."

Id. at 2-3 (sic).

"The Plaintiff denied John Ricci's requests unwelcome sexual advances, but John Ricci did not cease aforementioned advances." Id. at 6 (sic).

Plaintiff asserts that Ricci's "sexual advances were unwelcome" and that she not only "asked John Ricci to stop" but she also "reported the conduct to Chief-of-Staff to the Mayor of Bridgeport[.]" Id. at 5. Specifically, plaintiff alleges that she "told Chief-of-Staff to the Mayor of Bridgeport, an employee and/or agent, of the Defendant City of Bridgeport about the sexual harassment and its effect on her workplace at a lunch." Id. at 3-4.

The City terminated plaintiff's employment by "giving the Plaintiff a Conclusion of Employment form on September 21, 2017." Id. at 8. Plaintiff asserts that "John Ricci himself was

5

who handed the Conclusion of Employment to the Plaintiff, demonstrating his hiring and firing power over the Plaintiff as a 'supervisor' and to further humiliate her." Id. at 4. "Plaintiff was further humiliated, harassed, and caused mental and emotional distress when John Ricci handed the Plaintiff her Termination of Employment." Id. at 8.

### III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); accord Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854 (2d Cir. 2021). In reviewing such a motion, the Court "must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor." Kaplan, 999 F.3d at 854 (citations omitted). In short, the Court's "role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint -- apart from any of its conclusory allegations -- alleges enough facts to state a plausible claim for relief." Taylor Theunissen, M.D., LLC v. Utd. HealthCare Grp., Inc., 365 F. Supp. 3d 242, 246 (D. Conn. 2019).

"[W]hile this plausibility pleading standard is forgiving, it is not toothless. It does not require [the Court] to credit

6

legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement." Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (citation and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (citations and quotation marks omitted).

**IV.  DISCUSSION**

The City moves to dismiss the SAC in its entirety. See Doc. #115. The SAC is brought in five Counts. See Doc. #43. Count One alleges that defendant violated Title VII when it subjected plaintiff to a "hostile work environment[.]" Id. at 1 (capitalization altered). Count Two asserts that defendant violated CFEPA when it subjected plaintiff to a hostile work environment. See id. at 4. Count Three asserts a claim for "quid pro quo sexual harassment[.]" Id. at 6 (capitalization altered). Count Four asserts that defendant retaliated against plaintiff in violation of Title VII. See id. at 7. Count Five alleges that defendant retaliated against plaintiff in violation of CFEPA. See id. at 9.

    **A.  Hostile Work Environment**

Plaintiff brings hostile work environment claims under both Title VII and CFEPA, alleging that her "workplace was permeated with discriminatory intimidation, ridicule, lewd comments and

7

insults as here in above stated and created an abusive working environment." Id. at 3 (sic).

> To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive -- that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citation, quotation marks and alterations omitted). The same standard applies to hostile work environment claims brought under CFEPA. See Martinez v. Conn., State Libr., 817 F. Supp. 2d 28, 55 (D. Conn. 2011) ("The standards governing discrimination, retaliation, and hostile work environment under CFEPA are the same as those governing Title VII."); Payne v. PSC Indus. Outsourcing, Ltd. P'ship, 139 F. Supp. 3d 536, 549 (D. Conn. 2015) ("A hostile work environment claim under CFEPA is examined under the same standards as those governing a hostile work environment claim under Title VII."); Brittell v. Dep't. of Corr., 717 A.2d 1254, 1265-66 (Conn. 1998) (applying the same standards to a hostile work environment claim under CFEPA).

Defendant challenges only the first element of this claim, arguing that plaintiff's "allegations of sexual harassment, although boorish and inappropriate, do not rise to the level of behavior necessary for a reasonable jury to conclude they were

8

sufficiently severe or pervasive to alter the condition of plaintiff's employment[.]" Doc. #115-1 at 4 (capitalization altered). The Court disagrees.

> There is no "mathematically precise test," ... for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment. Harris[ v. Forklift Sys., Inc.], 510 U.S. [17,] 22-23 [(1993)]. Instead, courts must assess the totality of the circumstances, considering elements such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.

Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).

The SAC explicitly asserts that the "instances" of Ricci's alleged harassment and inappropriate conduct "included" numerous incidents spanning the entire period of plaintiff's employment with the City. Doc. #43 at 2. Ricci's lewd comments and conduct were both frequent and continuous; the SAC states that he "repeatedly made comments" about her appearance and that he "stated more than once that he was interested in" making plaintiff his "companion[.]" Id. at 2-3.

