# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| LISA MIRO,<br>     *Plaintiff*,<br><br>     v.<br><br>CITY OF BRIDGEPORT,<br>     *Defendant.* | No. 3:20-cv-0346 (VAB) |

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Lisa Miro ("Plaintiff" or "Ms. Miro") sued the City of Bridgeport ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA"). *See* Am. Compl., ¶¶ 1–35, ECF No. 43 (Feb. 16, 2021). More specifically, Ms. Miro alleges that she was subjected to sexual harassment, creating a hostile work environment in violation of Title VII (Count One) and CFEPA (Count Two); *quid pro quo* sexual harassment in violation of Tittle VII and CFEPA (Count Three); Retaliation in violation of Title VII (Count Four); and Retaliation in violation of CFEPA (Count Five).

On April 27, 2022, the City of Bridgeport moved to dismiss Ms. Miro's Complaint on various ground. *See* Def.'s Mot. to Dismiss, ECF No. 115. The Court granted the motion to dismiss as to counts Four and Five but denied the motion as to counts One, Two and Three. *See* Order, ECF No. 124 (Aug. 11, 2022). The City of Bridgeport has now moved for summary judgment on the remaining claims, counts One, Two and Three. *See* Def.'s Mot. for Summ. J., ECF No. 126 (Sep. 9, 2022) ("Mot."); Def.'s Mem. in Support of Mot. for Summ. J., ECF No. 126-1 (Sep. 9, 2022) ("Mem."). Ms. Miro opposes the motion. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 134 (Oct. 17, 2022) ("Opp'n").

For the following reasons, the City's motion for summary judgment is **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **Factual Background[1]**

      a.   **Ms. Miro's Employment with the City of Bridgeport**

After Joseph Ganim ("Mayor Ganim") became mayor of the City of Bridgeport in 2015,

Ms. Miro contacted the administration regarding employment. Pl.'s Rule 56(a)(2) Statement in

Resp. to Def.'s  Rule 56(a)(1) Statement ¶ 14, ECF No. 136 (Oct. 17, 2022) ("Miro Statement").[2]

On June 8, 2016, John K. Ricci ("Mr. Ricci"), the Public Facilities Director for the City of

Bridgeport, hired Ms. Miro for a position with the City. *Id.* ¶ 1. The "desire for the [City of

Bridgeport] was to bring Ms. Miro on eventually as a full-time employee." Ex. V to Mot., ECF

No. 126-4, Testimony of J. Hawkins, 67:8-16. As director of Public Facilities, Mr. Ricci is

"authorized to transfer positions and employees between units of the department of public

facilities as the need arises and fund are available." Miro Statement ¶¶ 19, 20. Immediately after

she was hired, Mr. Ricci assigned Ms. Miro to the Lighthouse afterschool program as Youth

Program Manager. *Id.* ¶¶ 3, 4.

      b.   **The Youth Program Manager Position**

The Youth Program Manager position is unionized and available only to a member of the

Laborers' International Union of North America ("LIUNA"). *Id.* ¶ 6. Ms. Miro was not a

---

[1] The facts are taken from Ms. Miro's Local Rule 56(a)(2) statements and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3).

[2] The parties disagree whether Mr. Miro contacted the administration about getting a job or merely to request a reference for a job. *See* Miro Statement ¶ 14.

member of the union when she was hired by the City of Bridgeport and assigned as Youth Program Manager. *Id.* ¶ 7. On April 4, 2017, while Ms. Miro was employed as a seasonal[3] Youth Program Manager, the City of Bridgeport posted a permanent Youth Program Manager position which was open only to LIUNA members. *Id.* ¶¶ 6, 8. The same day, Mark Harp, a union member applied for the position. *Id.* ¶¶ 9; Ex. H to Mem., ECF No. 126-4. Ms. Miro, as a non-union member, was ineligible to apply for the position. *Id.* ¶ 7. Ms. Miro, however, remained in her role as Youth Program Manager until September 21, 2017. *Id.* at ¶ 31.

