`
-

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LISA MIRO, | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | 3:20-cv-00346 (VAB) |
| | ) | |
| v. | ) | |
| CITY OF BRIDGEPORT, | ) | July 7, 2023 |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S PROPOSED JURY INSTRUCTIONS

**I.      INTRODUCTION – ULTIMATE BURDEN OF PROOF IS ON THE PLAINTIFF**

Plaintiff Lisa Miro has brought specific claims against the Defendant City of Bridgeport. I will now give you instructions on these claims. Ms. Miro claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ et seq. ("Title VII") for a hostile environment, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60 et seq. ("CFEPA") for a hostile environment and quid pro sexual harassment. I want to emphasize that Ms. Miro as a plaintiff, has the ultimate burden of proof to persuade the jury that Bridgeport discriminated against her by creating a hostile environment in violation of Title VII and CFEPA, as well as by engaging in quid pro sexual harassment against her.

**II.      BURDEN OF PROOF**

This is a civil case; as such, a plaintiff must prove the material allegations of her complaint by a fair preponderance of the evidence. For Ms. Miro's claims, which allege first, a hostile work environment based on her gender and, second,  quid pro quo sexual harassment, if, after considering all of the testimony, you are satisfied that she has met her burden on each essential point for which she has the burden of proof, then you must find for her and proceed to

1

consider damages on that claim. However, if after such consideration, you find the testimony of both parties to be in balance or equally probable, then Ms. Miro has failed to sustain her burden on that claim, and you must find for the City of Bridgeport.

## A.    PREPONDERANCE OF THE EVIDENCE

In a civil trial, it is the plaintiff's burden of proof to prove her case by a preponderance of the evidence. This is different from proof beyond a reasonable doubt, the burden of proof in a criminal matter, and you should not consider it when making any decisions in this trial. Ms. Miro must prove every disputed element of her claims to you by a preponderance of the evidence. If you conclude that she has failed to do so, then you must decide against her and find for the Defendant City of Bridgeport.

What does "preponderance of the evidence" mean? It means that a fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. To determine if a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – it is equally probable that one side is right as the other side is right – then you must decide that issue against the party having the burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence – the party must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof must prove its case by no more than a preponderance. If you find the scales tip, however slightly, in favor of the party with this burden of proof – meaning that what the party claims is

more likely true than not true – then that element will have been proven by a preponderance of the evidence.

Velasquez v. United States Postal Serv., 155 F. Supp. 3d 218, 227 (E.D.N.Y. 2016)

**III.    EVIDENCE**

**A.    EVIDENCE IN THE CASE**

The evidence in this case includes sworn witness testimony, regardless of who may have called a particular witness; all exhibits received in evidence, regardless of who may have produced them; and any stipulated facts.

Deposition testimony may also be received in evidence. Depositions contain sworn testimony, with counsel for each party entitled to ask questions. Testimony produced in a deposition or other judicial hearings may be read to you in open court. Deposition testimony may be accepted by you, subject to the exact instructions which apply to witnesses testifying in open court. In this case you have seen deposition testimony presented in the form of videotapes of witnesses.  This, too, is evidence that you may consider just as if those witnesses appeared here in the courtroom.

For an exhibit to constitute evidence you may consider in deciding this case, the exhibit must have been received or admitted into evidence by the Court. Exhibits marked for identification or used to refresh a witness' recollection are not evidence unless they were admitted into evidence themselves.

The questions posed by the lawyers are not evidence. It is the witnesses' answers that are the evidence.

Any evidence that the Court sustained an objection about, and any evidence ordered stricken by the Court, must be disregarded.

Statements, objections, and arguments of counsel are not evidence in this case because the lawyers are not witnesses. What the lawyers have said in their opening and closing statements is not evidence; their remarks are statements of the narrative that the lawyers hope the evidence will prove to you. However, if your recollection of the facts and evidence differs from the lawyers' statements, your recollection must guide your decision.

Anything you may have heard or seen outside the courtroom is not evidence; you must entirely disregard it.

