**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LISA MIRO, | ) | CIVIL ACTION NO: |
|      Plaintiff, | ) ) | 3:20-CV-00346 (VAB) |
|   v. | ) | |
| CITY OF BRIDGEPORT, | ) ) | |
|      Defendant. | ) ) | July 7, 2023 |

<u>**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S DAMAGES ANALYSIS**</u>

Pursuant to Federal Rules of Civil Procedures Rule 34, Defendant City of Bridgeport, through its attorneys Mitchell & Sheahan, P.C., hereby moves to preclude Plaintiff Lisa Miro from offering evidence, testimony, or argument regarding her damages analysis.

**I.**    <u>**INTRODUCTION**</u>

Ms. Miro has brought claims for a hostile work environment based on her gender and quid pro sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. § 2000e et. seq. ("Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et. seq. ("CFEPA"). Pursuant to a court order, Ms. Miro has submitted a damages analysis and claims $1,202,125.00 in monetary damages. <u>See</u> Plaintiff's Damages Analysis, attached as Ex. A.

However, Ms. Miro's damages analysis and any anticipated testimony lack sufficient foundation and are based on mere speculation and conjecture. These deficiencies render her analysis unreliable and prejudicial to Bridgeport. Therefore, the City requests that the Court preclude Ms. Miro from introducing such evidence or making any arguments regarding her damages at trial.

1

II.   **FACTS**

On July 13, 2021, Ms. Miro complied with this Court's order to produce a damages analysis. [Docket No. 49]. Plaintiff's damages consisted of $ 1,202,125.00 of monetary damages and a request that her employment "file reflect a lack of termination and that she be provided with letters of recommendations . . . ." See Ex. A.

On September 10, 2021, Bridgeport deposed Ms. Miro about how she calculated her $1,202,125.00 worth of monetary damages. During her deposition, Ms. Miro could not justify her calculated damages. Ms. Miro testified that she "just calculated very simply in [her] head the years that [she] was there, the years after" she left her employment. See September 10, 2021, Deposition of Lisa Miro ("Miro Depo. Vol. I"), attached as Ex. B, at 200:8-11. Ms. Miro then stated that she did her research by looking at internet websites. See Miro Depo. Vol. I at 202:3-5, 203:7-15. Ms. Miro also requested $25,000 of attorneys' fees despite being a pro se plaintiff while drafting her damages analysis. See Ex. A; Miro Depo. Vol I 260:1-8. Ms. Miro then tried to distract from this inconvenient truth by claiming the number arose from research she found online or cut from whole cloth in her mind. See Miro Depo. Vol. I at 260:8-265:6.

On September 23, 2021, Ms. Miro received a request for production asking that she "[p]roduce all non-privileged documents supporting [her] $1,202,125.00 damages analysis." See Defendant's First Request for Production of Documents, attached as Ex. C, Request No. 5. After the Court compelled her answer [Docket Nos. 76, 85], Ms. Miro responded, "[a]s I said during my testimony, I used computer information to assist me in arriving at the numbers that I used. **I did not retain that information**." See Lisa Miro's Responses to Requests for Production, dated December 8, 2021, attached as Ex. D, Response No. 5 (emphasis added).

Then on December 14, 2021, Bridgeport disclosed Dr. Donald M. May, Ph.D., CPA, as its economics expert witness. See Defendant's Disclosure of Expert Witness, dated December 14, 2021, attached as Ex. E; Expert Declaration of Donald M. May Ph.D. CPA ("May Report"), attached as Ex. F. In his report, Dr. May concluded that Ms. Miro's damages analysis was "fatally flawed" and that she did not suffer any economic damage. See May Report, at p. 3. Ms. Miro has never disclosed any expert witness to support her contention that she has suffered $1,202,125.00 worth of damages.

## III.   ARGUMENT

### A.   LEGAL STANDARD

District courts have the authority to manage their proceedings, including ruling on motions in limine. Highland Capital Mgmt., L.P. v. Schneider, 551 F.Supp.2d 173, 176 (S.D.N.Y. 2008). Motions in limine enable the Court to rule before trial on the relevance and reliability of forecasted evidence. SLSJ, LLC v. Kleban, 277 F. Supp. 3d 258, 262–63 (D. Conn. 2017); see Ferrostaal, Inc. v. M/V Tupungato, 230 Fed. Appx. 11, 13 (2d Cir. 2007) (a trial court did do its duty despite ruling on a motion in limine about an expert's scientific reliability). "[M]otion[s] in limine may be directed toward limiting the subjects about which testimony may be offered, or about which particular witnesses may testify, including expert witnesses." SLSJ, LLC, 277 F. Supp. 3d at 262–63.

### B.   MS. MIRO'S DAMAGES ANALYSIS FAILED TO MEET THE BURDEN IMPOSED ON HER BY FEDERAL RULE 26

"[A] party must, without awaiting a discovery request provide to the other parties . . . a computation of each category of damages claimed . . . [and] make available for inspection and copying . . . the documents or other evidentiary materials, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and

extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). "[B]y its very terms Rule 26(a)

requires more than providing—without any explanation—undifferentiated financial statements; it

requires a 'computation,' supported by documents." Design Strategy, Inc. v. Davis, 469 F.3d

284, 295 (2d Cir. 2006). A party has a mandatory duty to provide its damages computations and

_calculations_ voluntarily "without awaiting a discovery request." Id. citing FRCP Rule 26(a).

Rule 26(a) "imposes a . . . functional equivalent of a standing Request for Production under Rule

34." Id. at 296.

     Furthermore, Rule 26(e) describes a party's ongoing duty to promptly supplement and

correct its disclosures and responses, such as its damages analysis. Probatter Sports, LLC v.

Sports Tutor, Inc., No. 3:05-CV-01975-VLB, 2016 WL 1178051, at *7 (D. Conn. Mar. 23,

2016).

### 1.    Ms. Miro's Damages Analysis is Fatally Flawed

     Ms. Miro's damages analysis is fatally flawed because it lacks any foundation for her

calculations beyond her conjecture and assumptions. An estimate of a plaintiff's injury must

have some basis in reality. Washington v. Kellwood Co., 105 F. Supp. 3d 293, 324 (S.D.N.Y.

2015) (expert witness' opinion precluded because it lacked any evidentiary basis and was pure

speculation). For instance, Ms. Miro claims a loss of future income of $300,000 based solely on

calculations made in her "head." See Miro Depo. Vol. I at 200:8-11. Ms. Miro also randomly

chooses 30% of her estimated loss income as lost benefits, but she has no basis for this

assumption. Ms. Miro admitted that the amount of her backpay was based on an assumed

$67,000 or "somewhere around there . . . give or take." See Miro Depo. Vol. I at 201:4-6.

     Another example of the damage analysis' lack of grounding in reality is her claim of

$25,000 in attorneys' fees months before she had an attorney in the above-captioned matter. Ms.

Miro was a pro se plaintiff until September 10, 2021. [Docket No. 62]. Ms. Miro provided her damages analysis on July 13, 2021. <u>See</u> Ex. A.

### 2.     Ms. Miro Has Failed to Correct or Supplement Her Damages Analysis

Bridgeport brought to Ms. Miro's attention the deficiencies in her damages analysis. <u>See</u> Miro Depo. Vol. I at 198:21-25. When confronted with these deficiencies and after several attempts at gaslighting the issue, Ms. Miro eventually conceded that her economic damages were based on her uninformed calculations but that she would provide the information backing her assertions. Id. at 202:19-203:6. When Ms. Miro was asked to provide her calculations, she claimed she did not retain the information. Ms. Miro has neither supplemented nor corrected her damages analysis to show how she arrived at her calculations.

