## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LISA MIRO,
    *Plaintiff*,

    v.                                          No. 3:20-cv-346 (VAB)

CITY OF BRIDGEPORT,
    *Defendant.*

### RULING AND ORDER ON MOTIONS IN LIMINE

Lisa Miro ("Plaintiff") has sued the City of Bridgeport ("Defendant"), asserting claims for sex-based employment discrimination under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA"). *See* Am. Joint Suppl. Trial Management Report, ECF No. 191 ("Am. Joint Trial Mem.").

In advance of trial, the parties have filed motions *in limine* to exclude or limit various forms of evidence.

For the following reasons, The City of Bridgeport's motions *in limine* are **GRANTED in part** and **DENIED in part**, as explained further below. Ms. Miro's motion *in limine*, ECF No. 177, is **GRANTED**.

The City of Bridgeport's motion to preclude evidence related to Ms. Miro's damages analysis, ECF No. 171, is **DENIED without prejudice** to renewal at trial or in post-trial motions.

The City of Bridgeport's motion to exclude evidence related to Maria Grace Goncalves's alleged recordings of John Ricci, ECF No. 172, is **DENIED as moot**.

The City of Bridgeport's motion to preclude Ms. Goncalves's unexecuted settlement agreement and any testimony or other evidence related to it, ECF No. 189, is **GRANTED**.

The City of Bridgeport's motion to preclude Nettie Mancuso from testifying, ECF No. 180, is **GRANTED in part**. The Court will preclude Ms. Mancuso from testifying in Ms. Miro's case-in-chief, but Ms. Mancuso may be called as a rebuttal witness if Mr. Ricci's testimony opens the door to evidence related to his alleged harassment of Ms. Mancuso.

The City of Bridgeport's motions to preclude evidence related to Mr. Ricci's resignation from the position of Bridgeport Director of Public Facilities and his termination from the position of Bridgeport-Sikorsky Airport Manager, ECF Nos. 173, 174, are **GRANTED in part** and **DENIED in part without prejudice** to renewal at trial. The Court may permit Ms. Miro to introduce evidence related to her theory that Mr. Ricci's resignation and termination were caused by his sexual harassment of his employees if she presents a sufficient foundation for this theory. Ms. Miro may not, however, present evidence related to the property dispute and scrap metal-for-cash operation that purportedly led to Mr. Ricci's termination and resignation, respectively.

The City of Bridgeport's motion to limit the testimony of Shane Miller and Kathleen Graziano, ECF No. 179, is **GRANTED**.

The City of Bridgeport's motion to preclude Ms. Miro from entering Mr. Ricci's deposition transcript into evidence as an exhibit, ECF No. 181, is **GRANTED**.

The City of Bridgeport's motions to preclude two Connecticut Post articles related to Ms. Miro, ECF Nos. 182, 190, are **GRANTED**.

The City of Bridgeport's motion to preclude purported screenshots of text message conversations involving Ms. Miro, ECF No. 183, is **DENIED without prejudice** to renewal at trial. Ms. Miro must, however, offer these screenshots without the handwritten annotations.

The City of Bridgeport's motion to preclude an e-mail sent by Ms. Miro involving the Junior City program, ECF No. 185, is **DENIED without prejudice** to renewal at trial.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

      A.  **Factual Allegations**

While working on the 2015 election campaign of Bridgeport Mayor Joseph Ganim, Ms. Miro met John Ricci, who later became the Public Facilities Director for the City of Bridgeport. *See* Ruling and Order on Mot. for Summ. J. at 2, ECF No. 147 ("MSJ Order"). In June 2016, after Ms. Miro contacted Mayor Ganim's administration regarding employment, Mr. Ricci hired Ms. Miro as a seasonal employee. *See id.* Shortly after Ms. Miro was hired, Mr. Ricci assigned her to the position of Youth Program Manager at Bridgeport's Lighthouse afterschool program. *See id.*

The Youth Program Manager position was unionized and available only to members of the Laborers' International Union of North America ("LIUNA"). *See id.* Ms. Miro was not a member of the union when she was hired and did not become a member of the union. *See id.* at 2–3. In April 2017, while Ms. Miro continued to serve as the Lighthouse Youth Program Manager, Bridgeport posted a job listing for the position and a LIUNA member applied. *See id.* at 3. Ms. Miro, however, remained in the position until September 2017. *See id.*

Ms. Miro alleges that Mr. Ricci made repeated and unwanted advances toward her while she was employed by Bridgeport. *See id.* She asserts that Mr. Ricci's conduct created a hostile work environment in violation of Title VII and CFEPA. *See* Am. Joint Trial Mem. at 3.

On September 21, 2017, approximately fifteen months after she was hired, Ms. Miro was terminated as the Lighthouse Youth Program Manager. *See* MSJ Order at 4. That same day, Ms. Miro met with Mr. Ricci and another City of Bridgeport employee to discuss a potential new position for her as a typist. *See id.* The parties dispute whether Ms. Miro rejected that job offer or if

---

[1] In light of the lengthy history of this case, the Court presumes the parties' familiarity with the factual and procedural history and addresses only the aspects relevant to the pending motions.

she merely sought more time to discuss the offer with her attorney. *See id.* Regardless, Ms. Miro's

employment with the City of Bridgeport ended on September 21, 2017. *See id.*

Ms. Miro alleges that the City of Bridgeport discriminated against her based on her sex in

the compensation, terms, conditions, and privileges of her employment, in violation of Title VII

and CFEPA. *See* Am. Joint Trial Mem. at 3. The City of Bridgeport contends that Ms. Miro was

terminated after the City was made aware that Ms. Miro's seasonal position—which was only

supposed to last for 120 days—had continued for fifteen months. *See id.*

### B. Procedural History

On March 17, 2023, the Court issued a Ruling and Order denying the City of

Bridgeport's motion for summary judgment. *See* MSJ Order. That same day, the Court issued a

revised scheduling order setting the case for trial. *See* Revised Scheduling Order, ECF No. 148.

On July 7, 2023, the parties filed their respective joint trial memoranda. *See* Pl.'s Trial

Mem., ECF No. 166; Def.'s Trial Mem., ECF No. 167.

Also on July 7, 2023, the City of Bridgeport filed motions *in limine* to preclude (1) Ms.

Miro's damages analysis; (2) alleged recordings of Mr. Ricci made by Maria Grace Goncalves;

(3) information regarding Mr. Ricci's departure from his position as Bridgeport Director of

Public Facilities; and (4) information regarding Mr. Ricci's termination as the Bridgeport-

Sikorsky Airport Manager. *See* Def.'s Mot. *in Limine* to Preclude Pl.'s Damages Analysis, ECF

No. 171 ("Damages MIL"); Def.'s Mot. *in Limine* to Preclude Any Alleged Recordings of John

Ricci by Marie Grace Goncalves, ECF No. 172 ("Ricci Recordings MIL"); Def.'s Mot. *in Limine*

to Preclude Information Regarding John Ricci Leaving the Director of Public Facilities Position,

ECF No. 173 ("Ricci Resignation MIL"); Def.'s Mot. *in Limine* to Preclude Information

Regarding John Ricci's Termination as the Bridgeport-Sikorsky Airport Manager, ECF No. 174 ("Ricci Termination MIL").