Ricci's alleged conduct was also severe, being often explicitly sexual in nature; the SAC states that Ricci made comments to plaintiff regarding his "skill level at performing oral sex upon a female companion[,]" "puckered up his lips, he then blew a kiss to" plaintiff, and "visually and humiliatingly

9

looked the Plaintiff up and down, and then mouthed an explicit comment of 'what he could do with that[.]'" Id. at 3.

Plaintiff also expressly alleges that Ricci's conduct was humiliating; she asserts that he "made a physically humiliating comment publicly about" her body, and that he "visually and humiliatingly looked the Plaintiff up and down[]" at a work event. Id. at 2-3. The SAC further states that Ricci's advances made her "uncomfortable" and that his conduct "made her distressed, anxious, and humiliated." Id. at 3.

Finally, the SAC expressly alleges:

> The conduct had the purpose and/or effect of substantially interfering with the Plaintiff's work performance to the extent that Plaintiff had to seek counseling;
>
> []The conduct created an intimidating, hostile and offensive work environment to the extent that Plaintiff did not feel protected or comfortable and felt humiliated; [and]
>
> []The Plaintiff felt humiliated, mental and emotional distress to a level requiring mental and emotional treatment.

Id. at 5.

In sum, the SAC alleges an ongoing course of conduct by Ricci that included "unwelcome sexual advances, requests for sexual favors, and other verbal ... conduct of a sexual nature." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986) (citation and quotation marks omitted). Taken together, such conduct "creates an environment that a reasonable person would find

10

hostile or abusive[.]" Patane, 508 F.3d at 113 (citation and quotation marks omitted); see also Feliciano v. Autozone, Inc., 111 A.3d 453, 467 (Conn. 2015) (finding that hostile work environment existed when employer's "vulgar comments about the physical attributes of female customers ... and the plaintiff, his statements to the effect that he was willing to have sexual relations with 'black, white, Puerto Rican, anything,' his sexually provocative conduct with and comments about [coworkers], and his repeated touching of his crotch were ongoing issues"); Little v. Nat'l Broad. Co., 210 F. Supp. 2d 330, 389 (S.D.N.Y. 2002) ("[V]ulgar comments and gestures directed at employees can be sufficiently offensive, pervasive and continuous to constitute a sexually hostile work environment.").

Plaintiff has alleged sufficient facts to satisfy the first element of her hostile work environment claims. Because defendant rests its motion to dismiss plaintiff's hostile work environment claims solely on the first element, the City's Motion to Dismiss Count One and Count Two of the SAC is denied.

### B. Quid Pro Quo Sexual Harassment

Plaintiff next asserts a claim for quid pro quo sexual harassment, arguing that "[d]efendant, though its agent and/or employee withheld Plaintiff's promised salary and benefits in hopes that Plaintiff would acquiesce to the sexual advances."

11

Doc. #43 at 6.

Defendant moves to dismiss this claim on the grounds that (1) "There is No Common Law Claim for Quid Pro Quo Sexual Harassment[,]" Doc. #115-1 at 10; and (2) "Ms. Miro Fails to Allege that John Ricci was Her Supervisor Properly[.]" Id.[2] Both arguments fail.

Defendant first asserts that plaintiff's claim should be dismissed because "Ms. Miro does not cite any statutory law for Count Three. There is no common law cause of action for quid pro quo sexual harassment." Id. Defendant does not dispute, however, that a plaintiff may maintain a cause of action for quid pro quo sexual harassment under Title VII or CFEPA. See Conn. Gen. Stat. §46a-60; see also Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994). "[T]he liberal pleading requirements of Rule 8

---

[2] Defendant argues, for the first time in reply, that plaintiff's quid pro quo sexual harassment claim should be dismissed for failure to "demonstrate that sex did play a role in supposedly linked tangible employment benefits." Doc. #121 at 7. "There is no apparent reason Defendant could not have made this argument in its Motion and thus it [is] deemed waived because it was raised for the first time in Defendant's Reply Brief." Cadoret v. Sikorsky Aircraft Corp., 323 F. Supp. 3d 319, 327 n.7 (D. Conn. 2018); see also Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); Corpes v. Walsh Constr. Co., 130 F. Supp. 3d 638, 644 (D. Conn. 2015) ("Because raising new arguments for the first time in a reply brief is improper, the Court will not consider these issues[.]" (citations omitted)). In any event, plaintiff has alleged that "[t]he Plaintiff's denial of the sexual advances was used as the basis for the decision to deny the promised salary, benefits, and unionization." Doc. #43 at 7.