On August 22, 2017, Mr. Harp filed a grievance against the City of Bridgeport for "knowingly . . . allowing[ing] a non-bargaining unit person to perform the work that is covered by the collective bargaining agreement," and requested that the City of Bridgeport "immediately remove[]" Ms. Miro from the position. Ex. J to Mem., ECF No. 126-4.

### c.   Ms. Miro's Interactions with Mr. Ricci During her Employment

During Ms. Miro's employment as Youth Program Manager, Mr. Ricci, whom Ms. Miro met while they both worked on the mayoral campaign of then candidate Ganim, Ex. A to Pl.'s Opp'n ¶ 2, ECF No. 135 (Oct. 17, 2022) ("Miro Affidavit"), made repeated advances towards Ms. Miro, *see* Miro Statement ¶ 44. On at least one occasion, Mr. Ricci asked Ms. Miro to go to the movies with him, which she declined. *Id.* Ms. Miro admits that before being hired by Mr. Ricci, she was aware that Mr. Ricci "was interested in" her. Ex. D to Mem., ECF No. 126-4, Testimony of Lisa Miro, 30:12-15. After she started working for him, however, "it was out of line[.]" *Id.*

---

[3] Ms. Miro disputes that she was told that her position was seasonal. *See* Miro Statement ¶ 2. Ms. Miro's own exhibit, however, suggests that she was made aware that the position was seasonal. *See* Ex. C to Opp'n at 14, ("This letter is to inform you that seasonal position . . . concluded.").

### d.  Ms. Miro's Termination as Youth Program Manager

On September 21, 2017, Ms. Miro met with Mr. Ricci and City of Bridgeport Labor

Relations Officer, Phillip White, where they discussed a new position as a typist. Miro Statement

¶ 33. Ms. Miro received an e-mail before the meeting detailing the job offer for the new position,

Typist II, *id.* ¶32, which had an annual salary of $42,259, *id.* ¶ 30. The parties disagree on

whether Ms. Miro rejected that job offer or if she simply sought more time to discuss the offer

with her attorney at the time. *Id.* ¶ 31. The City of Bridgeport ended Ms. Miro's employment as a

Lighthouse Program Manager on September 21, 2017. ¶ 28.

On September 23, 2017, Ms. Miro contacted Mayor Ganim regarding the job that she was

promised, which included "medical insurance as full time employee[.]" Ex. X to Mem., EFC No.

126-4. In her communications with Mayor Ganim, Ms. Miro made note of "negative,

documented proof of yet another employee[] you've surrounded yourself." *Id.* Ms. Miro

indicated that she was "prepared to file a civil suit for being subjected to sexual harassment and a

hostile work environment for which [she has] abundant proof in form of text and email

messages." *Id.* Ms. Miro indicated that "she did not want to go down this path" and that she "had

hoped that it would be settled amicably." *Id.*

### B.  Procedural History

On March 13, 2020, Ms. Miro, acting *pro se*, filed the Complaint against the City of

Bridgeport alleging violations of Title VII and CFPA. *See* Compl.

On April 24, 2020, United States Magistrate Judge Thomas O. Farrish issued a

recommended ruling, recommending to this Court to allow the hostile work environment sexual

harassment claims under Title VII and the Connecticut Fair Employment Practices Act to

proceed. *See* Recomended Ruling, ECF No. 14.

On May 14, 2020, the Court adopted Judge Farrish's recommended ruling and directed Ms. Miro to file an Amended Complaint. *See* Order Adopting Recommended Ruling, ECF No. 16.

On June 12, 2020, Mr. Miro filed an Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 17.

On September 1, 2020, the City of Bridgeport filed a motion to dismiss, or in the alternative, to stay the proceedings pending a resolution of a parallel state action. *See* Def.'s Mot. to Dismiss or, in the alternative, to Stay the Proceedings, ECF No. 26. The next day, the City of Bridgeport filed a supplemental motion requesting a thirty-day extension to file a responsive pleading in light of Ms. Miro's withdrawal of the state case. *See* Def.'s Supp. Mot. to Dismiss, ECF No. 27.