If certain evidence was received for a limited purpose, you must consider that evidence only for that limited purpose.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Virgo v. Local Union 580, 629 F. Supp. 1204, 1205 (S.D.N.Y. 1986); EVIDENCE, Black's Law Dictionary (11th ed. 2019); AmTrust N. Am., Inc. v. KF&B, Inc., No. 17-CV-5340 (LJL), 2020 WL 5552522, at *2 (S.D.N.Y. Sept. 16, 2020); United States v. Eberhardt, 793 Fed. Appx. 8, 12 (2d Cir. 2019);

**B.      DIRECT AND CIRCUMSTANTIAL EVIDENCE**

In reaching your decision, you may use two types of evidence: direct evidence or circumstantial evidence. Direct evidence is when a witness testifies about something they know by virtue of his or her own senses he or she has seen, felt, touched, or heard and may be in the form of an exhibit. Circumstantial evidence tends to prove a disputed fact by proof of other facts.

As an illustration of the difference between the two, assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day. You saw the weather and that it was a nice day.  That is direct evidence.

Assume, however,  you could then not look outside, but you do see two people come into the courtroom with dripping wet umbrellas. Now, you cannot look outside the courtroom, so you cannot directly see whether or not it is raining. You have no direct evidence of whether it is raining, but based on the evidence of the dripping wet umbrellas, it is reasonable and logical to conclude that it had been raining.  That is an example of finding a fact -that it was raining- based on circumstantial evidence – the dripping umbrellas.

An inference may be drawn only if it is reasonable and logical, not speculative. You are allowed to draw logical inferences from facts you find to have been provided, but you may not go outside of the evidence to find the facts nor resort to guesswork or conjecture. While you may draw conclusions from proven facts, you may not draw inferences from their inferences. To aid you in better understanding this, in the rain example, while you could infer from the wet umbrellas that it was raining, you could not infer that there was a thunderstorm without more evidence. You should be careful to avoid resorting to speculation, conjecture, or guesswork to determine critical facts in this case.

That is all there is to circumstantial evidence. Based on reason, experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; it is a general rule that the law makes no distinction between direct and circumstantial evidence but requires that your verdict be based on a preponderance of all the evidence presented.

Duguay v. City of New York, 861 F. Supp. 2d 236, 250 (S.D.N.Y. 2012); Fuller v. Gannett Co.,

No. 87 CIV. 0668 (LLS), 1989 WL 146761, at *4 (S.D.N.Y. Nov. 28, 1989); Smithwick v.

Walker, 758 F. Supp. 178, 187 (S.D.N.Y. 1991), aff'd, 948 F.2d 1278 (2d Cir. 1991).

## C.    WITNESS CREDIBILITY

You have had the opportunity to observe all the witnesses. It is now your job to decide

how believable each witness was in his or her testimony. You are the sole judge of each

witness's credibility and the importance of his or her testimony.

It must be clear to you now that you are being called upon to resolve various factual

issues raised by the parties in the face of very different pictures painted by both sides. In making

these judgments, you should carefully scrutinize each witness's testimony, the circumstances

under which each witness testified, and any other matter in evidence that may help you decide

the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify.

Everything a witness said or did on the witness stand counts in your determination. How did the

witness impress you? Did the witness appear frank, forthright, candid, or evasive and edgy as if

hiding something? How did the witness appear; what was the witness' demeanor -- that is,

carriage, behavior, bearing, manner, and appearance while testifying? Often it is not what a

person says but how he or she says it that moves us.

You should use all the same tests for truthfulness that you use in determining matters of

importance in your everyday life. You should consider any bias or hostility the witness may have

shown for or against any party and any interest the witness may have in the case's outcome. You

should consider the opportunity the witnesses had to see, hear, and know the things about which

they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the

reasonableness and probability of their testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Remember to use your common sense, good judgment, and life experience.

Bravo v. Shamailov, 221 F. Supp. 3d 413, 422 (S.D.N.Y. 2016) citing Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 112–13 (2d Cir. 2015).