### C.     FEDERAL RULE OF CIVIL PROCEDURE RULE 37(c)(1) DICTATES PRECLUSION IS AN APPROPRIATE REMEDY FOR FAILING TO PROVIDE A PROPER DAMAGES CALCULATION

Rule 37(c)(1) addresses a party's failure to supplement or correct their damages analysis when they receive knowledge of its deficiencies. <u>Fuller v. Interview, Inc.</u>, No. 07 CIV. 5728 RJSDF, 2011 WL 724533, at *4 (S.D.N.Y. Feb. 25, 2011). According to Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or a trial, unless the failure was substantially justified or is harmless." Therefore, the Court can bar a plaintiff from using deficient disclosure at trial unless the failure was substantially justified or harmless. <u>Gemmink v. Jay Peak, Inc.</u>, No. 1:12-CV-32-JGM, 2013 WL 3730937, at *1 (D. Vt. July 15, 2013). Rule 37(c)(1) does not require a showing of bad faith, and its purpose is to prevent the practice of 'sandbagging' an adversary with new evidence. <u>Seymour v. Jasami Trucking LLC</u>, No. 3:16-CV-5(AWT), 2019 WL 13215728, at *1 (D. Conn. Aug. 12, 2019).

While Ms. Miro was a pro se plaintiff when she drafted her damages calculations, she obtained counsel on September 10, 2021. There is no justifiable reason why Ms. Miro has not supplemented her damages calculations. Furthermore, her failure to do so is not harmless because Ms. Miro may bring out previously undisclosed information on how she calculated her damages and ambush the City during the trial. This will prejudice the City by forcing it to prepare to meet new testimony and even creates the specter of a continuance to allow the City time to digest and then oppose the information. See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

The Court should exercise its discretion under Rule 37(c)(1) and preclude Ms. Miro from testifying, offering evidence, or arguing about her damages because she has failed to comply with her duty to disclose under the Federal Rules of Civil Procedure.

**D.     MS. MIRO'S NON-MONETARY DAMAGES REQUESTS ARE IMPROPER**

In addition to Ms. Miro's demand for approximately 1.2 million dollars, she requests that the City modify her employment file to "reflect a lack of termination and that she be provided with letters of recommendations . . . ." See Ex. A. These requests are both improper and moot.

First, the City did not terminate Ms. Miro's employment. Ms. Miro's position concluded because it had exceeded a seasonal position's 120 days. Furthermore, Ms. Miro rejected the City's employment offer at the Water Pollution Control Authority through her then-lawyer Attorney Thomas Bucci on September 20, 2017. See E-mail between T. Bucci and J. Mitola, dated September 20, 2017, attached as Ex. G.

Second, the undersigned is unaware of any authority that would allow the Court to compel the City to issue Ms. Miro letters of recommendation for future potential employment. For these reasons, the Court should preclude Ms. Miro from claiming that her file states she was

terminated or that she has asked the Court to compel the City to provide her with letters of recommendation.

**IV.** **CONCLUSION**

WHEREFORE the above reasons, Bridgeport requests the Court preclude Ms. Miro from testifying, offering evidence, or making oral arguments about the damages she has allegedly suffered because of the uncorrected and unsupplemented deficiencies in her damages analysis.

Done in Stratford, CT, this 7th day of July 2023.

THE DEFENDANT

By:   */s/Reese Mitchell*
Reese Mitchell (ct30226)
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
Tel.:  (203) 873-0240
Fax:  (203) 873-0235
reesemitchell@mitchellandsheahan.com

Counsel for the Defendant

## **CERTIFICATION**

I hereby certify that on July 7, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/Reese Mitchell*
Reese Mitchell (ct30226)

# EX. A

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LISA MIRO, | ) | CIVIL ACTION NO: |
|     Plaintiff, | ) | 3:20-cv-00346(VAB) |
| v. | ) | |
| CITY OF BRIDGEPORT, | ) | July 13, 2021 |
|     Defendant. | ) | |

**COVER LETTER FOR DAMAGES ANALYSIS**

      The Plaintiff, Lisa Miro (hereinafter referred to as the "Plaintiff) attached hereto submits her Damages Analysis which was requested by the Court.

      As set forth in more detail in the accompanying document, the Plainitiff moves to have the damages analysis submitted to the Court.

THE PLAINTIFF:
LISA MIRO

By:_____
Lisa Miro, Pro Se
16 Louvain Street
Fairfield, Connecticut
06825
203-521-1255

1

## **CERTIFICATION**

I hereby certify that copies of the foregoing were mailed, postage prepaid on this the 13th day of July 2021 to:

Reese B. Mitchell
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
Tel.: (203) 873-0240
Fax: (203) 873-0235
reesemitchell@mitchellandsheahan.com

BY: _____
Lisa Miro
The Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **LISA MIRO,** | **CIVIL ACTION NO:** |
| **Plaintiff** | **CASE NO.  3:20-cv-00346(VAB)** |
| **v.** | |
| **CITY OF BRIDGEPORT,** | **JULY 13, 2021** |
| **Defendant.** | |

**PLAINTIFF'S DAMAGE ANALYSIS**

The Plaintiff in the above captioned matter hereby submits her damage analysis

for the above referenced matter.

**Economic Damages**

| | |
|---|---|
| **Past Lost Wages 06/13/2016 to 09/21/2017** | **$ 31,125.00** |
| **LOSS and or LACK OF Employment Benefits Promised (30% of Expected Salary) For 06/13/2016 to 09/21/2017** | **$ 18,000.00** |
| **Back Pay from 9/21/2017 for Service that Would Have Continued if not Wrongfully Terminated** | **$ 225,000.00** |
| **LACK OF Employment Benefits Promised (30% of Expected Salary) For 9/21/2017 to Present** | **$ 63,000.00** |
| **Future Pay from 7/1/2021 for Service that Would Have Continued if not Wrongfully Terminated Till 7/1/2026** | **$ 300,000.00** |
| **LACK OF Employment Benefits Promised (30% of Expected Salary) For Present to 7/1/2016 if not Wrongfully Terminated** | **$ 90,000.00** |

**Non-Economic Damages**

| | | |
|---|---|---|
| Mental anguish, emotional distress and humiliation related to wrongful termination | $ | 150,000.00 |
| Mental and emotional distress related to sexual harassment and a hostile work environment | $ | 150,000.00 |
| Attorney's Fees: | $ | 25,000.00 |
| Retaliation | $ | 150,000.00 |
| **TOTAL** | **$** | **1,202,125.00** |

The Plaintiff also seeks to have her file reflect a lack of termination and that she be provided with letters of recommendation in order to find appropriate new employment. The Plaintiff reserves the right to supplement and/or amend the above damage analysis based on receipt of additional information and/or completion of discovery.

THE PLAINTIFF,
LISA MIRO

By:_____
Lisa Miro, Pro Se
16 Louvain Street
Fairfield, Connecticut 06825
203-521-1255

## **CERTIFICATION**

I hereby certify that copies of the foregoing were mailed, postage prepaid on this the 13th day of July 2021 to:

Reese B. Mitchell
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
Tel.: (203) 873-0240
Fax: (203) 873-0235
reesemitchell@mitchellandsheahan.com

BY: _____
Lisa Miro
The Plaintiff

# EX. B

Page 1

1              UNITED STATES DISTRICT CONNECTICUT

2                  DISTRICT OF CONNECTICUT

3

4    _____

5                                    )

6    LISA MIRO,                      )

7                       Plaintiff    )     DOCKET NUMBER

8          -vs-                      )     3:20C-CV-00346(VAB)

9    CITY OF BRIDGEPORT,             )

10                      Defendant    )

11   _____     )

12

13

14              DEPOSITION OF LISA MIRO

15   taken from Daly, Weihing & Bochanis, 1776 North Avenue

16   Bridgeport before Jean Kindley, RMR, CRR, LSR No. 003 and

17   Notary Public in and for the State of Connecticut, on the

18   10th day of September, 2021 at 12 noon.