On July 14, 2023, Ms. Miro filed a motion *in limine* to preclude evidence related to proceedings before the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Connecticut State Board of Labor Relations ("SBLR"). *See* Mot. *in Limine* re: CHRO and SBLR Decisions and Findings, ECF No. 177 ("State Agencies MIL").

On July 17, 2023, the City of Bridgeport filed another set of motions *in limine* to (1) limit the testimony of two healthcare providers who treated Ms. Miro, Shane Miller and Kathleen Graziano; (2) preclude Nettie Mancuso from testifying; (3) preclude the transcript of Mr. Ricci's deposition; (4) preclude a Connecticut Post article dated June 30, 2017; (5) preclude a series of text messages purportedly between Ms. Miro and Mr. Ricci or Daniel Roach, who was at the time the chief of staff to Mayor Ganim. *See* Def.'s Mot. *in Limine* to Limit the Test. of Shane Miller & Kathleen Graziano, ECF No. 179 ("Miller & Graziano MIL"); Def.'s Mot. *in Limine* to Preclude Nettie Mancuso from Testifying, ECF No. 180 ("Mancuso MIL"); Def.'s Mot. *in Limine* to Preclude John Ricci's Dep. Tr., ECF No. 181 ("Ricci Dep. MIL"); Def.'s Mot. *in Limine* to Preclude Connecticut Post Article Dated June 30, 2017, ECF No. 182 ("Lighthouse Article MIL"); Def.'s Mot. *in Limine* to Preclude Pl.'s Proposed Exs. J Through S, ECF No. 183 ("Text Messages MIL").

On July 18, 2023, the City of Bridgeport filed a motion *in limine* to preclude an e-mail from Ms. Miro regarding the Junior City Council program. *See* Def.'s Mot. *in Limine* to Preclude Pl.'s Ex. W, ECF No. 185 ("Junior Council E-Mail MIL").

Also on July 18, 2023, the parties filed a joint supplemental trial memorandum. *See* Joint Suppl. Trial Management Report, ECF No. 186 ("Joint Trial Mem.").

On July 19, 2023, the City of Bridgeport filed motions *in limine* to preclude (1) an unexecuted settlement agreement between Bridgeport and Maria Grace Goncalves; and (2) a Connecticut Post article dated April 18, 2019. *See* Def.'s Mot. *in Limine* to Preclude the Unexecuted General Release & Settlement Agreement Between Def. and Maria Grace Goncalves & Goncalves' Related Claims, ECF No. 189 ("Settlement Agreement MIL"); Def.'s Mot. *in Limine* to Preclude Connecticut Post Article Dated April 18, 2019, ECF No. 190 ("Harassment Article MIL").

Also on July 19, 2023, the parties filed an amended joint supplemental trial memorandum. *See* Am. Joint Trial Mem.

On July 24, 2023, the City of Bridgeport filed a memorandum in opposition to Ms. Miro's motion *in limine* regarding the CHRO and SBLR proceedings. *See* Def.'s Mem. in Opp'n to Pl.'s Mot. *in Limine* re: CHRO and SBLR Decisions and Findings, ECF No. 194 ("State Agencies Opp'n").

## II.    STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted).

The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.  DISCUSSION

The parties' motions challenge a range of proposed exhibits and testimony. The Court will address the issues raised by these motions in turn.

### A.  Ms. Miro's Damages Analysis

Under Federal Rule of Civil Procedure 26(a), a party must disclose "a computation of each category of damages claimed by the disclosing party" and "must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e) requires a party to supplement any incomplete or incorrect disclosure made under Rule 26(a) if the party becomes aware of new information. *See* Fed. R. Civ. P. 26(e)(1)(A).

Rule 37 provides mechanisms for enforcing the disclosure requirements of Rule 26. Under Rule 37(c), a party that "fails to provide information or identify a witness" may be precluded from using that information or witness to provide evidence "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

District courts have wide discretion to impose sanctions under Rule 37. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (holding that a district court erred in concluding that "'preclusion is mandatory' under Rule 37(c)(1) once 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless'"). Furthermore, "[e]vidence preclusion is generally disfavored." *Gemmink v. Jay Peak, Inc.*, No. 1:12-cv-32

(JGM), 2013 WL 3730937, at *2 (D. Vt. July 15, 2013) (citing *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007)). In deciding whether to impose sanctions for failure to disclose under Rule 26, the Court must consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alterations in original).

In its first motion *in limine*, the City of Bridgeport seeks to preclude Ms. Miro "from offering evidence, testimony, or argument regarding her damages analysis" because that damages analysis and any evidence supporting it "lack sufficient foundation and are based on mere speculation and conjecture." Damages MIL at 1. The City of Bridgeport argues that Ms. Miro has failed to explain how she calculated her damages, emphasizing discovery responses in which Ms. Miro stated that she "used computer information" to calculate her damages but "did not retain that information." *Id.* at 2 (quoting Ex. D to Damages MIL, Request No. 5, ECF No. 171 at 39 ("RFP Responses")). The City of Bridgeport contends that Ms. Miro has failed to comply with the disclosure requirements imposed by Rule 26 and that evidence related to her damages analysis should be precluded under Rule 37(c)(1). *See id.* at 3–6. The City of Bridgeport also urges the Court to dismiss Ms. Miro's requests for non-monetary relief in the form of (1) a modification to her employment file to "reflect a lack of termination" and (2) letters of recommendation. *See id.* at 6.

At the pre-trial conference, counsel for Ms. Miro stated that he did not plan to introduce the damages analysis itself into evidence, and counsel for the City of Bridgeport indicated that he had no objection to Ms. Miro testifying regarding her damages.

The Court agrees with the City of Bridgeport, in part.

In her damages analysis, Ms. Miro seeks lost wages and promised employment benefits for the period during which she was employed; back pay and lost employment benefits from the date she was terminated until July 1, 2021; future payments and employment benefits for the period from July 1, 2021, until July 1, 2026; damages for mental and emotional distress; attorney's fees; and damages for "retaliation." *See* Ex. A to Damages MIL, ECF No. 171 at 12–13 ("Damages Analysis").

This damages analysis was submitted while Ms. Miro was proceeding *pro se*. *See* Damages MIL at 2. Ms. Miro did not, however, supplement or amend her damages analysis after securing representation in this case. *See id.* at 6.

Other than the damages analysis itself, the City of Bridgeport does not identify any damages-related witness testimony or other evidence to which it objects. To the extent that the City of Bridgeport seeks to preclude any specific evidence beyond the damages analysis, the Court will address these objections as they arise at trial.

As to such evidence, the Court first notes that, before the close of discovery and well-before filing its motions *in limine*, the City of Bridgeport filed a motion under Rule 37(a) to compel Ms. Miro to respond to its requests for production, which included a request for documentation in support of Ms. Miro's damages analysis. *See* Mot. to Compel, ECF No. 76; Order, ECF No. 85 (granting motion to compel). Thus, the Court cannot fault Bridgeport for a lack of diligence in seeking to uncover the basis for Ms. Miro's damages claims. *Cf. Gemmink*, , 2013 WL 3730937, at *2 (denying a motion to preclude damages-related evidence under Rule 37(c) filed in advance of trial when the moving party previously "chose not to employ Rule 37(a) to move the Court for an order compelling disclosure or discovery").