12

do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one[.]" Hunnicutt v. Armstrong, 152 F. App'x 34, 35 (2d Cir. 2005) (citations and quotation marks omitted). Accordingly, dismissal is not warranted on this basis.

Defendant next argues that plaintiff's quid pro quo sexual harassment claim should be dismissed because "Ms. Miro's failure to allege facts demonstrating Ricci was, in fact, her supervisor is a fatal flaw to any quid pro sexual harassment claim." Doc. #115-1 at 12.

"The relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job." Karibian, 14 F.3d at 778. The same standard applies to quid pro quo sexual harassment claims brought under CFEPA. See Brauer v. MXD Grp., Inc., No. 3:17CV02131(VLB), 2019 WL 4192181, at *3 (D. Conn. Sept. 4, 2019) ("The analysis of [plaintiff's quid pro quo sexual harassment] claims under CFEPA is the same as under the federal statute, Title VII, and the Court accordingly relies on the case law analyzing and interpreting both statutes."); Williams v. Quebecor World Infiniti Graphics, 456 F. Supp. 2d

13

372, 383 (D. Conn. 2006) ("The Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA.").

"Employers are strictly liable for quid pro quo harassment committed by supervisors." Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1154-55 (E.D.N.Y. 2003); see also Brauer, 2019 WL 4192181, at *9 ("If a supervisor uses his actual or apparent authority to further the harassment, an employer will be liable for the quid pro quo harassment."). An employee is a supervisor if he or she "is empowered ... to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Vance v. Ball State Univ., 570 U.S. 421, 431 (2013) (citation and quotation marks omitted).

Plaintiff alleges that "John Ricci himself was who handed the Conclusion of Employment to the Plaintiff, demonstrating his hiring and firing power over the Plaintiff as a 'supervisor[.]'" Doc. #43 at 4. Defendant argues that this allegation does not establish that Ricci was plaintiff's supervisor because "Ms. Miro has only alleged that Ricci handed her a document, i.e., the Conclusion of Employment, without any facts about if he **had the power to determine whether** to terminate her employment for

Bridgeport." Doc. #115-1 at 11-12 (emphases in original).

Plaintiff's allegations regarding Ricci's supervisory authority are somewhat vague. At the Rule 12(b)(6) stage, however, the Court finds that plaintiff has alleged sufficient facts to support an inference that Ricci had supervisory authority over plaintiff based on her allegation that he handed her the termination letter. See Doc. #43 at 4. At the summary judgment stage, or at trial, defendant may contest this claim, or may offer evidence showing that the mere fact that Ricci was empowered by the City to convey the termination letter to plaintiff is insufficient to support a finding that he was, in fact, a "supervisor" of plaintiff. But at this stage, and in light of the other allegations indicating that plaintiff "was fearful" of what Ricci would do if she rebuffed his advances, Doc. #43 at 3, the Court finds the allegations sufficient. Cf. Dillon v. Ned Mgmt., Inc., No. 13CV02622(JBW), 2014 WL 583234, at *3 (E.D.N.Y. Feb. 12, 2014) (Allegations that a person was a "supervisor" were sufficient where "[t]he complaint implies that [the purported supervisor] could take 'tangible employment actions' against her."); Alvarado v. Mt. Pleasant Cottage Sch. Dist., 404 F. Supp. 3d 763, 787–88 (S.D.N.Y. 2019) ("Plaintiff has alleged just enough for the Court to reasonably infer that -- even if Plaintiff has not alleged [the purported supervisor's] specific responsibilities or established that she had any final

15

say in employment decisions -- it is plausible that [the purported supervisor] was a supervisor under the definition set forth by Vance."). Because the Court can reasonably infer that Ricci had the authority to fire plaintiff, given that he in fact conveyed the termination letter to her, the Court finds that plaintiff has adequately alleged that Ricci was her supervisor. Defendant has not asserted any other basis for dismissal of plaintiff's quid pro quo sexual harassment claim. Defendant's Motion to Dismiss Count Three is therefore denied.

**C. Retaliation**

Plaintiff alleges that she was retaliated against for complaining about Ricci's sexual harassment, in violation of Title VII and CFEPA. See Doc. #43 at 7-9.

"The elements of a claim of retaliation under [CFEPA] are the same as for a retaliation claim under Title VII." Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 642 (D. Conn. 2005).