On December 15, 2020, the Court *sua sponte* granted Ms. Miro leave to amend her Amended Complaint. *See* Order, ECF No. 39. On the same day, the Court denied as moot the City of Bridgeport's motion to dismiss in light of Ms. Miro's expected Amended Complaint. *See* Order, ECF No. 40.

On February 16, 2021, Ms. Miro filed a Second Amended Complaint. *See* Am. Compl.

On March 9, 2021, the City of Bridgeport filed a motion to dismiss counts Four and Five of the Second Amended Complaint. *See* Def.'s Mot. to Dismiss Counts 4 and 5 of Revised Complaint, ECF No. 45.

On March 24, 2022, Ms. Miro filed an opposition to the motion to dismiss counts Four and Five of the Second Amended Complaint. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 50.

On April 7, 2021, the City of Bridgeport filed a reply in support of its motion to dismiss.

*See* Def.'s Reply, ECF No. 51.

On March 29, 2022, the Court granted in part the City of Bridgeport's motion to dismiss counts Four and Five, but permitted claims of retaliations related to sexual harassment to proceed. *See* Order, ECF No. 113.

On April 27, 2022, the City of Bridgeport filed a motion to dismiss the Second Amended Complaint. *See* Def.'s Mot. to Dismiss Plaintiff's Revised Complaint, ECF No. 115.

On June 2, 2022, Plaintiff filed an opposition to the motion to dismiss. *See* Pl.'s Mem. in Opp'n, ECF No. 118.

On June 30, 2022, Defendant filed a reply in support of it motion to dismiss. *See* Def.'s Reply, ECF No. 121.

On August 11, 2022, the Court granted in part and denied in part Defendant's motion to dismiss, specifically dismissing courts Four and Five and denying the motion to dismiss as to counts One, Two and Three. *See* Order, ECF No. 124.

On September 1, 2022, Defendant's filed its Answer. *See* Def.'s Answer, ECF No. 125.

On September 7, 2022, Defendant filed a motion for summary judgment. *See* Mot.

On October 17, 2022, Plaintiff filed an objection to the motion for summary judgment. *See* Opp'n. On the same day, Plaintiff also filed a response to Defendant's 56(a) Statement. *See* Pl.'s Response to Defendant's Rule 56(a) Statement, ECF No. 136.

On October 20, 2022, plaintiff filed Local Rule 56(a)(2) Statement of Disputed Issues of Material Facts. *See* Pl.'s Rule 56(a) Statement of Disputed Issues of Material Facts, ECF No. 139.

On December 12, 2022, Defendant filed its reply in further support of its motion for summary judgment. *See* Reply.

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual

inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

The City of Bridgeport moves for summary judgment because, in its view:  (1) the undisputed facts show that Ms. Miro was not subject to hostile work environment under Title VII and CFEPA; (2) the undisputed facts show Ms. Miro was not subject to *quid pro quo* sexual harassment; and (3) the City of Bridgeport is not liable for Mr. Ricci's harassing conduct towards Ms. Miro.

The Court will address each of these arguments in turn.

### A.   The Title VII and CFEPA Hostile Work Environment Claims[4]

To establish a hostile work environment claim under Title VII, a plaintiff "must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006). This inquiry is both a subjective and an objective one. *See Gorzynski*, 596 F.3d at 102 (2d Cir. 2010) ("A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive."); *Hayut v. State Univ. of N. Y.,* 352 F.3d 733, 745 (2d Cir. 2003) (explaining that under Tittle VII,  "surviving

---

[4] The standards governing CFEPA employment discrimination claims are the same as those governing Title VII. *See Brauer v. MXD Grp., Inc*., No. 3:17-CV-2131 (VLB), 2019 WL 4192181, at *3 (D. Conn. Sept. 4, 2019) (collecting cases); *see also, e.g.*, *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." (citation omitted)). Accordingly, the Court will analyze the claims under both statutes together.

summary judgment on a hostile work environment claim requires . . . evidence not only that the victim subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive").

The City of Bridgeport argues that it is entitled to summary judgment on counts One and Two because Ms. Miro's work environment was not objectively hostile, and Ms. Miro did not subjectively find her work environment to be hostile.