## D.    EXPERT WITNESSES

You have heard expert testimony from two witnesses, Dr. Hassan Minhas and Dr. Donald May.

An expert can express his opinion on matters if he has special knowledge and training. Expert testimony is presented to you on the theory that someone experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, opinions, and reasons for testifying, as well as all the other considerations that ordinarily apply when deciding whether to believe a witness's testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. However, do not accept this witness's testimony merely because they are an expert. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

Karavitis v. Makita U.S.A., Inc., 243 F. Supp. 3d 235, 241 (D. Conn. 2017), aff'd, 722 Fed.

Appx. 53 (2d Cir. 2018); Munn v. Hotchkiss Sch., 24 F. Supp. 3d 155, 171 (D. Conn. 2014),

aff'd, 724 Fed. Appx. 25 (2d Cir. 2018)

## III.    MS. MIRO'S CLAIMS: TITLE VII AND CFEPA

Ms. Miro made her claims under both federal and state statutes. I will explain more about

her particular claims in a moment. However, I want you to understand how the federal and state

statutes interact. Both statutes aim to eliminate employment discrimination against individuals

based on a protected class, in this case, gender. The standards under both state and federal law

are the same. You do not need to concern yourselves with parsing any differences between them.

Lucido v. Cravath, Swaine & Moore, 25 Fed. R. Serv. 2d 1050 (S.D.N.Y. 1978); Zayas v. Caring

Cmty. of Connecticut, No. 3:11-CV-442 VLB, 2012 WL 4512760, at *8 (D. Conn. Oct. 1, 2012)

## A.    TITLE VII AND CFEPA HOSTILE WORK ENVIRONMENT CLAIMS: CLAIMS ONE AND TWO

In her first two counts, Ms. Miro claims that Bridgeport discriminated against her

because of her gender by creating a hostile work environment. Under the hostile work

environment doctrine, even if an employee does not experience a specific adverse action, she

may have a viable claim under both Title VII and CFEPA for sexual discrimination if the

harassment was so pervasive that it changed the terms and conditions of her employment. The

elements of such a claim are the following:

(1) Ms. Miro was subjected to unwelcome  harassment, ridicule, or other abusive

conduct;

(2) That the abusive conduct was motivated, at least in part, by Ms. Miro's gender, that

is, the fact that she is a woman; and

(3) That the abusive conduct was so severe or pervasive that both Ms. Miro and a

reasonable person in her position would find her work environment so hostile or offensive that it

altered the conditions of her employment by creating an abusive work environment; and

(4) That there is some specific basis for imputing the objectionable conduct to

Bridgeport.

Sotak v. Bertoni, 501 F. Supp. 3d 59, 76 (N.D.N.Y. 2020); Alfano v. Costello, 294 F.3d 365,

373–74 (2d Cir. 2002).

1.      **Elements 1 and 2: Unwelcome Harassment Based on Gender**

First, you must determine whether Ms. Miro was subjected to unwelcome harassment

because of her sex. Title VII and CFEPA define "sexual harassment" as any unwelcome

harassment in the workplace that is directed at an employee because of her gender. Conduct is

unwelcome if it is not solicited or invited and is regarded as undesirable or offensive. Sexual

harassment can be sexual advances, requests for sexual favors, or expressions of sexual desire.

However, the acts at issue do not need to be motivated by sexual urges. Differential treatment, or

rude, disparaging behavior based on gender, can also constitute sexual harassment. Incidents that

are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination.

For example, the same individual is accused of multiple acts of harassment, some overtly sexual

and some not. Any harassment directed at an employee because of the employee's gender is

sexual harassment.