19

20

21              DEL VECCHIO REPORTING SERVICES, LLC
                     781 Boston Post Road
22                     P.O. Box 1248
                 Madison, Connecticut  06443
23

24

25

                    DEL VECCHIO REPORTING
                      (203) 907-9511

1            two hours left.

2                    MR. MITCHELL:  Yes, we do.

3                    THE WITNESS:  I'm so sorry.

4    BY MR. MITCHELL:

5        Q    Well, if you would go to LL.  I think it's LL.

6        A    Okay.

7        Q    That's your damages analysis?

8        A    So, I'll go to LL.

9        Q    I know you have it because we've gone through

10   MM.

11       A    Yes, I definitely have that one.  I got it.

12       Q    Okay.

13       A    Reese, I definitely have it.

14       Q    Damage analysis, correct?

15       A    Yes.

16       Q    Okay.  Did you have it -- before we start,

17   because you were pro se at the time, did you have any help

18   drafting it?

19       A    No.  Tom helped me with the State, so I just

20   kind of copied.

21       Q    Okay.  So, you don't know where the economic

22   damages came from?

23       A    No.  As I said, I -- Tom helped me with the

24   State, I just had this copied because I was pro se for this

25   one.

1              MR. MITCHELL:   Tom, Tom, Tom, stop.

2    BY MR. MITCHELL:

3         Q       All right.  So, you don't know where the

4    economic damages came from, correct?

5         A       What I did, Reese, is, quite frankly, I know

6    what the job was supposed to pay.

7         Q       Okay.

8         A       I just calculated very simply in my head the

9    years that I was there, the years after, if I was not

10   wrongfully terminated.  My cousin is an attorney, not in

11   this state, but we kind of went through it.

12        Q       Who is that?

13        A       Matthew Magelver.

14        Q       Where is he licensed?

15        A       He took the bar, he is in Vermont, he just

16   retired as a colonel in the U.S. military.

17        Q       Okay.  All right.  Was he in the JAG Corps?

18        A       He was not in the JAG Corps, no, he was a

19   colonel.

20        Q       You could be a colonel in the JAG?

21        A       Oh, well, I believe a JAG is the attorney.

22        Q       They are.

23        A       I have no idea.

24        Q       Okay.

25        A       He flew helicopters.

1    Q    Okay.

2    A    And planes and --

3    Q    Okay.  Where did you get $225,000 from?

4    A    Because I went back to backpay because initially

5  my job, I was told that it was worth up to 60,700, somewhere

6  around there, you know, give or take.

7    Q    Okay.  So, this is --

8    A    I just calculated that.

9    Q    Okay.  So, this is based on your alleged breach

10  of contract in your state claim, correct?

11               MR. WEIHING:  Object to the form.

12               THE WITNESS:  I just did my best.

13  BY MR. MITCHELL:

14    Q    Okay.  I'm trying to figure out how sexual

15  harassment, you claim sexual harassment, how it has anything

16  to do with some of these numbers?

17    A    Oh.  Well, I'm not an attorney, so I'm sorry.

18    Q    Well, it doesn't matter because you drafted this

19  as a pro se, so --

20    A    All right.

21    Q    -- so it does matter.

22               MR. WEIHING:  Ask a question.  You guys

23               argue --

24  BY MR. MITCHELL:

25    Q    Where does -- where do the numbers come from?

1      A      I do my own research.

2      Q      What research?

3      A      I go on to Justia Law, I go on to different

4   websites, I go on to the EEOC website, I have files of

5   cases --

6      Q      Okay.

7      A      -- that I have read.

8      Q      Miss Miro, you have an obligation to provide me

9   with those files that you created as a pro se in coming up

10  with these numbers because it has nothing to do with sexual

11  harassment.

12                 MR. WEIHING:   Do you have a question,

13                 Reese?

14                 MR. MITCHELL:   That is a question.   Will

15                 she provide that information?

16                 THE WITNESS:   Provide the information of?

17  BY MR. MITCHELL:

18     Q      The research, will you provide the research?

19     A      I just told you it's in my own head that I went

20  through, that I note from the city and how the city changed

21  salary.

22     Q      You said you had boxes and boxes?

23     A      I did not say I had boxes and boxes, Reese.

24                 MR. MITCHELL:   Jean, could you please read

25                 back where she talked about boxes or files,

Page 260

1      Q      Where did that $25,000 come from?

2      A      I didn't see it.  Attorney's fees.

3      Q      Okay.  Because up until 11:39 this morning, you

4 were unrepresented, right?

5      A      Not in the State Court.

6      Q      This is the Federal.

7      A      I know, but I've been talking about --

8      Q      We're talking the Federal damages analysis.

9      A      Please, I know, Reese, let me talk.  Please.  I

10 told you that I do my own research, I have it.  You will get

11 the files, just all kinds of cases.

12      Q      Miss Miro, that's not the answer.

13      A      I don't know how I got to it.  I don't know what

14 else to tell you.

15      Q      Who else has helped you?

16      A      Nobody has helped me with this.

17      Q      Is the $25,000 based on an estimate of what your

18 time is worth?

19      A      No, I literally just told you earlier that I

20 went through Justia.  You will see it when you get it.  You

21 will see all kinds of cases.

22      Q      That doesn't matter.

23      A      It does.

24      Q      Miss Miro, specifically attorney's fees in the

25 Federal case --

Page 274

1          Witness my hand and Seal as such Notary Public

2     at New Haven, Connecticut this 11th day of September, 2021.

3

4

5     _____                    NOTARY PUBLIC

6

7

8

9     My Commission Expires:

10    November 30, 2022

11

12    CSR NO. 003

13

14

15

16

17

18

19

20

21

22

23

24

25

# EX. C

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LISA MIRO, | )    CIVIL ACTION NO: |
|        Plaintiff, | )    3:20-cv-00346(VAB) |
| | ) |
|    v. | ) |
| | )    September 23, 2021 |
| CITY OF BRIDGEPORT, | ) |
|        Defendant. | ) |

<u>**DEFENDANT'S FIRST REQUEST FOR PRODUCTION FOR DOCUMENTS**</u>

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant City of Bridgeport, by and through its attorneys, Mitchell & Sheahan, P.C., request that Plaintiff, Sandra Benson, provide legible copies of all of the documents requested herein to be delivered to the offices of Mitchell & Sheahan, P.C., 999 Oronoque Lane, Suite 201, Stratford, CT 06614, within thirty days from the date of certification of service of this First Request for Production.

I.    <u>**INSTRUCTIONS**</u>

In responding to these requests, Plaintiff shall furnish all available information, including information in the possession of Plaintiff's investigators and all persons acting on Plaintiff's behalf, and not merely such information known of Plaintiff's own personal knowledge. If Plaintiff cannot respond to these requests in full after exercising due diligence to secure the information requested, Plaintiff shall so state and answer to the extent possible, specifying the nature of the inability to fully comply.

Questions regarding the interpretation of the requests should be resolved in favor of the broadest possible construction.

The requests which follow are to be considered as continuing, and Plaintiff is requested to provide, by way of supplementary responses thereto, such additional information as Plaintiff or any persons acting on Plaintiff's behalf may hereafter obtain which will augment, clarify, or otherwise modify the responses now given. Such supplementary responses are to be served upon counsel within thirty days after receipt of such information or documents.

If any file demanded herein or any document formerly contained therein as hereinafter described is no longer in Plaintiff's possession, custody or control, identify the file or document and the reason for loss of possession, custody or control thereof.