Nonetheless, some evidence in support of Ms. Miro's damages claim is unlikely to prejudice the City of Bridgeport. Ms. Miro's damages analysis appears to rest on the assumption that she was entitled to a salary of $60,000 per year from the beginning of her employment with the City until 2026. She further assumes that she would have received employment benefits amounting to thirty percent of her $60,000 salary and that she earned no other income in mitigation of her lost salary during the relevant periods. In fact, the City of Bridgeport's expert relied on these assumptions despite Ms. Miro's failure to provide calculations or documentation in support of her damages analysis. *See* Ex. F to Damages MIL ¶¶ 13–16, ECF No. 171 at 53–54 ("May Decl."). Thus, contrary to the City of Bridgeport's contention, testimony or other evidence from Ms. Miro showing that she was promised a salary of $60,000 would not amount to "'sandbagging' an adversary with new evidence." *See* Damages MIL at 5 (quoting *Seymour v. Jasami Trucking LLC*, No. 3:16-cv-5 (AWT), 2019 WL 13215728, at *1 (D. Conn. Aug. 12, 2019)). Courts have also concluded that a plaintiff's failure to calculate non-economic damages such as pain and suffering is unlikely to cause prejudice "because these damages are inherently difficult to compute and their determination is within the province of the jury." *Rodriguez v. Village of Port Chester*, 535 F. Supp. 3d 202, 222 (S.D.N.Y. 2021).

On the other hand, Ms. Miro has not provided an evidentiary basis for her calculation of benefits as thirty percent of her allegedly promised salary. To the extent that the City of Bridgeport argues that this percentage is inaccurate, Ms. Miro may not be permitted to introduce undisclosed evidence in rebuttal. Similarly, the Court may limit or preclude evidence purporting to show that Ms. Miro has been entirely unsuccessful in mitigating her lost wages (and will continue to be until July 2026). *See Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997)

("[A] prevailing plaintiff in a Title VII case must attempt to mitigate her damages by using reasonable diligence in finding other suitable employment." (internal quotation marks omitted)).

As for Ms. Miro's requests for non-monetary injunctive relief, the Court will defer resolution of these issues until after trial.[2]

Accordingly, and consistent with the principles set forth above, the Court will deny the City of Bridgeport's motion to preclude evidence related to Ms. Miro's damages analysis without prejudice to renewal at trial or in post-trial motions.

### B. Ms. Goncalves's Recordings of Mr. Ricci

The City of Bridgeport seeks to preclude Ms. Miro from offering at trial "any testimony, evidence, argument, or comment relating to an alleged recording of John Ricci" in which Mr. Ricci purportedly sexually harassed another one of his former employees, Maria Grace Goncalves. *See* Ricci Recordings MIL. Ms. Miro's list of exhibits for trial does not, however,

---

[2] The City of Bridgeport first argues that Ms. Miro's request for a revision to her employment record to reflect a lack of termination is improper because it did not terminate Ms. Miro. Instead, according to the City of Bridgeport, her seasonal position merely ended because it had exceeded 120 days. *See* Damages MIL at 6. There is, however, at least a question of fact as to whether Ms. Miro's position was effectively a permanent one before her termination, based on her own representations of Mr. Ricci's promises to her and the fact that the City of Bridgeport allowed her to remain in the position for almost four times longer than the ordinary 120-day term. Furthermore, if Ms. Miro was actually terminated from the Youth Program Manager position, the fact that she rejected an offer for another position would not change that fact.

The City of Bridgeport also argues that the Court has no authority to order it to provide letters of recommendation. Although courts may order affirmative relief under Title VII, 42 U.S.C.A. § 2000e-5(g)(1) (authorizing courts to "order such affirmative action as may be appropriate"), such an order could raise First Amendment concerns. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005) ("We have held that the First Amendment does not 'le[ave] it open to public authorities to compel [a person] to utter' a message with which he does not agree." (alterations in original) (quoting *W.V. Bd. of Ed. v. Barnette*, 319 U.S. 624, 634 (1943))). Nonetheless, some courts have ordered relief similar to that requested by Ms. Miro as remedies for Title VII violation. *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir. 1998) (upholding an injunction requiring an employer to provide the plaintiffs with letters of recommendation in response to Title VII violations); *Johnson v. Sw. Rsch. Inst.*, No. 5:15-cv-297, 2019 WL 4003106, at *5 (W.D. Tex. Aug. 23, 2019) ("Indeed, district courts in this circuit and every other routinely employ [speech-related injunctions] in Title VII cases 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" (quoting *HBE Corp.*, 135 F.3d at 557)); *cf. Equal Emp. Opportunity Comm'n v. Lumpy LLC*, No. 06-cv-0830-PHX-SRB, 2008 WL 11339641, at *2 (D. Ariz. May 7, 2008) ("The Court will not require the letter of recommendation as proposed in the judgment but instead will direct that the Defendant refrain from giving any negative information if ever contacted by a future prospective employer of the charging party.").

include any such recordings, and counsel for Ms. Miro indicated at the pre-trial conference that he does not intend to offer any other evidence related to this recording.

Accordingly, the City of Bridgeport's motion to exclude evidence related to this recording will be denied as moot.

### C.  The Goncalves Settlement Agreement

At some point after Ms. Goncalves filed a CHRO complaint against Bridgeport, the two sides engaged in settlement discussions that resulted in Bridgeport presenting Ms. Goncalves with a proposed General Release & Settlement Agreement (the "Settlement Agreement"). *See* Settlement Agreement MIL at 2; Ex. A to Settlement Agreement MIL, ECF No. 189-1 ("Settlement Agreement"). The agreement, however, was never executed. *See* Settlement Agreement MIL at 2.

The City of Bridgeport now seeks to preclude Ms. Miro from offering the Settlement Agreement itself as evidence and from offering other evidence, testimony, or argument related to the Settlement Agreement. *See id.* at 1. It argues that this evidence should be excluded because the Settlement Agreement is irrelevant to Ms. Miro's claims and because the prejudicial effect of such evidence would substantially outweigh any probative value. *See id.*

The Court agrees, in part.

### 1.  The Relevance of Ms. Goncalves's Claims

As a threshold matter, the Court notes that Ms. Goncalves's allegations that she was also sexually harassed by Mr. Ricci may be relevant in this case. "Common sense tells us that if an employer has discriminated against other employees on grounds that are similar to the grounds that plaintiff herself claims, it is somewhat more likely that the employer may have discriminated on the same grounds against the plaintiff employee. Similar acts of discrimination may likewise

support a discriminatory hostile work environment claim." *DeAngelis*, 2018 WL 429156, at *1. This type of evidence is often called "me too" evidence, and it may be "relevant and highly probative under Fed. R. Evid. 401 for a discrimination claim." *Id.*

On the other hand, "me too" evidence can also raise concerns about unfair prejudice, confusion of the issues, and undue delay under Rule 403. Introducing such evidence could require a trial-within-a-trial over the validity of the non-party employee's discrimination claims. A jury could also rely on "me too" evidence to "draw an impermissible 'character' inference against an employer because of evidence about the employer's alleged mistreatment of others." *Id.*

The Supreme Court has recognized that balancing these concerns "requires a fact-intensive, context-specific inquiry." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). In conducting this inquiry, courts in this District have emphasized three factors: (1) "how *similar* the 'me too' acts of alleged discrimination are to the alleged acts of discrimination against the plaintiff"; (2) "whether any of the *same individuals* were involved with perpetrating the alleged "me too" acts of discrimination as those individuals who the plaintiff alleges discriminated against her"; and (3) "what kind of *temporal nexus* exists between the alleged "me too" acts of discrimination and the alleged acts of discrimination against the plaintiff." *DeAngelis*, 2018 WL 429156, at *2; *see also Schneider v. Regency Heights of Windham, LLC*, No. 3:14-cv-00217 (VAB), 2016 WL 7256675, at *12 (D. Conn. Dec. 15, 2016) (identifying these and other factors). When, as in this case, "the opposing party has made a motion to exclude potential evidence, the burden falls on the non-movant . . . to describe the content of the evidence and its relevance to the case." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 152 (2d Cir. 2010).