> In order to establish a prima facie case of retaliation, a plaintiff must show that: [1] he engaged in protected participation or opposition under Title VII or CFEPA, ... [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

DeMoss v. Norwalk Bd. of Ed., 21 F. Supp. 3d 154, 170 (D. Conn. 2014) (citation and quotation marks omitted).

Defendant asserts that "Ms. Miro's retaliation claims fail

16

because she has not adequately pled a causal connection between any protected activity and an alleged adverse employment action." Doc. #115-1 at 12.

A causal connection can be demonstrated "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff relies solely on a theory of temporal proximity to support her retaliation claims. See Doc. #118 at 20-21. Plaintiff argues, in opposition to the motion to dismiss:

> The Plaintiff in paragraph 9 of her revised complaint specifically alleges that she complained to the Chief-of-Staff to the Mayor of the City of Bridgeport about the sexual harassment by Mr. Ricci and its effect on her workplace. The Plaintiff's allegations clearly refer to her complaint about sexual harassment being made prior to her discharge. (Paragraph 9 and 10 of Revised Complaint). Furthermore, the Plaintiff in her complaint describes the sexually inappropriate conduct of Mr. Ricci occurring in June and July of 2017 (paragraph 6). The Plaintiff alleges in her complaint that the conduct of Mr. Ricci was discriminatory and she complained to the Chief-of-Staff of the Mayor of the City of Bridgeport (paragraphs 9, 22). The Plaintiff further alleges that she was discharged within approximately two months on September 21, 2017. As a result a reasonable interpretation of the complaint also supports a causal connection between the protected activity and the adverse action, which in the instant case was the

17

discharge of the Plaintiff on September 21, 2017.
Id.

The relevant inquiry when considering temporal proximity is not whether the adverse employment action occurred shortly after allegedly discriminatory conduct took place. Rather, it is whether the adverse employment action occurred shortly after the plaintiff engaged in protected activity. Plaintiff's SAC alleges that "[t]he Plaintiff told Chief-of-Staff to the Mayor of Bridgeport, an employee and/or agent, of the Defendant City of Bridgeport about the sexual harassment and its effect on her workplace at a lunch." Doc. #43 at 3-4.

Plaintiff fails, however, to allege when she complained about Ricci's alleged harassment to the Mayor of Bridgeport's Chief of Staff. The SAC itself asserts only that plaintiff reported the conduct to the Chief of Staff "at a lunch." Id. at 4. Plaintiff appears, in argument, to assert that this lunch occurred in July or August 2017, stating: "The Plaintiff alleges ... she complained to the Chief-of-Staff of the Mayor of the City of Bridgeport (paragraphs 9, 22). The Plaintiff further alleges that she was discharged within approximately two months on September 21, 2017." Doc. #118 at 20-21. But the claim that plaintiff's termination occurred "within approximately two months" of the lunch and the report of misconduct is completely unsupported by the allegations of the SAC. Id.

18

Plaintiff cannot supplement her complaint with essential factual allegations through arguments by counsel. Absent any allegation in the SAC as to the actual date or even general time frame when plaintiff complained of Ricci's conduct to the Mayor's Chief of Staff, plaintiff cannot plausibly allege that she was terminated in close temporal proximity to that protected activity. See Kronemberg v. Winthrop Univ. Hosp., No. 15CV03235(LDW), 2016 WL 2939153, at *6 (E.D.N.Y. May 19, 2016) (holding that plaintiff failed to plead temporal proximity where the complaint "fails to specify when these actions occurred (let alone the surrounding circumstances) in order to show the onset of retaliatory acts soon enough after the filing of the FAC in June 2012"). Because plaintiff bases her causation argument solely on temporal proximity, her failure to allege such proximity is fatal to her retaliation claims. Accordingly, Count Four and Count Five of the SAC are hereby dismissed.

## V.   CONCLUSION

For the reasons stated, the Motion to Dismiss [**Doc. #115**] is **GRANTED** as to Count Four and Count Five of the SAC, and **DENIED** as to all other counts.

Defendant shall file an Answer to Counts One, Two, and Three of the Second Amended Complaint (Doc. #43) on or before **September 1, 2022.** Any motion for summary judgment shall be filed on or before **September 8, 2022.** See Doc. #123. **In light of**

**the lengthy delays to date in this action, the Court does not anticipate granting any extension of these deadlines.**

It is so ordered this 11th day of August, 2022, at Bridgeport, Connecticut.

\_\_\_\_/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