### 1. *Objectively Hostile*

The City of Bridgeport asserts that the "majority" of Mr. Ricci's conduct toward Ms. Miro, "generally do[es] not rise to the level of creating an objectively hostile work environment[.]" Mem. at 17. The "more extreme" conduct, *id.* at 19, according to the City of Bridgeport—conduct that includes Mr. Ricci's "offer for oral sex and blowing Ms. Miro a kiss," *id.*, "Mr. Ricci's inappropriate touching," *id*. at 18, and "Mr. Ricci, stating that he would drape [Ms. Miro] in gold if [she] was his," *id.* (internal quotation marks omitted)—"only became objectionable to Ms. Miro after she did not get the position she wanted," *id.* at 18. In the City of Bridgeport's view, Mr. Ricci's conduct was "part of an ongoing friendship that Ms. Miro had encouraged," and therefore could not be objectively hostile. *Id.* at 17.

 In response, Ms. Miro asserts that Mr. Ricci's "sexually provocative conduct" towards her "was sufficiently continuous and concerted to be deemed pervasive." Opp'n at 15. According to Ms. Miro, "within one week of her start of employment[,]" Mr. Ricci, who was her supervisor, "requested that [she] join him on vacation to Florida so that they can spend time alone." *Id.* at 27. Throughout her employment with the City of Bridgeport, she adds, Mr. Ricci "repeatedly made sexual inappropriate comments including but not limited to [her] body, hair, 'butt' and skin." *Id.* at 13. On one occasion, according to Ms. Miro, Mr. Ricci "felt [her] leg . . . and commented on

her 'soft skin' inquiring if she shaved twice a day." *Id.* These "incidents of misconduct" by Mr. Ricci, she argues, "singularity or in totality support" her contention that her work environment was objectively hostile. *Id.*

The Court agrees.

"It is often difficult to assess the sufficiency of facts underlying a hostile-work-environment claim on summary judgment." *Christy v. Ken's Beverage, Inc.*, 660 F. Supp. 2d 267, 275 (D. Conn. 2009). The Second Circuit has explained that "[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances.") (cleaned up). Instead, "[a] work environment's hostility should be assessed based on the 'totality of the circumstances.'" *Cloutier v. Ledyard Bd. of Educ.*, 575 F. Supp. 3d 276, 284 (D. Conn. 2021) (quoting *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 23 (1993), *reconsideration denied*, No. 3:20CV1690 (JBA), 2022 WL 844550 (D. Conn. Mar. 21, 2022)).

Here, a single incident of misconduct by Mr. Ricci, without more, would likely be insufficient to show that Ms. Miro was objectively subjected to a hostile work environment. *See Carrero v. N.Y. City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989) ("The incidents [of misconduct] must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."); *see also Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (Stating that in hostile work environment claims, the "incidents complained of must be more

than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." (citation and quotations marks omitted)).

This record, however, contains numerous incidents which start as early as within a week of Mr. Miro's employment and span through her employment. *See, e.g.*, Mem. at 19 (identifying incidents, including Mr. Ricci's "offer of oral sex and blowing Ms. Miro a kiss," and request that Ms. Miro accompany him on vacation to Florida). A reasonable jury could find that Mr. Ricci's conduct "is of such a quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotations omitted).

Accordingly, "constru[ing] the evidence in the light most favorable" to Ms. Miro and "draw[ing] all reasonable inferences in [her] favor," *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted), summary judgment will be denied on the basis that Ms. Miro's work environment was not objectively hostile. *See Kenney v. New York*, No. 16 CV 4522 (VB), 2017 WL 5633166, at *4 (S.D.N.Y. Nov. 20, 2017) (denying summary judgment where plaintiff testified that her supervisor "repeatedly and frequently said sexually harassing things to [her] and acted inappropriately toward her the majority of the time she worked with him[]").