However, neither Title VII nor CFEPA prohibits an employer from maintaining a nasty,

unpleasant workplace, even if the reasons are of a sexual nature. Instead, they prohibit employers

from discriminating against an employee (including by subjecting them to hostile working

conditions) because of such an individual's sex. I am not saying that Ms. Miro was mistreated at

work, and in fact, Bridgeport denies that she was mistreated. But even if you believe that the City and/or its agents mistreated her at work, such a claim is actionable under Title VII and CFEPA only when it occurs because of her gender. I am instructing you that the ultimate issue is the reason for the individual plaintiff's treatment, not the relative treatment of different groups within the workplace. In other words, Ms. Miro must produce evidence that any mistreatment was carried out because she is a woman.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude, or vulgar to all employees. To establish a hostile work environment, Ms. Miro must show that she was harassed because of her gender. The harassing conduct may or may not be sexual in nature. Instead, the harassment's defining characteristic is that it is linked to Ms. Miro's gender. The critical question is whether Ms. Miro, as a female, was subjected to harsh employment conditions to which those outside the protected class were not. If you find that Ms. Miro's treatment was not because she was a woman, then you must find for the Defendant City of Bridgeport.

Bridges v. Eastman Kodak Co., No. 91 CIV. 7985 (RLC), 1995 WL 529880, at *3 (S.D.N.Y. Sept. 8, 1995), opinion clarified, No. 91 CIV. 7985, 1996 WL 32325 (S.D.N.Y. Jan. 26, 1996), opinion corrected and superseded, No. 91 CIV. 7985 (RLC), 1996 WL 47304 (S.D.N.Y. Feb. 6, 1996), aff'd, 102 F.3d 56 (2d Cir. 1996); Vereen v. City of New Haven, No. 3:17-CV-1509 (VLB), 2018 WL 6069098, at *5 (D. Conn. Nov. 20, 2018); Brown v. Henderson, 257 F.3d 246, 252 (2001); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79-80 (1998); Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Leibovitz v. N.Y. City Transit Auth., 252 F. 3d 179, 189 (2001); Hayut v. State Univ. of N.Y., 352 F.3d 733, 744-45 (2d Cir. 2003); Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 514 (S.D.N.Y. 2010).

2.      **Element 3: Abusive Work Environment**

If you determine that Ms. Miro suffered unwelcome harassment because of her sex, you must next determine whether the harassment she suffered was sufficiently severe or pervasive to alter the conditions of her work environment and create an abusive working environment. Thus, Ms. Miro must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were altered. Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment.

This standard has both a subjective and objective component. You must look at all the circumstances surrounding the unwelcome conduct.

a.      <u>Objective Element</u>

To satisfy the objective component, the misconduct must be severe and pervasive. The matter of whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive environment" is to be decided on the totality of the circumstances, in light of such factors as:

(1)      The nature of the environment Ms. Miro worked in;

(2)      The nature of the conduct;

(3)      The severity of the conduct;

(4)      The frequency of the conduct;

(5)      Whether the conduct was physically threatening or humiliating;

(6)      Whether the conduct consisted of merely occasional teasing;

(7)      Whether the conduct interfered with Ms. Miro's work performance; and

(8)      The context in which the alleged sexual harassment occurred.

This is a partial list, as you must consider the totality of the circumstances. There is no mathematical formula to determine if the conduct was severe or pervasive. These factors must be considered together to obtain a realistic view of the work environment.

However, a plaintiff alleging a hostile work environment must demonstrate that either a single incident was extraordinarily severe or that a series of incidents were sufficiently continuous or concerted to have altered the conditions of her working environment. The more severe the harassing conduct, the less frequent it must be for you to find that it amounted to unlawful sexual harassment. In sum, to decide whether the severity and pervasiveness threshold has been reached, you must examine the specific circumstances of this case in their totality and evaluate the severity, frequency, and degree of abuse.

Ms. Miro is not claiming that there was one extraordinarily severe incident, but a series of incidents that she claims were continuous and concerted. Ms. Miro must produce evidence that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult, that the terms and conditions of her employment were altered.

The incidents must be more than episodic or occasional; they must be sufficiently continuous and concerted to be deemed pervasive. I am instructing you that isolated incidents, unless extremely serious, will not amount to a hostile environment. Bridgeport denies the existence of a hostile work environment and asserts that any incidents between Ms. Miro and Bridgeport or any of its representatives were isolated in nature and welcomed by her.