In accordance with Fed.R.Civ.P. 26(b), when a claim of privilege or work product protection is asserted in response to a discovery request for documents or electronically stored information, the party asserting the privilege or protection shall serve on all parties a privilege log containing the following information:

(1) The type of document or electronically stored information;

(2) The general subject matter of the document or electronically stored information;

(3) The date of the document or electronically stored information;

(4) The author of the document or electronically stored information; and

(5) Each recipient of the document or electronically stored information.

These requests are in addition to any disclosures required under the federal or local civil rules of procedure.

## II.   **DEFINITIONS**

As used herein, the following terms shall have the meanings indicated below:

1.    *Communication.* The term 'communication' means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2

2. *Document.* The term 'document' is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or nonidentical copy is a separate document within the meaning of this term. A request for production of 'documents' shall encompass, and the response shall include, electronically stored information, as included in Federal Rule of Civil Procedure 34, unless otherwise specified by the requesting party.

3. *Identify (With Respect to Persons).* When referring to a person, to 'identify' means to provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4. *Identify (With Respect to Documents or Electronically Stored Information).* When referring to documents or electronically stored information, to 'identify' means to provide, to the extent known, information about the (i) type of document or electronically stored information; (ii) its general subject matter; (iii) the date of the document or electronically stored information; and (iv) author(s), addressee(s) and recipient(s).

5. *Parties.* The terms 'plaintiff' and 'defendant' as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.  *Person.* The term 'person' means any natural person or any business, legal or governmental entity or association.

7.  *Concerning.* The term 'concerning' means relating to, referring to, describing, evidencing or constituting.

8.  The following rules of construction apply to all discovery requests:

> *(1) All/Each. The terms 'all' and 'each' shall both be construed as all and each.*

> *(2) And/Or. The connectives 'and' and 'or' shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.*

> *(3) Number. The use of the singular form of any word includes the plural and vice versa.*

## III.  **MANNER OF PRODUCTION**

Documents produced pursuant to this request should be separately produced for each paragraph of this request, or, in the alternative, shall be identified as complying with the particular paragraph or paragraphs of the request to which they are responsive.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.  Produce any and all non-privileged documents related to the claims you have brought against Defendant.

**RESPONSE:**

4

2.      Produce all text messages between Mayor Joseph Ganim and you between January 1, 2015, and September 22, 2017, as mentioned during your deposition on September 10, 2021. See Deposition of Lisa Miro at 50:8-51:25.

**RESPONSE:**

3.      Produce legible copies of all written communications between Danny Roach and yourself between January 1, 2015, and September 22, 20217, as mentioned during your deposition on September 10, 2021. See Deposition of Lisa Miro at 109:6-110:19.

**RESPONSE:**

4.      Produce all non-privileged documents in your possession relating to your claims filed with the State Board of Labor Relations between August 2017 and May 2018.

**RESPONSE:**

5.      Produce all non-privileged documents supporting your $1,202,125.00 damages analysis.

**RESPONSE:**

6.     Produce the medical records from Dr. Kunkes supporting your claim for emotional distress.

**RESPONSE:**

7.     All voicemails from Mayor Joseph Ganim that are in your possession that you discussed on Facebook, as stated in your September 10, 2021 deposition. See Deposition of Lisa Miro 246:10-19.

**RESPONSE:**

8.     Produce all written communications between yourself and John Ricci from June 8, 2016, to September 22, 2017.

**RESPONSE:**

9.     Produce all written communications between yourself and Eric Amado from June 8, 2016, to September 22, 2017.

**RESPONSE:**

10.    Produce all written communications between yourself and Lynn Cervone related to your employment with the City of Bridgeport between June 8, 2016, to September 22, 2017.

**RESPONSE:**

11.    Produce all written communications between yourself and Lynn Cervone between January 1, 2015, and June 8, 2016, related to the Joseph Ganim mayoral election.

**RESPONSE:**

12.    Produce all written communications between you and Ray Wiley regarding your employment with the City of Bridgeport between June 8, 2016, to September 22, 2017.

**RESPONSE:**

13.    Produce all documents in your possession that support your allegations that John Ricci inappropriately touched you.

**RESPONSE:**

14.    Produce all written communications between yourself and Sam Dizenso regarding your employment with the City of Bridgeport between June 8, 2016, to September 22, 2017.

**RESPONSE:**

15.    Produce all written communications between yourself and Attorney Stephen Mednick related to your alleged harassment by John Ricci.

**RESPONSE:**

16.    Produce all non-privileged documents supporting your assertions that you suffered a hostile work environment between June 8, 2016, and September 22, 2017, based on your sex.

**RESPONSE:**

17.    Produce all documents supporting your assertion that John Ricci invited you to Florida on or about June 19, 2016.

**RESPONSE:**

18.    Produce any and all documents supporting your allegations that John Ricci provided "favors" to female companions that would lead to financial benefits from John Ricci.

**RESPONSE:**

19.     Produce any and all documents showing the City of Bridgeport giving John Ricci authority to make promises regarding any term and condition of your potential employment between January 1, 2015, and June 13, 2017.

**RESPONSE:**

By:     /s/ Reese Mitchell
        Reese B. Mitchell (ct ct30266)
        Mitchell & Sheahan, P.C.
        999 Oronoque Lane, Suite 203
        Stratford, CT 06614
        203-873-0240
        203-873-0235 (fax)
        reesemitchell@mitchellandsheahan.com

        Counsel for Defendant

## CERTIFICATION

I hereby certify that on September 23, 2021, a copy of the foregoing was served by electronic and/or United States mail to all counsel and pro se parties of record as follows:

Thomas J. Weihing
Daly, Weihing & Bochanis
1776 North Ave
Bridgeport, CT 06604
lawdwb@sbcglobal.net

/s/ Reese B. Mitchell
Reese B. Mitchell (ct30266)
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
203-873-0240
203-873-0235 (fax)
reesemitchell@mitchellandsheahan.com

Counsel for Defendants

# EX. D

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LISA MIRO, | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | 3:20-cv-00346(VAB) |
| | ) | |
| v. | ) | |
| CITY OF BRIDGEPORT, | ) | September 23, 2021 |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S FIRST REQUEST FOR PRODUCTION FOR DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant City of Bridgeport, by and through its attorneys, Mitchell & Sheahan, P.C., request that Plaintiff, Sandra Benson, provide legible copies of all of the documents requested herein to be delivered to the offices of Mitchell & Sheahan, P.C., 999 Oronoque Lane, Suite 201, Stratford, CT 06614, within thirty days from the date of certification of service of this First Request for Production.

## I.   INSTRUCTIONS

In responding to these requests, Plaintiff shall furnish all available information, including information in the possession of Plaintiff's investigators and all persons acting on Plaintiff's behalf, and not merely such information known of Plaintiff's own personal knowledge. If Plaintiff cannot respond to these requests in full after exercising due diligence to secure the information requested, Plaintiff shall so state and answer to the extent possible, specifying the nature of the inability to fully comply.

Questions regarding the interpretation of the requests should be resolved in favor of the broadest possible construction.

The requests which follow are to be considered as continuing, and Plaintiff is requested to provide, by way of supplementary responses thereto, such additional information as Plaintiff or any persons acting on Plaintiff's behalf may hereafter obtain which will augment, clarify, or otherwise modify the responses now given. Such supplementary responses are to be served upon counsel within thirty days after receipt of such information or documents.

If any file demanded herein or any document formerly contained therein as hereinafter described is no longer in Plaintiff's possession, custody or control, identify the file or document and the reason for loss of possession, custody or control thereof.