The limited record before the Court appears to show that Ms. Goncalves's claims are similar to Ms. Miro's claims and that Mr. Ricci was responsible for the alleged discrimination in both cases. *See* Harassment Article at 3–4, 7–9 (describing Ms. Goncalves's allegations in her CHRO complaint). This record also shows that the incidents underlying both employees' claims occurred around the same time. *See id.* at 7–9 (conduct alleged by Ms. Goncalves occurred primarily in 2017). Thus, under the factors outlined above, Ms. Goncalves's claims appear to be highly probative of the issues in this case. At the same time, the similarity of the two claims may result in unfair prejudice if jurors infer that Mr. Ricci harassed Ms. Miro merely because they conclude that he engaged in similar conduct with Ms. Goncalves.

The Court, however, need not definitively decide whether the balance of these factors favors exclusion under Rule 403 because the Settlement Agreement is squarely excluded by Federal Rule of Evidence 408.[3]

### 2. Rule 408

Under Rule 408, offers to compromise or settle a claim generally are not admissible "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). The Second Circuit has held that this rule applies "even if the settlement involved another case and a different party." *Am. Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563, 580 (2d Cir. 1990). Even if unexecuted, the proposed Settlement Agreement represents an "offer" to settle a claim. *See* Fed. R. Evid. 408(a). And as discussed above, Ms. Goncalves's allegations are relevant because they are probative of whether Mr. Ricci

---

[3] To the extent that Ms. Miro may seek to introduce other testimony or evidence related to Ms. Goncalves's allegations against Mr. Ricci, such testimony must be based on the witness's firsthand observations. *See DeMarco v. W. Hills Montessori*, 350 F. App'x 592, 594 (2d Cir. 2009) ("DeMarco is correct that harassment experienced by other employees is relevant to hostile work environment claims, but the evidence must be firsthand accounts of the events in question.").

engaged in similar conduct in this case. Thus, the Settlement Agreement would be used for the improper purpose of "establishing either liability or the amount of damages." *Id.* at 580 n.16. Ms. Miro has not identified any other relevance that the Settlement Agreement might have.

Accordingly, the Court will grant the City of Bridgeport's motion to preclude the Settlement Agreement and any testimony or other evidence related to it.

### D.  The Testimony of Nettie Mancuso

Ms. Miro's initial trial memorandum identified Ms. Mancuso as a City of Bridgeport employee who was expected to testify about her supervision by Mr. Ricci and Mr. Ricci's harassing conduct. *See* Pl.'s Trial Mem. at 4. The City of Bridgeport seeks to preclude Ms. Mancuso from testifying on the grounds that Ms. Miro failed to previously disclose her as a potential witness. *See* Mancuso MIL at 1.

The Court agrees, in part.

In deciding whether to impose sanctions for failure to disclose under Rule 26, the Court must consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson*, 440 F.3d at 117 (alterations in original).

As Ms. Mancuso was not previously disclosed and the City of Bridgeport has not had the opportunity to depose her, the risk of prejudice is substantial. Furthermore, the importance of Ms. Mancuso's testimony appears to be limited. Ms. Mancuso is expected to testify regarding her own alleged harassment by Mr. Ricci while he was the Bridgeport-Sikorsky Airport Manager. Although this evidence may be probative of Mr. Ricci's conduct with Ms. Miro, *see DeAngelis*, 2018 WL 429156, at *1 ("Similar acts of discrimination may likewise support a

discriminatory hostile work environment claim."), it does not bear directly on the events at issue in this case and may be cumulative of the "me too" testimony offered by Ms. Goncalves, whose claims appears to be more similar and closer in time to Ms. Miro's claims. Counsel for Ms. Miro indicated that he has not yet spoken to Ms. Mancuso, which prevents the Court from assessing the similarity between her testimony and the allegations in this case beyond the general label of sexual harassment.

The Court will therefore preclude Ms. Mancuso from testifying in Ms. Miro's case-in-chief. If, however, Mr. Ricci's testimony opens the door to issues related to his alleged harassment of Ms. Mancuso, she may be called to testify on rebuttal.

Accordingly, the City of Bridgeport's motion to preclude Ms. Mancuso from testifying will be granted in part.

### E.  Mr. Ricci's Termination and Resignation

Federal Rule of Evidence 608 provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). A court may, however, allow a party to inquire into such instances on cross-examination "if they are probative of the character for truthfulness or untruthfulness of the witness." *Id.* In exercising this discretion to permit cross-examination into specific instances of conduct, courts have considered a wide range of factors, including the significance of the witness's testimony to the case, whether the specific instances of conduct are probative of truthfulness, the extent to which such conduct is similar to the circumstances of the case, the length of time between the specific instances and the trial, the likelihood that the specific instances of conduct occurred, and the risk of harassment, undue embarrassment, or unfair prejudice. *See* 28 Charles A. Wright & Victor James Gold, *Federal Practice &*

16

*Procedure: Evidence* § 6118 (2d ed.) (discussing the relevant factors). "Rule 608(b) is intended to be restrictive . . . . The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." *United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (quoting Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 608.22[2][c][i] (2d ed. 1997)).

In two separate motions, the City of Bridgeport seeks to exclude evidence relating to Mr. Ricci's resignation from his position as Bridgeport Director of Public Facilities in January 2020 and his prior termination from his position as Manager of the Bridgeport-Sikorsky Airport in 2013. *See* Ricci Resignation MIL; Ricci Termination MIL. The City of Bridgeport argues that the circumstances of these separations have "no reasonable connection" to Ms. Miro's allegation in this case and are therefore irrelevant. *See* Ricci Resignation MIL at 3; Ricci Termination MIL at 3. The City of Bridgeport further contends that evidence related to these issues will result in unfair prejudice to the City and should be excluded under Federal Rule of Evidence 403. *See* Ricci Resignation MIL at 3; Ricci Termination MIL at 3. Finally, the City of Bridgeport argues that evidence related to Mr. Ricci's resignation or termination would constitute improper propensity evidence under Rule 404. *See* Ricci Resignation MIL at 4; Ricci Termination MIL at 4.

The Court agrees in part.