### 2. *Subjectively Hostile*

The City of Bridgeport next argues that "sufficient evidence demonstrates that Ms. Miro did not find her workplace subjectively hostile." Mem. at 12. First, it argues that "Ms. Miro has testified that she 'loved doing what [she was] doing . . . .'" *id.* at 14, and she "contacted various members of the City's Administration[,]" including Mayor Ganim and his Chief of Staff, "about either maintaining her then-current position as Lighthouse's Acting Youth Manager or working

12

in another capacity as an administrator," *id.* at 13. Additionally, the City argues that "Ms. Miro encouraged and welcomed Mr. Ricci's attention when it was convenient for her." *Id.* at 14; *see also id.* at 14–15 ("Ms. Miro told M. Ricci that she 'really like [Ricci's] company and talking . . . .'" (alternation in original). In its view, this evidence is sufficient to support its contention that Ms. Miro did not find her work environment hostile.

Ms. Miro responds that the City "misinterprets one text message in an attempt to support its argument that [Ms. Miro] somehow welcomed the inappropriate conduct of Mr. Ricci." Opp'n at 19. According to Ms. Miro, Mr. Ricci went "beyond talking and inappropriately touched [her] and made sexually disparaging comments and advances" that she did not welcome. *Id.* at 20. These acts, she argues, "humiliated, degraded, embarrassed, [and] offended" her. *Id.* Ms. Miro notes that she sought "treatment with a therapist and obtained medication to treat her psychological condition caused by the sexual harassment at work." *Id.* at 23–24. Moreover, Ms. Miro argues, whether she welcomed Mr. Ricci's advances or encouraged his conduct are questions of fact and credibility that should be left to the trier fact and not to be decided on a summary judgment motion. *Id.* at 24.

The Court agrees.

The Supreme Court has cautioned that "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986); *see also Gallagher v. Delaney*, 139 F.3d 338, 346 (2d Cir. 1998) ("Whether particular conduct was unwelcome presents difficult problems of proof."), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Daddino v. Sanossian*, No. 16CV6638JMAARL, 2022 WL 1085542, at *17 (E.D.N.Y. Feb. 25, 2022) (explaining that "'the

line between boorish and inappropriate behavior and actionable sexual harassment' is frequently

hazy and often an issue best left for a jury.") (quoting *Schiano v. Quality Payroll Sys., Inc.,* 445

F.3d 597, 606 (2d Cir. 2006)). Both in her deposition testimony and in her 56(a)(2) statement,

Ms. Miro disputed that she welcomed Mr. Ricci's conduct. *See* Miro Testimony at 30:12-15

(explaining that after she started working for Mr. Ricci, his conduct towards her was "out of

line"); Miro Affidavit ¶ 27 ("Based on the sexually humiliating conduct of Mr. Ricci, Plaintiff

felt depressed, humiliated, degraded and sought out professional help with a therapist and was

also referred to an Advanced Practice Registered Nurse (APRN) for prescription medicine to

treat depression caused by the actions of Mr. Ricci.").

   The City of Bridgeport's contention, therefore, that "Ms. Miro played along," Mem. at

19, is a disputed issue of material fact. *See Old Dominion Freight Line*, 391 F.3d at 83

(concluding that if there is any evidence in the record from which a reasonable factual inference

could be drawn in favor of the non-moving party for the issue on which summary judgment is

sought, then summary judgment is improper). Moreover, even if the Court assumes that "Ms.

Miro played along," Mem. at 19, the Supreme Court has made clear, a plaintiff's "voluntariness"

is not a defense to a Title VII claim. *See Vinson,* 477 U.S. at 68 ("But the fact that sex-related

conduct was "voluntary," in the sense that the complainant was not forced to participate against

her will, is not a defense to a sexual harassment suit brought under Title VII.").

   As a result, on this record, a reasonable jury can conclude that Ms. Miro did find her

work environment hostile. *See Brauer*, 2019 WL 4192181, at *11 (concluding that based on the

totality of the evidence in that case, "a jury may be able to find that [a supervisor's] conduct

constitutes unwelcome sexual advances," notwithstanding the fact that "plaintiff . . . initiated an

interpersonal relationship" with her supervisor); *id.* (concluding that although the record

contained "a weak set of facts," a jury may nonetheless "be able to find that [a supervisor's] conduct constitutes unwelcome sexual advances[])."