If you find that Ms. Miro has not proven that she did not suffer an objectively hostile work environment that was severely permeated with discriminatory intimidation, ridicule, and insult but instead that any incident was isolated, then your inquiry stops. You must find for the Defendant City of Bridgeport.

Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); Mills v. S. Conn. State Univ., 519 Fed Appx. 73, 75 (2d Cir. 2013); Desardouin v. City of Rochester, 708 F.3d 10, 105 (2d. Cir. 2013); Das v. Consol. Sch. Dist. Of New Britain, 369 Fed. Appx. 186, 189-90 (2d Cir. 2010); Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Russo v. N.Y. Presbyterian Hosp., 972 F. Supp. 2d 429, 446-47 (E.D.N.Y. 2013).

      (b)    <u>Subjective Element</u>

Under Title VII and CFEPA, Ms. Miro must also prove that the alleged misconduct created an environment that she subjectively perceived at the time as hostile or abusive to establish a hostile work environment claim. If you find that Ms. Miro herself did not believe that her work environment was hostile or abusive at the time, your inquiry must stop there, and you must find for the Defendant City of Bridgeport.

Robinson v. Harvard Prot. Servs., 495 Fed. Appx. 140, 141 (2d Cir. 2012); Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).

## 3.    Element 4: Bridgeport's Liability For Harassment

Ms. Miro must also demonstrate that a specific basis exists for imputing any objectionable conduct to her employer. An employer is not automatically liable for a hostile work environment perpetrated by its employees. Instead, an employer's liability for the abusive actions of its employees depends on whether the employee committing the abuse is a supervisor. An individual qualifies as a supervisor if the individual has the authority to undertake or recommend tangible employment decisions affecting the employee or to direct the employee's daily work activities.

If you decide that a supervisor caused Ms. Miro to suffer a hostile work environment, the City will not face any liability if either it exercised reasonable care to prevent or correct any

sexually harassing behavior or if Ms. Miro unreasonably failed to take advantage of any preventive or corrective opportunities provided by Bridgeport or any other opportunities to avoid harm. Your inquiry must stop there, and you must find for the Defendant City of Bridgeport.

**B.      COUNT THREE QUID PRO QUO SEXUAL HARASSMENT**

Ms. Miro's third count claims that Bridgeport subjected her to quid pro quo sexual harassment because of the alleged unwanted sexual advances of John Ricci.

A quid pro quo claim exists when an employer alters the terms and conditions of an employee's terms of employment because the employee refused to submit to a supervisor's sexual advances.

The elements of a quid pro sexual harassment claim are:

(1) The employee's supervisor made unwanted sexual advances toward the plaintiff;

(2) The employer subjected the plaintiff to an adverse employment action that changed the terms and conditions of the employee's employment; and

(3) A causal connection links the adverse employment action to a plaintiff's rejecting her supervisor's sexual advances.

Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 604 (2d Cir. 2006)

**1.      Element 1: Sexual Advances**

In evaluating the proof of the quid pro sexual harassment claim, you, the jury, must determine if Ms. Miro suffered unwanted sexual advances from her supervisor. First, it is Ms. Miro's burden to demonstrate by a preponderance of the evidence that John Ricci made sexual advances toward her. Second, you must examine whether Ms. Miro did not welcome Mr. Ricci's alleged attention by looking at her participation in or response to the conduct. If you find that

Ms. Miro welcomed or encouraged John Ricci's attention, then you must find for the Defendant City of Bridgeport.

Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994), cert. denied sub nom. Trustees of Columbia Univ. in City of New York v. Karibian, 512 U.S. 1213 (1994); McGregor v. Jarvis, No. 9:08-CV-770 GLS/RFT, 2010 WL 3724133, at *11 (N.D.N.Y. Aug. 20, 2010), report and recommendation adopted, No. 9:08-CV-770 GLS/RFT, 2010 WL 3724131 (N.D.N.Y. Sept. 16, 2010).