In accordance with Fed.R.Civ.P. 26(b), when a claim of privilege or work product protection is asserted in response to a discovery request for documents or electronically stored information, the party asserting the privilege or protection shall serve on all parties a privilege log containing the following information:

(1) The type of document or electronically stored information;

(2) The general subject matter of the document or electronically stored information;

(3) The date of the document or electronically stored information;

(4) The author of the document or electronically stored information; and

(5) Each recipient of the document or electronically stored information.

These requests are in addition to any disclosures required under the federal or local civil rules of procedure.

## II.   **DEFINITIONS**

As used herein, the following terms shall have the meanings indicated below:

1.   *Communication.* The term 'communication' means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.   *Document.* The term 'document' is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or nonidentical copy is a separate document within the meaning of this term. A request for production of 'documents' shall encompass, and the response shall include, electronically stored information, as included in Federal Rule of Civil Procedure 34, unless otherwise specified by the requesting party.

3.   *Identify (With Respect to Persons).* When referring to a person, to 'identify' means to provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.   *Identify (With Respect to Documents or Electronically Stored Information).* When referring to documents or electronically stored information, to 'identify' means to provide, to the extent known, information about the (i) type of document or electronically stored information; (ii) its general subject matter; (iii) the date of the document or electronically stored information; and (iv) author(s), addressee(s) and recipient(s).

5.   *Parties.* The terms 'plaintiff' and 'defendant' as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.      *Person.* The term 'person' means any natural person or any business, legal or governmental entity or association.

7.      *Concerning.* The term 'concerning' means relating to, referring to, describing, evidencing or constituting.

8.      The following rules of construction apply to all discovery requests:

   (1) *All/Each. The terms 'all' and 'each' shall both be construed as all and each.*

   (2) *And/Or. The connectives 'and' and 'or' shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.*

   (3) *Number. The use of the singular form of any word includes the plural and vice versa.*

## III.   MANNER OF PRODUCTION

Documents produced pursuant to this request should be separately produced for each paragraph of this request, or, in the alternative, shall be identified as complying with the particular paragraph or paragraphs of the request to which they are responsive.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce any and all non-privileged documents related to the claims you have brought against Defendant.

**RESPONSE:** Documents furnished in previous discovery under cover of previous document requests. I cannot locate any others at this time.

2.      Produce all text messages between Mayor Joseph Ganim and you between January 1, 2015, and September 22, 2017, as mentioned during your deposition on September 10, 2021. See Deposition of Lisa Miro at 50:8-51:25.

RESPONSE: Under cover of question two, see attached.

3.      Produce legible copies of all written communications between Danny Roach and yourself between January 1, 2015, and September 22, 20217, as mentioned during your deposition on September 10, 2021. See Deposition of Lisa Miro at 109:6-110:19.

RESPONSE: Under the cover of question three, see attached.

4.      Produce all non-privileged documents in your possession relating to your claims filed with the State Board of Labor Relations between August 2017 and May 2018.

RESPONSE: Documentation previously furnished under previous discovery under cover of previous document requests. I cannot locate any others at this time.

5.      Produce all non-privileged documents supporting your $1,202,125.00 damages analysis.

RESPONSE: As I said during my testimony, I used computer information to assist me in arriving at the numbers that I used. I did not retain that information. Other information was obtained verbally to individuals, as I testified at my deposition.

6.    Produce the medical records from Dr. Kunkes supporting your claim for emotional distress.

**RESPONSE:** **See attached documentation.**

7.    All voicemails from Mayor Joseph Ganim that are in your possession that you discussed on Facebook, as stated in your September 10, 2021 deposition. See Deposition of Lisa Miro 246:10-19.

**RESPONSE:** **See attached transcript of voicemail from August 25, 2015.**

8.    Produce all written communications between yourself and John Ricci from June 8, 2016, to September 22, 2017.

**RESPONSE:** **See attached.**

9.    Produce all written communications between yourself and Eric Amado from June 8, 2016, to September 22, 2017.

**RESPONSE:** **See atttached.**

10.     Produce all written communications between yourself and Lynn Cervone related to your employment with the City of Bridgeport between June 8, 2016, to September 22, 2017.

**RESPONSE:** I cannot locate any written communications related to question ten above.

11.     Produce all written communications between yourself and Lynn Cervone between January 1, 2015, and June 8, 2016, related to the Joseph Ganim mayoral election.

**RESPONSE:** I cannot locate any written communications related to question eleven above.

12.     Produce all written communications between you and Ray Wiley regarding your employment with the City of Bridgeport between June 8, 2016, to September 22, 2017.

**RESPONSE:** I cannot locate any written communications related to question twelve above.

13.     Produce all documents in your possession that support your allegations that John Ricci inappropriately touched you.

**RESPONSE:** Documentation previously furnished under previous discovery under cover of previous document requests. I cannot locate any others at this time.

14.     Produce all written communications between yourself and Sam Dizenso regarding your employment with the City of Bridgeport between June 8, 2016, to September 22, 2017.

**RESPONSE:** I cannot locate any written documentation regarding question fourteen above.

15.    Produce all written communications between yourself and Attorney Stephen Mednick related to your alleged harassment by John Ricci.

**RESPONSE:** I cannot locate any written documentation regarding question fifteen above.

16.    Produce all non-privileged documents supporting your assertions that you suffered a hostile work environment between June 8, 2016, and September 22, 2017, based on your sex.

**RESPONSE:** Documentation previously furnished under previous discovery under cover of previous document requests. I cannot locate any others at this time.

17.    Produce all documents supporting your assertion that John Ricci invited you to Florida on or about June 19, 2016.

**RESPONSE:** I cannot locate any written documents regarding question seventeen above.

18.    Produce any and all documents supporting your allegations that John Ricci provided "favors" to female companions that would lead to financial benefits from John Ricci.

**RESPONSE:** See document attached.

8

19.    Produce any and all documents showing the City of Bridgeport giving John Ricci authority to make promises regarding any term and condition of your potential employment between January 1, 2015, and June 13, 2017.

**RESPONSE: I cannot locate any documents regarding question nineteen.**

By:    _____
Thomas J. Weilling
1776 North Avenue
Bridgeport, CT 06604
203-333-8500

Counsel for Plaintiff

9

## CERTIFICATION

I hereby certify that on December 8, 2021, a copy of the foregoing was served by electronic and/or United States mail to all counsel and pro se parties of record as follows:

Reese B. Mitchell (ct30266)
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203 Stratford, CT 06614
203-873-0240
203-873-0235 (fax)
reesemitchell@mitchellandsheahan.com

/s/ Thomas J. Weihing
Commissioner of the Court

## CERTIFICATION

I, Lisa Miro, the Plaintiff in the above captioned matter, hereby certifies that I have reviewed the attached Requests for production and the responses thereto and certify that they are true and accurate to the best of my knowledge and belief.

PLAINTIFF

Lisa Miro

Subscribed and sworn to me this  8th  day of December, 2021

Leonard C Dzienis
NOTARY PUBLIC
State of Connecticut
My Commission Expires 1/31/2026

Commissioner of the Superior Court
Notary Public
My Commission Expires: 1-31-26

# EX. E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LISA MIRO, | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | 3:20-cv-00346 (SALM) |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BRIDGEPORT, | ) | December 14, 2021 |
| Defendant. | ) | |
| | ) | |

**DEFENDANTS' DISCLOSURE OF EXPERT WITNESS**

Pursuant to Federal Rule of Civil Procedure Rule 26(a), the Defendants, through their

attorneys Mitchell & Sheahan, P.C., make the following expert disclosures:

1.      **Name of Expert:**   Dr. Donald M. May, Ph.D., CPA.

2.      Dr. May shall testify through live testimony at the trial of this matter.

3.      **Field of expertise and the Subject Matter on Which Dr. May is Expected to Offer**

**Expert Testimony:**  This information is contained in the written Declaration of Dr. Donald

M. May, dated December 13, 2021, which is annexed as Exhibit A ("Declaration ").

4.      **Expert Opinions to Which Dr. May is Expected to Testify:** This information is

contained in the Declaration.