The City of Bridgeport is correct that Ms. Miro cannot use allegations of prior misconduct to show that Mr. Ricci has a dishonest or otherwise negative character in order to suggest that he acted in accordance with this character at a later time. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

Nonetheless, as Bridgeport concedes, this rule is subject to certain exceptions, including, as noted above, the one set forth in Rule 608. Furthermore, evidence of similar instances of sexual harassment may be admissible as "me too" evidence under the principles discussed above. *See, e.g.*, *Murray v. Miron*, No. 3:11-cv-629 (JGM), 2015 WL 4041340, at *9 (D. Conn. July 1, 2015) ("'[M]e too" evidence may be used to establish . . . intent under [Rule 404(b)].").

Here, the City of Bridgeport's motions provide few details regarding the circumstances of the separations. With respect to Mr. Ricci's retirement as Director of Public Facilities, the City notes only that "[t]here are allegations that the reason for his retirement dealt with some of the employees in his department running a scrap metal for cash operation," Ricci Retirement MIL at 2. As to his prior termination, the City of Bridgeport states that it "ended Mr. Ricci's position with the airport in 2013 after allegations of inappropriate misconduct related to a private home's easement over airport-owned land." Ricci Termination MIL at 2. In both cases, the City of Bridgeport emphasizes that no criminal charges were ever filed against Mr. Ricci. *See id.*; Ricci Retirement MIL at 2.

At the pre-trial conference, counsel for Ms. Miro indicated that the City of Bridgeport's stated reasons for Mr. Ricci's separations may have been pretextual and that the resignation and termination may have been related to Mr. Ricci's sexual harassment of his employees. If Ms. Miro can provide a sufficient foundation for this pretext theory, the Court may allow her counsel to present it at trial. At this stage, however, Ms. Miro has not made a sufficient showing that any sexual harassment that led to Mr. Ricci's resignation or termination is relevant to the issues in this case. Moreover, even if this evidence is relevant, it is only tangentially related to Ms. Miro's specific allegations, and allowing its introduction risks confusing the jury with factual disputes over collateral issues.

With respect to Mr. Ricci's termination from his position as Bridgeport-Sikorsky Airport Manager, the Court's ruling that Ms. Mancuso cannot testify in Ms. Miro's case in chief likely will prevent Ms. Miro from presenting a sufficient foundation to support her theory that Mr. Ricci's termination was caused by his harassing conduct. Nonetheless, as with Ms. Mancuso's testimony, Ms. Miro may be able to introduce evidence related to Mr. Ricci's termination on rebuttal, to the extent that Mr. Ricci's testimony opens the door to these issues.

Putting aside Ms. Miro's pretext theory, the City of Bridgeport's stated reasons for Mr. Ricci's resignation and termination do not appear to be connected to the issues in this case, except to the extent that they may generally implicate Mr. Ricci's behavior as a supervisor. In considering whether to allow questioning on such instances of conduct under Rule 608, a court must "be vigilant to the risk that a plaintiff . . . may effectively seek to put an employer or supervisors on trial for presiding over a generally toxic or dysfunctional workplace, rather than on trial for acts of illegal discrimination or retaliation that actually come within the scope of Title VII and similar laws." *DeAngelis v. City of Bridgeport*, No. 3:14-cv-01618 (JAM), 2018 WL 429156, at *2 (D. Conn. Jan. 15, 2018). Furthermore, the ten-year gap between the trial and Mr. Ricci's termination from his position as Bridgeport-Sikorsky Airport Manager diminishes the probative value of any evidence related to non-harassing conduct that may have prompted that termination. Thus, the Court will preclude evidence and questioning related to the property dispute that purportedly led to his termination as Bridgeport-Sikorsky Airport Manager and the scrap metal-for-cash operation that purportedly led to his resignation as Bridgeport Director of Public Facilities.

Accordingly, the Court will grant in part and deny in part without prejudice to renewal at trial Mr. Ricci's motions to exclude evidence or questioning related to his resignation from the

position of Director of Public Facilities and his termination from the position of Bridgeport-Sikorsky Airport Manager.

### F. The Testimony of Shane Miller and Kathleen Graziano

Under Rule 26(a), a party must disclose to the other parties the identity of any expert witness it may use at trial, including a treating physician who will present an expert opinion. *See* Fed. R. Civ. P. 26(a)(2)(A). A party seeking to use a treating physician as an expert need not, however, provide a written expert report under Rule 26(a)(2)(B) because treating physicians are not "retained or specially employed to provide expert testimony in the case." *See* Fed. R. Civ. P. 26(a)(2)(B); *see also Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn. 2013) (collecting cases).

Nevertheless, even if an expert witness is not required to provide a report, the party who intends to call the witness must still comply with Rule 26(a)(2)(C) by disclosing "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-cv-0445 (PKC), 2013 WL 4046263, at *3 (E.D.N.Y. Aug. 8, 2013) ("Rule 26(a)(2)(C) applies to expert witnesses not covered by Rule 26(a)(2)(B).").

Thus, "[a] treating physician . . . who has not complied with the reporting requirement of Rule 26(a)(2)(B) . . . should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records." *Barack*, 293 F.R.D. at 109 (quoting *Lamere v. N.Y. State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004)). If a treating medical professional were asked to review materials "outside the four corners of her medical records" and to opine on issues beyond "what is reflected in those medical records," that medical professional would fall within the scope of Rule 26(a)(2)(B), and a written expert report would

20

be required. *Lamere*, 223 F.R.D. at 89 n.4. "[T]he treating physician may not introduce

information provided by other physicians to whom the Plaintiff may have been referred nor may

the doctor present any medical reports received from other physicians regarding the Plaintiff or

opine on any information provided by another doctor." *Barack*, 293 F.R.D. at 109 (internal

quotation marks omitted); *see also Williams v. Regus Mgmt. Grp.*, LLC, 10–cv–8987 (JMF),

2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012) ("Courts in this Circuit, however, have

regularly held that treating physicians may testify as to opinions formed during their treatment,

*including causation,* severity, disability, permanency and future impairments, without the

obligation to submit an expert report." (internal quotation marks omitted)); *Puglisi*, 2013 WL

4046263, at *6 (holding that a physician whose testimony had not been disclosed properly under

26(a)(2)(C) "may not testify as to facts acquired or opinions formed outside of the treating

physician role, including but not limited to information acquired during preparations for his

testimony at trial").

      Mr. Miller and Ms. Graziano are mental health professionals who treated Ms. Miro at the

Christian Counseling Center in Shelton, Connecticut. *See* Miller & Graziano MIL at 2. Ms. Miro

proposes to offer them as witnesses at trial to testify about "treatment, diagnosis, prognosis, and

causation pertaining to psychiatric, psychological and psycho-therapy treatment of Plaintiff."

Am. Joint Trial Mem. at 5. Ms. Miro has not disclosed Mr. Miller and Ms. Graziano as experts

under Rule 26. *See* Miller & Graziano MIL at 3.

      The City of Bridgeport now seeks to preclude Mr. Miller and Ms. Graziano from (1)

testifying about any matters outside their personal knowledge developed during their treatment

of Ms. Miro; (2) introducing any information provided by other treating professionals; (3)

opining or testifying about information or opinion provided by other mental health or medical

professionals; and (4) opining on hypotheticals offered by Ms. Miro's counsel. *See id.* at 1. Bridgeport argues that, because these witnesses were not disclosed as experts, they must testify as lay witnesses, and their testimony must be limited accordingly. *See id.* at 3.