Accordingly, summary judgment will be denied on the basis that the work environment was not subjectively hostile.

### B.   The Title VII Quid Pro Quo Claim

"[T]o establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994) (collecting cases). *See also Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 579 (2d Cir. 1989) ("The gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail and that adverse consequences follow from the employee's refusal."); *see also Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 385 (E.D.N.Y. 2018) ("To make out a *prima facie* case for such a claim against an employer, an employee must show a tangible employment action, *i.e.*, that an explicit alteration in the terms or conditions of employment resulted from refusal to submit to a supervisor's sexual advances.") (quotation marks and citation omitted).  In other words, to succeed on a *quid pro quo* claim under Title VII, a plaintiff "must show a direct nexus between the demand for sexual favors and an employment benefit or detriment." *Brauer*, 2019 WL 4192181, at *9 (citation and quotation marks omitted).

The City of Bridgeport contends that Ms. Miro "cannot demonstrate a direct nexus between the alleged demand for Ricci's sexual favors and Bridgeport removing her from the Acting Lighthouse Youth Program Manager position." Mem. at 20. It removed Ms. Miro from

her position, according to the City, because Mr. Miro's "occupancy of the position was the subject of a union grievance." *Id.* In its view, "Ms. Miro was a seasonal employee;" "her employment period ended after four months on November 23, 2016;" and "the City extended [Ms. Miro's] time at Lighthouse as a courtesy since it took longer than expected to find her a full-time position due to budgetary concerns and the resulting hiring freeze." *Id.* at 21–22. Finally, the City of Bridgeport argues that Ms. Miro did not suffer an employment detriment because the City "attempt[ed] to provide her with a salaried position that included collective bargaining benefits." *Id.* at 22.

Ms. Miro responds that her rejection "of Mr. Ricci's sexual advances" is the reason why the City of Bridgeport denied her "the benefits and salary" she was promised. Opp'n at 26. She argues that although she was aware that the Lighthouse position was "unionized," at the start of her employment, "it was represented to her that she would be made a union member for the position." Miro Statement ¶ 6. According to Ms. Miro, she "had to submit to constant sexual misconduct directed towards her by Mr. Ricci" to remain in her position as Youth Program Manager at the Lighthouse. Opp'n at 27. Ultimately, she argues, Mr. Ricci withheld the job "she was promised" "with the hope that . . . [she] would acquiesce to his sexual advances." *Id.* In light this record, Ms. Miro argues, the City "improperly places undue reliance on its claim that [Ms. Miro's] position was alleged[ly] subject to a union grievance." *Id.* at 30

The Court agrees.

The inquiry is whether Ms. Miro was (1) "subject to unwelcome sexual conduct," and (2) "her reaction to that conduct was then used as a basis for decisions affecting compensation, terms, conditions or privileges of her employment." *Karibian*, 14 F.3d at 74. As discussed *supra* Part III(A), the evidence show that Ms. Miro was subjected to various sexual conduct that she

argued was unwelcomed. Ms. Miro declined various advances from Ms. Ricci. *See, e.g.,* Mem. at 19 (rejecting Mr. Ricci invitation to vacation with him in Florida); *id.* at 8 (declining to go to the movies with Mr. Ricci). Ms. Miro asserts that her rejection of these advances is the reason she was denied union membership and permanent placement as lighthouse program manager. *Id.* at 30.

The City of Bridgeport's bare assertion that "no ill effect resulted" from Ms. Miro declining Mr. Ricci's advances, Mem. at 19, is insufficient to support granting summary judgment. *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (explaining that "where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied . . ..") (cleaned up); *see also Jeremy Clawson v. The City of Albany Department of Fire and Emergency*, No. 120CV1449MADCFH, 2023 WL 2456065, at *3 (N.D.N.Y. Mar. 9, 2023) (explaining that on a summary judgment motion "the court must be satisfied that the citations to evidence in the record support the movant's assertions").