## 2.      Element 2: Plaintiff Subjected to Adverse Employment Action

Ms. Miro's quid pro quo claim requires that she demonstrates that she suffered a tangible adverse employment action. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant difference in benefits.

It is important to remember that Bridgeport's business decisions as Ms. Miro's employer are entitled to significant deference. The law does not authorize the courts or a jury to substitute their own judgment for an employer's business decision. The law does not permit a plaintiff to prevail merely because the trier of fact disagrees with the employer's decision or thinks the decision was unfair, unjust, or a mistake. The question is not whether the employer's method was sound, its judgments the best or the right ones, or whether you would have done the same thing if you were in the employer's shoes at the time. The question is whether Ms. Miro was subjected to an adverse employment action by an agent of the City of Bridgeport because of her gender.

If you determine that Bridgeport did not subject Ms. Miro to an adverse employment action because of her gender, you must find for the Defendant City of Bridgeport.

Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

**3.      Element 3: A Casual Connection Exists Between the Rejection of Unwanted Sexual Advances and the Adverse Employment Action**

Ms. Miro must finally demonstrate that a causal connection exists between an adverse employment action and her rejecting unwanted sexual advances. A plaintiff can establish a causal link in two ways. First, direct evidence that the offending supervisor threatened or warned her that failing to accede to his sexual advances would result in an adverse employment action. Second, when there is a lack of direct evidence, a plaintiff can provide circumstantial evidence that an adverse action followed closely in time after the employee rejected or complained about the supervisor's sexual advances. The period between the rejection and/or complaint and the adverse employment action should be days or weeks.

You must decide if the alleged unwelcomed sexual advances or demands were the basis for any of Bridgeport's decisions significantly affecting her employment; whether  Ms. Miro has proven by a preponderance of the evidence that Bridgeport had an unlawful motive in taking the actions about which Ms. Miro complains, and not whether the City made the correct decision. While an employer's judgment may appear wrong to outsiders, the only question you may answer is if Bridgeport's given reasons for its actions were a pretext for reaction to the alleged unwelcome sexual advances. Thus, the focus of deliberations must be on whether the City had an unlawful motive, not on the business judgment.

Suppose Ms. Miro fails to show by a preponderance of the evidence that either John Ricci made sexual advances towards her and warned or threatened her about not acceding to those advances or fails to show that he acted as an agent of the City. In either case, you must find for the Defendant City of Bridgeport. Furthermore, suppose Ms. Miro also fails to demonstrate that any rejection or making a complaint about any such alleged sexual advance is more than a few

days or weeks from any adverse employment action. Again, in that case, her quid pro quo claim must fail, and you must find for the City of Bridgeport.

Messer v. Fahnestock & Co. Inc., No. 103CV-04989-ENV-JMA, 2008 WL 4934608, at *15 (E.D.N.Y. Nov. 18, 2008); Carter v. New York, 310 F. Supp. 2d 468, 478 (N.D.N.Y. 2004), aff'd sub nom. Carter v. State of New York, 151 Fed. Appx. 40 (2d Cir. 2005).

## B.    AGENCY

I now must explain a legal principle called agency, because, in this case, Ms. Miro alleges that John Ricci acted as an agent of the City of Bridgeport in his actions toward her. A City cannot act on its own; of course, it can only act through its agents. An agency relationship is a fiduciary relation resulting from the manifestation of consent by one entity to another that the other shall act on its behalf, subject to its control and authorization. Generally, a principal, in this case the City of Bridgeport, is liable for the acts of its agent.

There are two kinds of agency relationships, one where the agent has actual authority to act on the other's behalf and one where there is an apparent authority to act on the principal's behalf. Apparent authority exists if the principal's conduct makes it appear that the agent has the authority to act on its behalf, and when acting in good faith, the party dealing with the agent reasonably believed the agent had the authority.

Bridgeport is a municipal corporation, and municipal corporations act through their employees and officials. Connecticut's public policy is that a municipal charter's terms limit an agent's authority when acting on behalf of a municipal corporation. Furthermore, anyone who deals with a municipality is held to be on legal notice of this limitation on any supposed agent's authority.