5.      **The Substance of the Grounds of Such Expert Opinion and Materials Relied On:**

This information is contained in the Declaration.

6.      **Dr. May's Qualifications:**   Dr. May's updated C/V is contained within the

Declaration.

7.      **Other Cases Dr. May has Testified as an Expert:** The list of cases in which Dr. May

has testified as an expert is contained in the Declaration.

8.    **Dr. May's Compensation:** Dr. May's compensation for the preparation of the expert

Declaration  is $7,250.00. Dr. May's hourly compensation is $750 per hour.


                                   THE DEFENDANT,
                                   CITY OF BRIDGEPORT

                    By:    */s/ Reese B. Mitchell*
                                   Reese B. Mitchell (ct30226)
                                   Mitchell & Sheahan, P.C.
                                   999 Oronoque Lane, Suite 203
                                   Stratford, CT 06614
                                   203-873-0240
                                   203-873-0235 (fax)
                                   reesemitchell@mitchellandsheahan.com

## **CERTIFICATION**

I hereby certify that on December 14, 2021, a copy of the foregoing was served by electronic mail to all counsel and pro se parties of record as follows:

Thomas J. Weihing
Daly, Weihing & Bochanis
1776 North Ave
Bridgeport, CT 06604
lawdwb@sbcglobal.net

By:     /s/ Rees B. Mitchell
        Reese B. Mitchell (ct30226)
        Mitchell & Sheahan, P.C.
        999 Oronoque Lane, Suite 203
        Stratford, CT 06614
        203-873-0240
        203-873-0235 (fax)
        reesemitchell@mitchellandsheahan.com

# EX. F

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LISA MIRO,

 Plaintiff,

vs.

CITY OF BRIDGEPORT

 Defendant.

No. 3:20 cv 00346(VAB)

EXPERT DECLERATION

OF

DONALD M. MAY PhD CPA

December 13, 2021

# I.    Assignment, Qualifications, and Compensation

### *Assignment*

1.  I, Dr. Donald M. May, and DMA Economics LLC ("DMA Economics" or "DMA") have been retained by the law firm of Mitchell and Sheahan, P.C on behalf of the city of Bridgeport ("Defendant") in the above-captioned matter.

2.  I have been retained to opine on the Economic Damages Analysis ("EDA") submitted by Lisa Miro ("Plaintiff") on July 13, 2021.

### *Qualifications*

3.  I am Managing Partner of DMA Economics.

4.  I hold a Doctor of Philosophy (Ph.D.) in finance and economics from the University of Chicago Graduate School of Business (now the Booth School of Business), a Master of Business Administration (MBA) degree in statistical methods and finance from the University of Chicago Graduate School of Business, and a Bachelor of Science in Business Administration (BSBA) degree in accounting from Roosevelt University. I have passed the Certified Public Accountant (CPA) exam in the State of Illinois.

5.  I was a professor of Accounting, Finance, and Economics at the Massachusetts Institute of Technology Sloan School of Management and Loyola University of Chicago where I conducted research and taught classes on financial statement analysis, research methods, statistics, and valuation.

6.  I currently teach a class on economic damages for the Practicing Law Institute non-profit continuing legal education (CLE) organization chartered by the Regents of the University of the State of New York.

7.  I have spent over 30 years analyzing and opining on valuations and damages in both litigation and non-litigation contexts and across numerous industries.

8.  A copy of my curriculum vitae is attached to this Report as **Appendix A,** which includes publications and testifying experience over the past four years. A list of documents and information that I have considered and reviewed in connection with this engagement is attached as **Appendix B.**

*Compensation*

9. DMA Economics is being compensated at a rate of $750 per hour for my time. DMA's as well as my compensation is not contingent on the conclusions reached in this declaration or the outcome of this litigation. My total fees will depend only on the hours expended by me.

## II.     Summary of Conclusions

10. Plaintiff is not an independent expert with specialized knowledge and thus her EDA does not assist the trier of fact.

11. Additionally, Plaintiff's EDA is fatally flawed because she does not account for the appropriate alternative salary she was offered prior to Defendant's alleged act and she does not account for any mitigating salary she could earn after Defendant's alleged act.

12. Accounting for all these flaws, I conclude that plaintiff did not suffer any economic damages.

## III.    Background and assumptions

13. In the EDA Plaintiff assumes, with no basis, that but-for Defendant's actions she would have earned $60,000 per year in salary and benefits equal to 30% of salary or an additional $18,000 per year.

14. She then calculates "Past Lost Wages" as the difference between what she actually earned and the hypothetical $60,000 she claims she should have earned. For Benefits she just assumes she would have earned $18,000 in benefits not deducting any benefits she earned at that time.

15. For "Lost Future Pay", Plaintiff simply uses a $0 mitigation salary and benefits and tabulates the $60,000 in salary and $18,000 in benefits lost through her planned retirement on 7/1/2026.

16. The EDA ignores any other income through unemployment benefits or alternative employment that Plaintiff could earn in the future and thus uses $0 as the alternative earnings and benefits benchmark.

## IV. Fatal Flaws

17. Federal rules of evidence state that "An expert who possesses 'scientific' or other specialized training will assist the trier of fact to understand the evidence or to determine a fact issue."[1]

18. To opine as an expert, a witness must have sufficient knowledge, skill, experience, or education.[2] I have found no evidence that Plaintiff has sufficient knowledge or training necessary to calculate damages in this matter. In fact based on her education and training, for which she provides no information, Plaintiff has failed to demonstrate that she has sufficient experience and knowledge in calculating damages related to lost earnings for herself or anybody else. This evidenced by both her professional background and education as well as the fatal flaws in her EDA.

19. For the first fatal flaw, Plaintiff assumes that but-for Defendants actions she could have earned $60,000 per year in salary and benefits equal to $18,000 for a total of $78,000 in salary and benefits.

20. Plaintiff provides no evidence that $60,000 or $18,000 was either promised to her or is an appropriate salary given her background, in fact in examining her tax returns dating back to 2015, I note that the highest salary she earned was less than $44,000 in 2015 significantly lower than the $60,000 for which she claims she is entitled.

21. Second, the EDA ignores what Plaintiff could have earned but for her departure and the fact that Plaintiff was offered and rejected a position by Defendant for $42,259 plus union benefits just prior to her employment departure.[3]

22. By ignoring; 1. how much the appropriate salary would have been given Plaintiff's skills and experience, 2. the duty to mitigate, and 3. the alternative job offer, the EDA overstates damages by $78,000 per year .

---

[1] FED R. EVID. 702.
[2] Id.
[3] Employment letter Miro v. City of Bridgeport, September 21, 2017.

23. In fact, considering that Plaintiff was earning an annualized salary of approximately $43,000 prior to rejecting an offer of employment for $42,259, her lost earnings, if any, would be less than $800 per year and not $78,000 per year.

24. Accounting for all these flaws, I conclude that plaintiff did not suffer any economic damages.

25. I reserve the right to amend, supplement, alter, or modify my opinions based on new or different evidence or information that may become available.