The Court agrees.

The limits sought by the City of Bridgeport are consistent with the relevant principles noted above. Mr. Miller and Ms. Graziano will be permitted to offer opinions regarding their own treatment of Ms. Miro and reasonable reading of the medical records, including records obtained from other medical professionals to the extent they informed Mr. Miller's and Ms. Graziano's own treatment. These witnesses may not, however, offer opinions on any issues outside of their personal knowledge, opinions on information received from other medical professionals, or opinions in response to hypotheticals posed by counsel.

Accordingly, the Court will grant the City of Bridgeport's motion to limit the testimony of Mr. Miller and Ms. Graziano.

### G.  Mr. Ricci's Deposition Transcript

The City of Bridgeport seeks to preclude Ms. Miro from entering Mr. Ricci's deposition transcript into evidence. *See* Ricci Dep. MIL at 1. The City of Bridgeport argues that the deposition transcript may not be used as evidence under Federal Rule of Civil Procedure 32 because Mr. Ricci was not a City of Bridgeport employee at the time of his deposition. *See id.* at 3. The City of Bridgeport also argues that Mr. Ricci's deposition is hearsay that does not fall within any of the hearsay exceptions. *See id.* at 4–5.

The Court agrees.

Rule 32 provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or

designee." Fed. R. Civ. P. 32(a)(3). Here, Mr. Ricci's employment with Bridgeport ended in 2020, before he was deposed in this case. *See* Ricci Dep. MIL at 1. Thus, Mr. Ricci was not an officer, director, managing agent, or designee for Bridgeport "when deposed." Because his deposition does not fall within the scope of Rule 32(a)(3), Ms. Miro is not entitled to use the deposition "for any purpose." *See* Fed. R. Civ. P. 32(a)(3).

Furthermore, Mr. Ricci's deposition testimony does not fall under the hearsay exclusion as an opposing party's statement. Statements made by the party's agent or employee on a matter within the scope of the individual's agency or employment are not hearsay, *see* Fed. R. Civ. P. 801(d)(2)(D), but Mr. Ricci was not an agent or employee of the City of Bridgeport at the time he made the statements recorded in his deposition transcript.

Ms. Miro may, however, use Mr. Ricci's deposition transcript to impeach Mr. Ricci's testimony under Rule 32(a)(2).

Accordingly, the Court will grant the City of Bridgeport's motion to preclude Ms. Miro from using Mr. Ricci's deposition transcript as an exhibit.

### H.  The Connecticut Post Articles

"Newspaper articles are usually inadmissible hearsay." *Mandal v. City of New York*, No. 02-cv-1234 (WHP), 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006). "[T]he 'residual' or 'catch-all' exception to the hearsay rule," which is set forth in Rule 807, "provides a mechanism by which they may sometimes be admitted." *In re Columbia Sec. Litig.*, 155 F.R.D. 466, 474 (S.D.N.Y. 1994).

Rule 807 provides that a hearsay statement that does not qualify under any of the enumerated hearsay exceptions may be admitted if: "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was

made and evidence, if any, corroborating the statement; and (2) it is more probative on the point

for which it is offered than any other evidence that the proponent can obtain through reasonable

efforts." Fed. R. Evid. 807(a). Thus, courts evaluating hearsay statements offered under Rule 807

must balance the party's need for the evidence alongside the trustworthiness of the statements.

*See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238 (2d Cir. 1999) ("[W]e have often admitted

surveys that are relevant to prove material facts under the residual hearsay rule on the basis

simply of their need . . . plus adequate guarantees of trustworthiness." (internal quotation marks

omitted)).

The City of Bridgeport seeks to preclude the admission of two Connecticut Post articles

that Ms. Miro plans to introduce as evidence. *See* Lighthouse Article MIL at 1; Harassment

Article MIL at 1. The first article is dated June 30, 2017, and has the headline, "Letter: Praise for

Lighthouse program." Ex. 1 to Lighthouse Article MIL, ECF No. 182-1 ("Lighthouse Article").

The article appears to be a letter to the editor praising Ms. Miro from a parent whose daughters

participated in the Lighthouse program. *See id.* The second article is dated April 18, 2019, and

has the headline, "Sex harassment complaints filed against Bridgeport official whose department

is under FBI probe." Ex. 1 to Harassment Article MIL, ECF No. 190-1 ("Harassment Article").

This article discusses complaints filed by Ms. Miro and Ms. Goncalves with the CHRO. *See id.*

The City of Bridgeport argues that these articles are inadmissible hearsay and are not

relevant to the current litigation. *See* Lighthouse Article MIL at 1; Harassment Article MIL at 1.

The Court agrees.

The first article contains few guarantees of trustworthiness. The letter appears to be

written by a Bridgeport resident rather than a Connecticut Post reporter, and it is unclear to what

extent the content of the letter was edited or factchecked. Furthermore, the letter has only limited

relevance to the issues in this case. The letter praises Ms. Miro for her management of the Lighthouse program, but the City of Bridgeport argues that there is no dispute over "the job Ms. Miro did while working at the Lighthouse Youth Program." *See* Lighthouse Article MIL at 3. Ms. Miro was not allegedly terminated because of poor performance in this role. *See id.* at 1. To the extent that Ms. Miro's performance has any relevance to her claims in this case, it is limited. Thus, Ms. Miro's first article does not qualify for admission under the residual exception.

The second article discusses the complaints filed by Ms. Miro and Ms. Goncalves with the CHRO, as well as the responses filed by the City of Bridgeport in those proceedings. Although the article's repeated references to verifiable legal filings provide some indicia of reliability, Ms. Miro has not established that this article "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). The principal parties whose statements and claims are recounted in the article—Ms. Miro, Ms. Goncalves, and Mr. Ricci—are available to testify as witnesses, and Ms. Miro has not identified any information contained in the article that could not be presented through live testimony or non-hearsay exhibits instead.

Accordingly, the Court will grant the City of Bridgeport's motions to exclude the Connecticut Post articles.

### I.  Ms. Miro's Text Messages

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Second Circuit has "stated that the standard for authentication is one of 'reasonable likelihood' and is 'minimal.'" *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (first quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.

1999); and then quoting *United States v. Tin Yat Chin,* 371 F.3d 31, 38 (2d Cir. 2004)). "The testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient to satisfy this standard." *Id.*

Several of Ms. Miro's proposed exhibits contain what appear to be screenshots of text message conversations between her and Mr. Ricci or Mr. Roach. *See* Ex. 1 to Text Messages MIL, ECF No. 183-1 ("Text Messages"). The City of Bridgeport seeks to exclude these exhibits on the grounds that the text messages are not properly authenticated and that the content of the conversations is irrelevant. *See* Text Messages MIL at 1.

The Court disagrees.

With respect to the evidence challenged in this motion, "it is well established that, if properly authenticated (for example, by a witness with knowledge, such as a participant), screenshots of text messages and copies of electronic communications are admissible." *United States v. Avenatti,* 559 F. Supp. 3d 274, 281 (S.D.N.Y. 2021); *see also In re E.D.T. ex rel. Adamah v. Tayson*, No. 09-CV-5477 (FB), 2010 WL 2265308, at *3 n.4 (E.D.N.Y. May 28, 2010) ("Even if they were not independently authenticated by the service provider or by a forensic specialist, Adamah's testimony concerning the text messages was sufficient to establish their authenticity.").