Similarly, the City of Bridgeport's various—and seemingly conflicting—reasons for Ms. Miro's termination preclude granting summary judgment. *Compare, e.g.*, Mem. at 24 ("The City did not remove Ms. Miro from her position as the Lighthouse Youth Manager for refusing Mr. Ricci's alleged sexual advances; she could not keep the position once a LIUNA member applied for it."), *and id.* at 5 ("Unfortunately, Mr. Harp applied for the position, and LIUNA tied the City's hands.") (footnote omitted), *with id.* at 18 ("Mr. Ricci did not give [Ms. Miro] what she wanted" because "there were facts such as a hiring freeze and budgetary concerns preventing him from getting the City to hire her permanently."), *and id.* at 22 ("The City took the position that 'once [Ms. Miro] hired counsel, she made the State aware of the fact that [her Program

17

Manager position] was beyond the statutory limits'" and the City of Bridgeport therefore "had to end her time as the acting Lighthouse Youth Program Manager.").

On this record, viewing the evidence in the light most favorable to Ms. Miro and drawing all inferences in her favor, a jury can conclude that Ms. Miro was subjected to *quid pro quo* harassment. *Cf. Riley v. HSBC USA, Inc.*, 784 F. Supp. 2d 181, 210 (W.D.N.Y. 2011) ("Discrepancies between the reason a defendant provides in response to an EEOC discrimination charge, as compared to the reason asserted in employment discrimination litigation action can support a reasonable jury's inference that one of the answers was false and, thus, a pretext for discrimination.").[5]

Accordingly, summary judgment will be denied on the Title VII *quid pro quo* claim.

### C.   The City of Bridgeport's Liability for Supervisory Harassment

As a general matter, a "employer's liability is absolute," where a supervisor is the one who "wields the authority delegated to him by an employer either (a) to condition tangible job benefits affecting an employee on the employee's acceptance or rejection of the supervisor's sexual demands, or (b) to further the creation of a discriminatorily abusive work environment" *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (citation and internal quotations marks omitted). *See also Rennie v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC*, 38 F. Supp. 2d 209, 214 (D. Conn. 1999) ("An employer is liable for the quid pro quo harassment created by a supervisor if the supervisor uses his actual or

---

[5] In its Reply, the City of Bridgeport argues, for the first time, that Mr. Ricci did not have "actual or apparent" authority to promised Ms. Miro job. As an initial matter, this argument is waived, as it was raised for the first time in the Reply. *See ABN AMRO VERZEKERINGEN BV v. Geologistics Ams., Inc.,* 485 F.3d 85, 97, n. 12 (2d Cir.2007) ("We decline to consider an argument raised for the first time in a reply brief"); *Duryea v. County of Livingston,* No. 06–CV–6436T, 2007 WL 1232228, at *6 (W.D.N.Y. Apr. 26, 2007) (concluding that "the fact that defendants raised a new issue in their reply brief is improper practice"). Even if this argument was properly before the Court, however, it would fail. The record is replete with evidence from which a reasonable jury can conclude Mr. Ricci had apparent authority. *See, e.g.,* Mem. at 8 (explaining that Mr. Ricci was the one who "hired and fired [her]").

apparent authority to further the harassment.") (citing *Torres v. Pisano*, 116 F.3d 625, 630 (2d

Cir. 1997) *cert. denied,* 522 U.S. 997 (1997)); *Bethea v. City of New York*, No. 11 CV 2347 (SJ)

(MJA), 2014 WL 2616897, at *7 (E.D.N.Y. June 12, 2014) ("[H]arassment and the retaliation at

the hands of a supervisor empowered to take tangible employment actions will trigger an

employer's vicarious liability . . ..").

Where an employee "does not suffer any tangible job consequences as a result of a

supervisor's . . . conduct," however, "the employer may avoid liability if it establishes that (1) it

exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and

(2) that the employee unreasonably failed to take advantage of any preventive or corrective

opportunity provided or to otherwise avoid harm." *Armstrong v. Chrysler Fin. Corp.*, No. CIV.