Ms. Miro alleges that John Ricci was the City's agent and promised her a position with the City that included a $60,000 annual salary with full benefits and was subject to a collective bargaining agreement. [insert direct statement about the City Charter] If you find that Mr. Ricci lacked the authority to make such a promise on the City's behalf and then bind it, then you must find for the Defendant City of Bridgeport on Ms. Miro's quid pro quo sexual harassment and retaliation claims.

 Butto v. Collecto Inc., 845 F. Supp. 2d 491, 497 (E.D.N.Y. 2012); Quinn & Co., LLC v. McDermott, No. HHDCV196111778S, 2021 WL 3722702, at *3 (Conn. Super. Ct. July 20, 2021); Yale Univ. v. Out of the Box, LLC, 118 Conn. App. 800, 808 (2010); Bellsite Dev., LLC v. Town of Monroe, 155 Conn. App. 131, 140–41, cert. denied, 318 Conn. 901 (2015); Fernandes v. Trumbull Bd. of Educ., No. FBTCV206099457, 2021 WL 1533936, at *4, n. 11 (Conn. Super. Ct. Mar. 23, 2021)

## VII.   DAMAGES

## A.    COMPENSATORY DAMAGES

If you find Ms. Miro proved her claims of a hostile work environment and/or quid pro sexual harassment, you must determine the damages she sustained. However, you should not construe these instructions as suggesting that I have any opinion on whether or not damages should be awarded in this case. In addition, since a defendant must address the issue of damages during the trial or completely lose their opportunity to do so, none of the evidence or discussion relating to damages presented on Bridgeport's behalf should be taken or construed by you as an admission by the City that it is liable or that Ms. Miro is entitled to a damages award.

If you find the City liable to Ms. Miro on any grounds advanced in this lawsuit, you should consider the question of damages. Compensatory damages are designed to fairly and

justly compensate a plaintiff for any injuries suffered. Therefore, if you decide to award compensatory damages, it is your responsibility to exercise your best judgment to determine the amount of money that will reasonably and fairly compensate Ms. Miro for the harm that was proximately caused by the defendant's wrongful conduct.

Compensatory damages may include reasonable compensation for any emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses a plaintiff suffered. This type of harm generally is called emotional distress. Ms. Miro may testify about any emotional distress she suffered. It is not necessary to provide medical testimony to recover for emotional distress. However, a plaintiff may not recover for emotional distress unless she presents evidence of such harm.

To recover damages, Ms. Miro must present sufficiently accurate and complete evidence for you to estimate the alleged damages with reasonable certainty. Reasonable certainty of proof is all that is required, and the amount of any damages may be determined approximately upon reasonable inferences and estimates. Damages, if any, must be fair, just and reasonable, and reflective of the harm Ms. Miro suffered. In addition, you must not speculate or guess as to damages, and you should not let your sympathy affect your consideration of the law and the evidence. Likewise, it is not part of your role as jurors to punish Bridgeport or to be generous. Merely because you have been presented with evidence of a plaintiff's damages does not mean you have to accept that evidence. Ms. Miro bears the burden to prove each element and item of damage of her claim, and it is not the City's burden to disprove them. Bridgeport has no obligation to present evidence to disprove or refute her damages claim. Thus, unless you find that Ms. Miro has proven each element of damage by a fair preponderance of the evidence, you must find for Bridgeport on that element of damages.

<u>Durr v. Slator</u>, 558 F. Supp. 3d 1, 44 (N.D.N.Y. 2021); <u>Dejesus v. Vill. of Pelham Manor</u>, 282 F.

Supp. 2d 162, 178 (S.D.N.Y. 2003); <u>Jennings v. Town of Stratford</u>, 263 F. Supp. 3d 391, 406 (D.

Conn. 2017); <u>Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.</u>, 681 F. Supp. 2d 340, 349

(E.D.N.Y. 2010).