Donald M. May Ph.D.
December 13, 2021

**Appendix A – Donald May Curricula Vita**

DMA Economics LLC
Cortlandt Manor, NY 10567
Direct: (212) 390-0595
dmay@dmaeconomics.com

## EDUCATION

| | |
|---|---|
| PhD (Financial Economics) | University of Chicago, 1993 |
| MBA (Finance) | University of Chicago, 1987 |
| BSBA (Accounting) | Roosevelt University, 1985 |
| CPA (Certified Public Accountant) | State of Illinois, 1985 |

## SUMMARY

Don May is Managing Partner at DMA Economics LLC and possesses over 30 years' experience in consulting, valuation and litigation support as well as researching, publishing and teaching at the university level. His experience includes implementing a broad range of damage analyses and valuations for businesses of various sizes and in numerous industries. Prior to founding DMA Economics, Dr. May was Managing Director at Berkley Research Group and the Principal in charge of valuation and litigation support services for a regional accounting firm, a Managing Director for PricewaterhouseCoopers and a professor at the Massachusetts Institute of Technology - Sloan School of Management.

Dr. May has prepared expert reports and testified in federal and state courts as well as AAA, JAMS, and FINRA arbitration hearings and has effectively communicated as an expert witness testifier and consultant in several multi-million dollar cases.

Dr. May has been published in several distinguished academic and practitioner journals such as *The Journal of Finance, The Quarterly Review of Economics and Finance, Hedge Fund Law Review*, and is currently an editorial board member of *The Journal of Business Valuation and Economic Loss Analysis*.

Some examples of recent matters Dr. May has been asked to evaluate, analyze and/or opine on include the valuation of damages related to:

- ERISA and shareholder portfolio mismanagement and fraud damages calculations
- Lost profits resulting from product defects and breach of contract
- Theft of trade secrets, trade dress and other intellectual property
- Hedge fund valuation and hedge fund member interest valuation
- Product mislabeling and false advertising
- Accounting misstatements for private and public transactions
- Securities fraud under SEC Section 10b-5 and Section 11
- Merger and Acquisition valuation disputes

Dr. May has also performed valuations of over 200 closely held businesses and interests in those across numerous industries for financial reporting and estate planning.

## TRIAL, ARBITRATION AND DEPOSITION TESTIMONY - LAST FOUR YEARS

*Biddle Sawyer Pharma, LLC, v. PHT International, Inc., American Arbitration Association C.A. No. 01-19-0004-2322, 2021.*

*Vargas, Almonte v. City of Peekskill, Cornell Hammonds, and David Rambo, United States District Court Southern District of New York, No. 7:20 CV 10143 (KMK-JCM), 2021.*

*LaFosse, Pam individually and on behalf of all others similarly situated and Does (1-100) on behalf of themselves and all others similarly situated, v. Sanderson Farms, Inc,. United States District Court For The Northern District of California, Case No. 19-CV-06570-RS, 2021.*

*Willis/Terry/Robinson/Reynolds/Crosson/Salyers/Moerschel/Eaton/Black v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*McLaughlin/Manske/Shultz/McKechnie/Simmons/Beckman/Manirath/Reynolds v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Parker/Hottel/Schenk/McCollum/Cook/Connell/Slattery/Jansinski/Maxwell/Garver/Wiese/Valv erde v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Stoneking/DuCharme/McMullin/Squires/Brown/Francois/McBride/Byers/Allen v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Schlintz/Tuescher/Floyd/Revis/Bolch/Coulter/Cook/Stiff v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Elliott/Bell/Harris/Rutkowski/Berkstresser/Neff/Kincaid/Sheeders/Schwartz/Kolaoski/Tsang /Owens v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Murphy/Dunn/Adkins/Mergen/Bowen/Scieszinski/Stoke/Harper/Inman/Breckenridge-Mitchell/Clyma/Garvey/Teghtmeyer/McGowan/Wright v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Lanigan/Walter/Rellihan/Kemp/Jensen/Denny-Glynn/Alter/Ready v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Miller/Redwing/Carcraft/Wineland/Fortune/Crawford/Welch/Brandt/Gordanier/Moentmann/ Kaufmann/O'Neal/Hankins/Griem v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Moffitt/Shank/Hoover/O'Mara/McClellan/McCombs/Hancock/Geer/Freeman/Donnici    v.    The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Oswald/Beaulieu/Woehrman/Goins/Johnson/Fogt v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Bates/VanKam/McVay/Kendall/Redwing/Filardo/Sutton v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Jones/Sturgeon/McGivern/Keller/Peoples/Gillespie/Cranmer v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Lovell/Blanck/Stottlemyre/Larson/Schell/Kane/Stalcup/Bonjour/Cross/Meyer/Shaw/Lanning/ Rolf v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Parrish/Brooks/Hyland/Garrett/Biggs/Costanzo/Klassen/Reik/Clower/Axton/Lane/Cansler/Till otson v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Schuerman/Edwards/Horseman/Schulte/Carey/Crocker/Vander    Waerdt v.    The    Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing.*

*Operach/Bien-Amie/Terry/Krevitz/Carroll/Schuerman/Tritt/Scarbrough/Hamilton    v.    The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing.*

*Percy Payne, individually and for his individual account damages on behalf of DST Systems Inc. 401(k) profit sharing plan v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing*

*plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, AAA No. 01-18-0003-0418, Zoom deposition.*

*Closeouts Surplus & Salvage, INC., D/B/A CSS, v. Cytosport Inc. and Allen Distribution, United Sates District Court District of New Jersey, 2:17-Cv-04619 (SDW) LDW), 2019.*

*Nasdaq Inc., v. Exchange Traded Managers Group LLC and ETF Managers Group, LLC, United States District Court Southern District of New York, Case No. 1:17-CV-08252 (PAE), 2019.*

*Megan Shmitt, Deana Reilly, Carol Orlowsky, and Stephanie Miller Brun individually and on behalf of themselves and all others similarly situated v. Younique LLC, United States District Court Central District of California, Case No. 8:17-cv-01397-JVS-JDE, 2018.*

*Broker Genius, Inc.  v. Seat Scouts LLC and Drew Gainor, United States District Court Southern District of New York, Case No. 17-CV-08627(SHS), 2018.*

*David Grand. v. Lisa Schwarz, United States District Court Southern District of New York, Case No. 15-CV-8779 (KMW) (JLC), 2018.*

*SDM Investments Group, LLC. v. HBN Media, Inc., Duane Legate Wayne Starks, James Parker, John Zdanowski, Lester Cox, Frank Pindle, Michael Lemonier, Mathew Swanson and William B. O'Neal, In The Superior Court of Cobb County State of Georgia, Civil Action File No. 16108574, 2018.*

*HL Intermediate Holdco Inc. v. N.B. Love Industries Pty. Ltd., et al., United States District Court for the District of Delaware, Civil Case No. 15-1169, 2017.*

*Mitchell Barack v. Seward & Kissel, LLP, United States District Court Southern District of New York Civil Case No. 1:2016cv09664(WHP), 2017.*

*Kira Zander, individually and on behalf of all others similarly situated v. L Brands Inc., United States District Court Middle District of Florida Case No. 3:16-CV-1328-J-39JRK, 2017.*

*R&R NYC Group, LLC, f/k/a Relocation.com, LLC against Move Sales, Inc. and Move, Inc., in American Arbitration Association Claim No. 011500031105, 2017.*

*Marvel Worldwide Inc., v. iVerse Media LLC, JAMS Arbitration Tribunal, JAMS Ref. No. 1425017344, 2016.*

*C.H. Robinson Worldwide Inc., v. William F. Kratt IV, Roman Pankiy, and XPO Logistics, Inc., State of Minnesota, District Court, Count of Hennepin, Fourth Judicial District, Case No. 27-CV-12-16003 (RLA), 2016.*

*Jeffrey Camp and JC Real Estate Fund LLC v. Robert Berman, Robert Wong, and Avon Rock Hill LLC, United States District Court Southern District of New York Case No. 14-CV-1049 (KBF), 2016.*

*TomTom International B.V. v. Broadcom Corporation, In the United States District Court Central District of California, Southern Division, Case No. 8:14-CV-00475, 2015.*