Testimony by a witness with knowledge of an electronic communication may be sufficient to authenticate those communications even when they are presented in an altered format. In *Gagliardi*, the Second Circuit concluded that a defendant's "e-mails and transcripts of instant-message chats," which "were largely cut from his electronic communications and then pasted into word processing files," were properly authenticated when an informant and a Government agent "testified that the exhibits were in fact accurate records of Gagliardi's

conversations." 506 F.3d at 151. The court acknowledged that these transcripts could have been edited, but it nevertheless rejected the defendant's argument that "they were not originals and could have been subject to editing by the government" or "could even have been completely fabricated." *Id.*

As a result, Ms. Miro's testimony may be sufficient to support a finding that these purported records of text message conversations are what she claims they are. Ms. Miro appears to have been a participant in each of the conversations, and she may be able to testify to her familiarity with the contacts identified in the conversations, the process by which she obtained these screenshots, and any other issues required to authenticate the exhibits.

The City of Bridgeport also objects to the handwritten date notations included on almost all of Ms. Miro's exhibits. The City of Bridgeport is correct that these notations are hearsay to the extent that they assert that the conversations took place on a particular date. *See* Text Messages MIL at 7. Thus, the Court will require Ms. Miro to produce these screenshots without the accompanying handwritten annotations.[4]

Finally, the City of Bridgeport argues that these conversations are not relevant because they do not relate to Ms. Miro's allegations of a hostile work environment, because they do not show that Mr. Ricci or Mr. Roach prevented Ms. Miro from obtaining employment with the City, or because the conversations lack context. *See id.* at 3–6. Contrary to this argument, these exhibits are probative of Ms. Miro's efforts to obtain employment with the City, *see id.* at 4–7, 11, which relate to her allegation that Mr. Ricci promised her certain terms of employment. *See*

---

[4] To the extent that specific dates are necessary to authenticate the exhibits, Ms. Miro may be able to testify to her knowledge of when each conversation took place. Several of the exhibits, for example, contain a month, day, and time but not a year. *See* Text Messages at 5, 7, 9, 11, 13, 15. Given the limited time period in which the events at issue in this case took place, the Court expects that Ms. Miro would be able to recall the year, at least, in which these purported conversations occurred.

MSJ Order at 16 (describing these allegations). The text messages also shed light on the nature

of Ms. Miro's relationship with Mr. Ricci, which is central to the dispute in this case. *See* Text

Messages at 15–23. Although some of the messages contain unexplained references to other

matters or otherwise lack context, the Court will defer ruling on any relevance objections until

the appropriate context may be provided at trial.

Accordingly, the Court will deny the City of Bridgeport's motion to preclude the text

message exhibits without prejudice to renewal at trial.

### J.   Ms. Miro's Junior Council E-Mail

The City of Bridgeport seeks to preclude an e-mail sent by Ms. Miro in February 2017

while she was the Lighthouse program's Acting Youth Program Manager. *See* Junior Council E-

Mail MIL at 1; Ex. 1 to Junior Council E-Mail MIL, ECF No. 185-1 ("Junior Council E-Mail").

The e-mail discusses a Junior City Council program that Ms. Miro appears to have been involved

in organizing. *See* Junior Council E-Mail. The City of Bridgeport argues that the e-mail is

irrelevant to the issues in this case.

The Court disagrees, for now.

In the brief e-mail, Ms. Miro states that the Junior City Council program would begin that

evening, discusses some of the details of the program, and thanks the recipients for their

assistance with the program. *See id.* At the pre-trial conference, counsel for Ms. Miro indicated

that this e-mail is relevant to show Ms. Miro's job duties while employed by the City of

Bridgeport. To the extent this information is relevant, however, Ms. Miro will be able to testify

to her job responsibilities. Nonetheless, if Ms. Miro's credibility on this issue is challenged, the

e-mail may be relevant to bolster her testimony. Thus, the Court will address the admissibility of

this e-mail as it arises at trial.

Accordingly, the Court will deny the City of Bridgeport's motion to preclude the Junior
Council E-Mail without prejudice to renewal at trial.

### K. The State Agency Proceedings

Before initiating this action, Ms. Miro filed complaints related to the allegations in this
case with the CHRO and the SBLR. *See* State Agencies MIL at 1. Ms. Miro now seeks to
exclude evidence related to the proceedings and decisions of these agencies, as well as any
references to or mentions of these proceedings and decisions. *See id.* Ms. Miro argues that the
decisions of these agencies encompassed issues that are committed to the province of the jury in
this case and that admitting evidence of these decisions will result in unfair prejudice. *See id.* at
2–3.

In response, Bridgeport argues that evidence of the state agency decisions is admissible
because it falls within the public records exception to the rule against hearsay. *See* State
Agencies Opp'n at 2. Relying on *Accely v. Consolidated Edison Co. of New York, Inc.*, No. 19-
cv-5984 (DC), 2023 WL 3045795 (S.D.N.Y. Apr. 20, 2023), Bridgeport argues that these
decisions will not confuse or mislead the jury because this evidence is not dispositive and the
jury can be instructed to decide "based on all the evidence presented, whether to accept the
[agencies'] findings and whether to conclude that Defendants violated the law." State Agencies
Opp'n at 2 (quoting *Accely*, 2023 WL 3045795, at *3). Bridgeport also contends that barring any
mention of the state agency proceedings will prevent the City from challenging the timeliness
and consistency of Ms. Miro's contentions about Mr. Ricci's behavior and will hinder its ability
to test Ms. Miro's credibility on cross-examination.

The Court disagrees.

The City of Bridgeport is correct that, "[u]nless the sources of information or other circumstances indicate lack of trustworthiness," the findings of a state agency such as the CHRO "fall within the 'public records' exception to the hearsay rule." *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1998) (internal quotation marks omitted). "Generally, however, the fact that evidence is within an exception to the hearsay rule does not by itself make it admissible *per se*." *See id.* Courts must also consider whether state agency reports should be excluded under Rule 403 based on the risk of unfair prejudice or confusing the jury. *See City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (affirming the district court's holding "that the [state agency report] should be excluded under [Rule 403] because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value"); *Paolitto*, 151 F.3d at 65 ("We believe that the district court is in the best position to consider the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency.").

In evaluating such evidence, courts typically compare the evidence presented to the agency to that available to the jury at trial. In *Paolitto*, the Court upheld the district court's exclusion of a CHRO report in part because "the evidence Paolitto introduced at trial undercut many of the CHRO's factual findings." 151 F.3d at 65. Courts have also concluded that the probative value of state agency decisions is limited when the jury has access to the same evidence as the agency. *See id.* (noting that the defendant "had a full opportunity to present to the jury all the evidence it had submitted to the CHRO"); *Casmento v. Volmar Constr., Inc.*, No. 20-cv-0944 (LJL), 2022 WL 1094529, at *2 (S.D.N.Y. Apr. 12, 2022) ("There is no evidence that the agencies had information other than that which each party will be permitted to offer at

trial."); *Sulton v. Lahood*, No. 08-cv-2435 (PKC), 2009 WL 3815764, at *2 (S.D.N.Y. Nov. 6, 2009) ("Exclusion of an agency's determination is particularly appropriate where there is a 'likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compare[s] to the evidence considered by the agency.'" (alteration in original) (quoting *Paolitto*, 151 F.3d at 65)). Here, the City of Bridgeport has not identified any evidence that the CHRO considered in making its "no reasonable cause" determination that would not be available at trial.