3:97CV1557(AHN), 1999 WL 608831, at *5 (D. Conn. July 29, 1999) (citing *Burlington Indus.,*

*Inc. v. Ellerth,* 524 U.S. 742, 760 (1998)).

The City of Bridgeport argues it is not liable for Mr. Ricci's conduct because "Ms. Miro

did not suffer a tangible adverse employment action[.]" Mem. at 24. According to the City of

Bridgeport, after concluding her employment as lighthouse program manager, it "offered [Ms.

Miro] a permanent job with better pay and full benefits, which she did not have as the temporary

acting Lighthouse Youth Program Manager." *Id.* Therefore, it argues, Ms. Miro did not suffer an

adverse action.

Ms. Miro disputes that she was presented a meaningful offer. *See* Opp'n at 32 (asserting

that the job offer was sent "approximately one hour prior to her being . . . given a 'conclusion of

employment' letter by Mr. Ricci"). Moreover, Ms. Miro contends that the Typist II position,

housed at the Water Pollution Authority, was a provisional position subject to future civil service

examination, *id.* at 35, and that her "duties would be much different than her position at

Lighthouse where [she] was performing the duties of youth program managers," *id.* at 32–33. According to Ms. Miro, the Typist II position would entail a significant change in responsibilities from the youth program manager position and therefore constitute a tangible employment action. *Id.* at 33.

The Court agrees.

"A significant change in employment status, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or a decision causing a significant change in benefits constitutes a tangible employment action." *Armstrong*, 1999 WL 608831 at *6. An adverse employment action is considered material if the action is "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Torres v. Pisano,* 116 F.3d 625, 632 (2d Cir. 1997); *see also Schiano*, 445 F.3d 597, 604 (2d Cir. 2006) ("A tangible employment action usually constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (quotation marks omitted).

Here, although the parties disagree over whether the Typist II position was meaningfully offered to Mr. Miro, the City of Bridgeport concedes that the position was "placeholder until [it] found a better position in line with Ms. Miro's talents." Mem. at 25. Put differently, the Typist II position was not "in line with Ms. Miro's talents." *Id.* It was offered to as a "chance for Ms. Miro to get her foot in the door." *Id.* On this record, a reasonable jury may infer that the Typist II position was a significant change in Ms. Miro's employment status as compared to her role as Youth Program Manager. *See Armstrong*, 1999 WL 608831, at *5 ("Courts have found adverse

employment actions where the employee experiences a deprivation of a position or an opportunity, diminution of duties, or a loss of prestige." (cleaned up) (collecting cases)).

While this affirmative defense will remain available to the City of Bridgeport at trial as an evidentiary matter, on this record on summary judgment, the City of Bridgeport has not met the first prong, namely that Ms. Miro did not suffer an adverse employment action as result of Mr. Ricci conduct.

Accordingly, summary judgment will be denied on the basis that City of Bridgeport is not liable for Mr. Ricci's conduct.[6]

## IV. CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is **DENIED.**

SO ORDERED at Bridgeport, Connecticut, this 17th day of March, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[6] Even if the Court were to find that Ms. Miro did not suffer an adverse employment action, genuine issues of material facts remain as to whether the City of Bridgeport provided a "reasonable avenue for complaint" to Ms. Miro. *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 63 (2d Cir. 1992). *Compare* Mot. at 25 (arguing that "Bridgeport has a published sexual harassment policy spelling out the proper procedure for reporting sexual harassment allegations," and Ms. Miro failed "to take appropriate actions" to report the harassment), *with* Opp'n at 20, (asserting that she "complained to Chief of Staff to the Mayor of the City of Bridgeport, about the sexual harassment by Mr. Ricci and his sexual advances towards her). As a general matter, "'[t]he question of whether an employer has provided a 'reasonable avenue of complaint' is a question for the jury, whose inquiry is informed by the evidence as a whole . . .'" *Cloutier v. Ledyard Bd. of Educ.*, No. 3:20CV1690 (JBA), 2022 WL 17127756, at *4 (D. Conn. Nov. 22, 2022) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1181 (2d Cir. 1996)). Therefore, summary judgment as to liability for the supervisory harassment is also denied on this basis.