**B.    CAUSATION AND DAMAGES**

I have said that you may award damages only for injuries that you find Ms. Miro has

proven by a preponderance of evidence to have directly resulted from Bridgeport's conduct. It is

essential to distinguish between the existence of a violation of Ms. Miro's rights and the

existence of injuries naturally resulting from that violation. For example, one can suffer a

violation of one's rights but suffer no damages at all.

<u>Chanoff v. U.S. Surgical Corp.</u>, 857 F. Supp. 1011, 1019 (D. Conn. 1994), <u>aff'd</u>, 31 F.3d 66 (2d

Cir. 1994), <u>cert. denied,</u> 513 U.S. 1058 (1994), <u>aff'd</u>, 33 F.3d 50 (2d Cir. 1994).

**C.    PROXIMATE CAUSE**

It is also important to remember that when an injury or loss follows a party's act or

omission and that injury or damage may be attributable through a causal connection to that act or

omission, then that act or omission is said to be the proximate cause of that injury or loss. If an

act or omission of a party is found to have been a substantial factor in bringing about an injury or

loss, then that act or omission is also a proximate cause of that injury or loss. However, if the act

or omission is not a substantial factor in bringing about that injury or loss, then it is not the

proximate cause. When that happens, the doer of the act or omission is not liable under the law

for the damage or loss.

<u>Pappas v. Watson Wyatt & Co.</u>, No. 3:04CV304EBB, 2007 WL 4178507, at *4 (D. Conn. Nov.

20, 2007).

**D.      DOUBLE RECOVERY AND COMPENSATORY DAMAGES**

If you return a verdict for Ms. Miro, I have said that you must award her such sum of money as you believe will fairly and justly compensate her for any injury you believe she sustained as a direct result of Bridgeport's conduct. Suppose you find that Bridgeport did, in fact, violate the law in more than one way. In that case, you must remember, in calculating the damages, that a plaintiff is entitled to be compensated only for injuries they actually suffered. In other words, Ms. Miro may not recover twice from the same injury. For example, suppose the defendant violated more than one law, but the resulting injury was no more significant than it would have been had the defendant violated only one law. In that case, you should award an amount of compensatory damages no greater than you would award if the defendant had violated only one law. If, on the other hand, the defendant violated more than one law and you can identify separate injuries resulting from the different violations, you should award an amount of compensatory damages equal to the total of the damages you believe will fairly and justly compensate Ms. Miro for the individual injuries she has suffered.

Gilead Cmty. Services, Inc. v. Town of Cromwell, 432 F. Supp. 3d 46, 82 (D. Conn. 2019), appeal withdrawn, No. 20-232, 2020 WL 4197302

**E.      NOMINAL DAMAGES**

Nominal damages may be awarded when a defendant has violated Title VII and CFEPA, but a plaintiff has suffered no actual damage as a natural consequence of that deprivation. The mere fact that a violation of Title VII and CFEPA occurred is an injury to the person entitled to enjoy that right, even when no actual damages flow from the deprivation. Therefore, if you return a verdict for Plaintiff on any or all of her Title VII and CFEPA claims, but find that she has failed to prove by a preponderance of the evidence that she suffered any actual damages,

then you may award nominal damages of one dollar in the area on the verdict form for

compensatory damages.

Amato v. City of Saratoga Springs, N.Y., 170 F.3d 311, 317 (2d Cir. 1999); Optima Media Grp.

Ltd. v. Bloomberg L.P., No. 17-CV-01898 (AJN), 2021 WL 1941878, at *18 (S.D.N.Y. May 14,

2021)

Done in Stratford, CT, this 7th day of July 2023.

THE DEFENDANT

By:     */s/Reese Mitchell*_____
        Reese Mitchell (ct30226)
        Mitchell & Sheahan, P.C.
        999 Oronoque Lane, Suite 203
        Stratford, CT 06614
        Tel.:  (203) 873-0240
        Fax:  (203) 873-0235
        reesemitchell@mitchellandsheahan.com

        Counsel for the Defendant

## CERTIFICATION

I hereby certify that on July 7, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/Reese Mitchell*
Reese Mitchell (ct30226)