*Inventory Recovery Corporation v. Ashley A. Gabriel and Richard Gabriel, United States District Court for The District of New Jersey, Civil Action No. 2:11-CV-01604, 2015.*

*Alex Ang and Lynne Streit, individually and on behalf of all others similarly situated v. Bimbo Bakeries USA Inc., In the United States District Court for the Northern District of California San Francisco Division, Case No, CV13-01196-HSG (NC), 2015.*

*Christopher Kinney, individually and on behalf of all others similarly situated v. Dole Packaged Food LLC, In the United States District Court of Arkansas Fayetteville Division, Case No. 14-5182 TLB, 2015.*

*Jared Gabriele, individually and on behalf of all others similarly situated v. Conagra Foods Inc., In the United States District Court for the Western District of Arkansas Fayetteville Division, Case No. 14-5183, 2015.*

*Brenna Center, individually and on behalf of all others similarly situated, v. Ocean Spray Cranberries, Inc. The United States District Court for the Western District of Arkansas Fayetteville Division, Case No. 5:14-cv-05211-TLB, 2015.*

*Blue Bank International N.V. formerly known as Premier Bank International, v. HSBC Securities (USA) Inc.; HSBC Bank USA N.A,; and Mark Richard Corbet Yale, Miami, Florida, FINRA Case No. 12-02582, 2015.*

*Infini Communications LLC, v. Communication Service for the Deaf Inc., Circuit Court of Cook County, Illinois, Chicago Illinois, Case No. 12-L-4502, 2015.*

**EMPLOYMENT HISTORY**

DMA Economics LLC – Managing Partner, 2015 to present, New York, NY

Berkeley Research Group – Managing Director, 2013 - 2015, Litigation and Corporate Financial Advisory Services New York, NY

Grassi & Company – Principal and Practice Leader in Charge of Forensic, Litigation Support and Valuation Services, 2012 – 2013, Litigation and Corporate Financial Advisory Services New York, NY

Marks Paneth & Shron LLP – Director, 2010 – 2012, Litigation and Corporate Financial Advisory Services, New York, NY

Experts-On-Experts LLC – Managing Partner, 2007, 2009, Litigation Support, Chappaqua, NY

Analysis Group – Vice President, Inc., 2006-2007, Litigation Support and Expert Witness Testimony, New York, NY

NERA Economic Consulting – Senior Consultant, 2004-2006, Securities Practice, Complex Commercial Claims Valuation, New York, NY

Peripheral Vision LLC – Managing Partner, 2002-2004, New York, NY

PricewaterhouseCoopers LLP – Managing Director, 1998-2002 Financial Advisory Services, Corporate Value Consulting and Business Recovery Services, New York, NY

Massachusetts Institute of Technology Sloan School of Business – Assistant Professor of Management, 1993-1998, Cambridge, MA.

Loyola University of Chicago – Adjunct Professor of Finance, Econometrics, and Economics, 1991-1993, New York, NY

**PUBLICATIONS**

"Using Ex-ante and Ex-post Benchmarks in Estimating Damages" – *The Value Examiner*, May/June 2012

"Surviving Daubert: Bad Benchmarking Puts Cases at Risk Expert Witnesses Misstep by Using the Wrong Benchmarks to Calculate Damages", *Wall Street Lawyer*, December 2011

"Factors to Consider When Hiring an Expert" Claims Journal, May 26, 2011

"As Traditional Methods Fail in a Flood of Bad News, Courts Should Turn to Techniques Used by Investment Analysts to Calculate Shareholder Damages" *Securities Litigation Report*, January, 2011, Volume 8, Issue 1

"Strategies for Avoiding Valuation Disputes in Connection with Breakups of Hedge Fund General Partnerships", *Hedge Fund Law Review*, June 11, 2010, Volume 3, No. 23

"Wall Street Style Valuation Assumptions Are Popular & Often Wrong –Discounted Cash Flow Methodology Give Litigators the Upper Hand" *Securities Litigation Report*, May 2010, Volume 7, Issue 5

"Getting the Most from Technology: Keys to Better Decision-Making," *American Banker*, March 28, 2003

"The Performance of Firms Before and After They Adopt Accounting-Based Performance Plans" (with Raymond M. Brooks and Chandra S. Mishra), *The Quarterly Review of Economics and Finance*, vol. 41, issue 2 (2001)

"The Effectiveness of Long-Term Accounting-Based Incentive Plans" (with Chandra S. Mishra and David H. Gobeli), *Journal of Managerial Issues*, Volume XII, Number 1 (Spring 2000)

"Do Managerial Motives Influence Firm Risk Reduction Strategies?" *Journal of Finance*, Vol. 1 No. 4 (Spring, 1995)

"Federal Reserve Discount Rate Changes and Market Reaction," *Journal of Macroeconomics* (Spring 1992)

## GRANTS AND AWARDS

University of Chicago, Graduate School of Business, PhD Fellowship, 1989-1993

Nanyang Technological University Teaching and Research Chair (first MIT Sloan School of Management junior faculty member to receive this endowed teaching and research chair), 1994-1997

MIT Leaders for Manufacturing Summer Teaching Award, 1995

Recipient, 1989 - 1992 University of Chicago PhD Grant and stipend

## AFFILIATIONS

Editorial board for the Journal of Business Valuation and Economic Loss Analysis
American Finance Association
American Economic Association
American Accounting Association
Certified Public Accountant (CPA), State of Illinois, 1985

## APPENDIX B – DOCUMENTS REVIEWED

1.  Lisa Miro Deposition transcript (USDC).

2.  Amended Complaint,  Miro v. City of Bridgeport.

3.  Employment letter, Miro v. City of Bridgeport, September 21, 2017.

4.  Lisa Miro Tax returns 2015 – 2016.

5.  Lisa Miro Tax returns 2017 – 2018.

6.  USDC Miro Damages Analysis.

# EX. G

Hawkins, Janene

| | |
|---|---|
| From: | Hawkins, Janene |
| Sent: | Wednesday, September 20, 2017 9:20 AM |
| To: | Shamas, Daniel |
| Subject: | FW: Lisa Miro |

From: Mitola, John
Sent: Wednesday, September 20, 2017 9:18 AM
To: Hawkins, Janene <Janene.Hawkins@Bridgeportct.gov>
Subject: FW: Lisa Miro

See below,

From: Bucci, Tom [mailto:TBucci@wwblaw.com]
Sent: Wednesday, September 20, 2017 9:16 AM
To: Mitola, John <John.Mitola@Bridgeportct.gov>
Subject: RE: Lisa Miro

John,
I spoke with her yesterday.  She rejected the proposal; she was "insulted" by the offer; she felt demeaned and degraded.  She told me that she is not a secretary but an administrator; she doesn't do secretarial work.  She wants to remain in her administrator "Light House" position, where she is benefiting the children of Bridgeport.
I tried.
Tom

Thomas W. Bucci, Esq.
Partner
Willinger, Willinger & Bucci, P.C.
855 Main Street
Bridgeport, CT 06604
Phone: 203-366-3939
Facsimile: 203-337-4588
Email: TBucci@wwblaw.com



Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.
Partner

855 Main Street, Bridgeport, CT 066
www.wwblaw.com

CELEBRATING 25 Years

Privileged and confidential. If received in error, please notify me by e-mail and delete the message. IRS CIRCULAR 230 NOTICE. Any tax advice contained in this email is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties or promoting, marketing or recommending any partnership or other entity, investment plan or arrangement to one or more taxpayers.

From: Mitola, John [mailto:John.Mitola@Bridgeportct.gov]
Sent: Wednesday, September 20, 2017 9:08 AM
To: Bucci, Tom <TBucci@wwblaw.com>
Subject: Lisa Miro