Even when the agency's decision is relevant to the issues in the case, there is a substantial risk that the jury will give the decision too much weight and substitutes the judgment of the expert state agency for its own. *See Casmento*, 2022 WL 1094529, at *2 ("[B]ecause the agency findings amount to determination[s] on the merits, there is a heightened risk of unfair prejudice, and [t]he danger of jury confusion arises because jurors would not know what weight, if any, to give it." (second and third alterations in original) (internal quotation marks omitted)); *McClain v. Pfizer Inc.*, No. 3:06-cv-01795-VLB, 2010 WL 746777, at *2 (D. Conn. Mar. 1, 2010) (excluding OSHA decision as "evidence which invades the exclusive province of the jury" because the agency's decision reached "ultimate conclusions that a jury would have to make on its own"). This risk that the jury will give undue wait to a seemingly expert decision is amplified when the state agency's decision is merely preliminary or based on an abbreviated investigative process. *See Pullman Inc.*, 662 F.2d at 915 (excluding a state agency decision when "a close reading of the report makes it evident that the broad language did not embody the findings of an agency, but the tentative results of an incomplete staff investigation"); *Keene v. Hartford Hosp.*, 208 F. Supp. 2d 238, 243 (D. Conn. 2002) (excluding a CHRO probable cause finding because it was a "preliminary investigation into whether discrimination *could* have occurred" and "[t]he

findings and determination were subject to final review and hearing by a CHRO Hearing Officer"); *Casmento*, 2022 WL 1094529, at *2 ("The OSHA and EEOC findings, which are conclusory and subject to de novo review, thus have very little independent probative value.").

Applying these principles, courts in this District have consistently excluded decisions by the Connecticut CHRO at the "reasonable cause" stage. *See Doe v. Univ. of Conn.*, No. 3:09-cv-1071 (JGM), 2013 WL 4504299, at *19 (D. Conn. Aug. 22, 2013) (excluding a CHRO finding of no reasonable cause and collecting cases); *Keene*, 208 F. Supp. 2d at 243 (excluding a CHRO finding of reasonable cause); *Barlow v. Connecticut,* 319 F. Supp. 2d 250, 254 (D. Conn. 2004) (same); *Adams v. Yale–New Haven Hosp.,* No. 3:06-cv-1166 (HBF), 2008 WL 358644, at *4 (D. Conn. Feb. 8, 2008) (same).

The City of Bridgeport has offered no compelling reason to depart from these prior decisions. The case on which it relies, *Accely*, involved an investigation by the employer's internal Office of Diversity and Inclusion, rather than a state agency. *See* 2023 WL 3045795, at *1–2. Here, the imprimatur of the state agency heightens the risk that the jury will assign too much weight to the CHRO's or SBLR's findings. The City of Bridgeport also has not explained the nature of any inconsistencies between Ms. Miro's Complaint in this case and her complaints before the state agencies or how the timing of Ms. Miro's state agency complaints is relevant to the City's defense. Even if the decisions themselves are excluded, these other references to the state agency proceedings raise a significant risk of jury confusion and unfair prejudice because the jury would naturally wonder about the outcome of those proceedings and why Ms. Miro continues to pursue her claims in court. In light of this risk, the City of Bridgeport would have to

demonstrate that its proposed references to the state agency proceedings have substantial probative value. At this point, the City has not done so.[5]

Accordingly, the Court will grant Ms. Miro's motion to exclude all evidence of and references to her proceedings before the CHRO and the SBLR.

## IV.    CONCLUSION

For the foregoing reasons, the City of Bridgeport's motions *in limine* are **GRANTED in part** and **DENIED in part**, as explained further below. Ms. Miro's motion *in limine*, ECF No. 177, is **GRANTED**.

The City of Bridgeport's motion to preclude evidence related to Ms. Miro's damages analysis, ECF No. 171, is **DENIED without prejudice** to renewal at trial or in post-trial motions.

The City of Bridgeport's motion to exclude evidence related to Ms. Goncalves's alleged recordings of Mr. Ricci, ECF No. 172, is **DENIED as moot**.

The City of Bridgeport's motion to preclude Ms. Goncalves's unexecuted settlement agreement and any testimony or other evidence related to it, ECF No. 189, is **GRANTED**.

The City of Bridgeport's motion to preclude Nettie Mancuso from testifying, ECF No. 180, is **GRANTED in part**. The Court will preclude Ms. Mancuso from testifying in Ms. Miro's case-in-chief, but Ms. Mancuso may be called as a rebuttal witness if Mr. Ricci's testimony opens the door to evidence related to his alleged harassment of Ms. Mancuso.

---

[5] At the pre-trial conference, counsel for the City of Bridgeport argued that Ms. Miro's statements in her initial *pro se* Complaint in this case, which reference the CHRO and the SLRB, are relevant to show that she has attacked anyone involved in this proceeding, including individuals and entities that have tried to help her. Although the Court recognizes that this evidence may be relevant to the validity of Ms. Miro's claims against Mr. Ricci, the Court will exclude these statements in Ms. Miro's Complaint under Rule 403 based on the significant risk of unfair prejudice and jury confusion that would arise from any mention of the state agency proceedings.

The City of Bridgeport's motions to preclude evidence related to Mr. Ricci's resignation from the position of Bridgeport Director of Public Facilities and his termination from the position of Bridgeport-Sikorsky Airport Manager, ECF Nos. 173, 174, are **GRANTED in part** and **DENIED in part without prejudice** to renewal at trial. The Court may permit counsel for Ms. Miro to inquire into specific instances of Mr. Ricci's conduct relating to these separations on cross-examination under Rule 608(b). Before allowing such cross-examination, the Court will require counsel for Ms. Miro to indicate the specific conduct that would be the subject of the examination and establish that counsel has a good-faith basis for believing that this conduct occurred.

The City of Bridgeport's motion to limit the testimony of Mr. Miller and Ms. Graziano, ECF No. 179, is **GRANTED**.

The City of Bridgeport's motion to preclude Ms. Miro from entering Mr. Ricci's deposition transcript into evidence as an exhibit, ECF No. 181, is **GRANTED**.

The City of Bridgeport's motions to preclude two Connecticut Post articles related to Ms. Miro, ECF Nos. 182, 190, are **GRANTED**.

The City of Bridgeport's motion to preclude purported screenshots of text message conversations involving Ms. Miro, ECF No. 183, is **DENIED without prejudice** to renewal at trial. Ms. Miro must, however, offer these screenshots without the handwritten annotations.

The City of Bridgeport's motion to preclude an e-mail sent by Ms. Miro involving the Junior City program, ECF No. 185, is **DENIED without prejudice** to renewal at trial.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of August, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE