## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA MIRO,<br>　　　*Plaintiff*,<br><br>　　　v.<br><br>CITY OF BRIDGEPORT,<br>　　　*Defendant.* | No. 3:20-cv-346 (VAB) |

## RULING AND ORDER ON MOTION FOR ATTORNEY'S FEES AND A HEARING ON ECONOMIC DAMAGES

Lisa Miro ("Plaintiff") sued the City of Bridgeport ("Defendant"), asserting claims for sex-based employment discrimination under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA"). *See* Am. Joint Suppl. Trial Management Report, ECF No. 191 ("Am. Joint Trial Mem.").

Following trial, a jury returned a verdict in favor of Ms. Miro on her hostile work environment claim, but in favor of the City of Bridgeport on her quid pro quo sexual harassment claim. Jury Verdict, ECF No. 226 ("Jury Verdict").

Ms. Miro now moves for a hearing on economic damages and for attorney's fees. Mot. for Hearing, ECF No. 232 ("Mot. for Hearing"); Mot. for Atty's Fees, ECF No. 233 ("Mot. for Atty's Fees"); Supp. Mot. for Atty's Fees, ECF No. 242 ("Supp. Mot. for Atty's Fees").

For the following reasons, Ms. Miro's motion for a hearing on economic damages is **DENIED**. Ms. Miro's motions for attorney's fees are **GRANTED**, and the Court awards Ms. Miro **$87,080**.

## I.　　FACTUAL AND PROCEDURAL BACKGROUND

The Court presumes the parties' familiarity with the factual and procedural history of this case and addresses only the aspects relevant to the pending motions.

On August 11, 2023, a jury returned a verdict in favor of Ms. Miro as to her hostile work environment claim and in favor of the City of Bridgeport as to Ms. Miro's quid pro quo sexual harassment claim. Jury Verdict at 1.

On August 25, 2023, Ms. Miro filed a motion for a hearing on economic damages. Mot. for Hearing.

Also on August 25, 2023, Ms. Miro filed a motion for attorney's fees and litigation costs. Mot. for Atty's Fees.

On September 1, 2023, Ms. Miro filed a supplemental affidavit in support of her motion for attorney's fees. Supp. Aff. in Support of Mot. for Atty's Fees, ECF No. 236.

On September 21, 2023, the City of Bridgeport filed an objection to Ms. Miro's motion for attorney's fees. Obj. to Mot. for Atty's Fees, ECF No. 238 ("Def.'s Obj.").

Also on September 21, 2023, the City of Bridgeport filed a memorandum in opposition to Ms. Miro's motion for a hearing on economic damages. Mem. in Opp'n to Pl.'s Mot. for Hearing, ECF No. 239 ("Opp'n").

On October 6, 2023, Ms. Miro filed a reply in response to the City's memorandum in opposition to her motion for a hearing on economic damages. Reply in Support of Mot. for Hearing, ECF No. 240 ("Reply in Support of Mot. for Hearing").

Also on October 6, 2023, Ms. Miro filed a reply in response to the City's objection to her motion for attorney's fees and a supplemental motion for attorney's fees. Reply in Support of Mot. for Atty's Fees, ECF No. 241 ("Reply in Support of Mot. for Atty's Fees"); Supp. Mot. for Atty's Fees.

On October 19, 2023, the City of Bridgeport filed a memorandum in opposition to Ms. Miro's supplemental motion for attorney's fees. Mem. in Opp'n to Supp. Mot. for Atty's Fees, ECF No. 243 (Opp'n to Supp. Mot. for Atty's Fees).

## II.    DISCUSSION

### A.  The Motion for Hearing on Economic Damages

"Title VII authorizes front pay and back pay as potential remedies for unlawful employment practices." *Pace v. Town & Country Veterinary Clinic P.C.*, No. 3:20-CV-279 (GLS/ML), 2022 WL 3027157, at *4 (N.D.N.Y. Aug. 1, 2022) (citing 42 U.S.C. § 2000e-5(g)(1); *Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012).

The City of Bridgeport argues, however, that Ms. Miro's successful claim—her hostile work environment claim—does not warrant the awarding of economic damages because of the jury's verdict on her unsuccessful claim, her quid pro quo sexual harassment claim. Opp'n at 3.

In response, Ms. Miro argues that she is entitled to economic damages because she alleged loss of income as a part of her hostile work environment claim and because evidence was introduced at trial of her termination, which resulted in a pecuniary loss. Reply in Support of Mot. for Hearing at 2; *see also* Rev. Compl. ¶ 13, ECF No. 43 ("Rev. Compl.") ("As a result of the Defendant's creation of a hostile work environment[,] the Plaintiff has suffered psychological damages, loss of income, costs and fees.").

The Court disagrees.

The Court instructed the jury that: "if you find that the City of Bridgeport is liable to Ms. Miro on her hostile work environment or quid pro quo harassment claims, you are not to award damages for the amount of wages or benefits that Ms. Miro would have earned but for the

unlawful conduct. That is called 'back pay,' and it is for the Court, not the jury, to decide." Post-Trial Jury Instructions at 20–21, ECF No. 219 ("Post-Trial Jury Instructions"). The jury found for Ms. Miro on her hostile work environment claim, but for the City of Bridgeport on the quid pro quo harassment claim. *See* Jury Verdict. The remaining question is thus whether "back pay" is available to Ms. Miro on her hostile work environment claim alone, notwithstanding the jury's contrary verdict on her quid pro harassment claim. The answer is no.

"Back pay awards are designed to compensate 'for what the employee . . . would have earned had he [or she] not been discharged.'" *Dymskaya v. Orem's Diner of Wilton, Inc.*, No. 3:12-CV-00388 JAM, 2015 WL 1038394, at *7 (D. Conn. Mar. 10, 2015) (quoting *Kirsh v. Fleet St., Ltd.,* 148 F.3d 149, 166 (2d Cir. 1998) (other citations omitted). "The Second Circuit has repeatedly held that an inquest as to back pay must focus on the 'losses suffered as a result of defendant's discrimination (*i.e.,* from the date of termination until the date of judgment).'" *Id.* (citations and internal quotation marks omitted) (emphasis omitted). And "it is difficult to understand how a judge or a jury could even calculate back pay damages in the absence of a discharge, termination, or other adverse employment action that resulted in pecuniary loss." *Id.* at 9.

Indeed, "a hostile work environment claim does not require the existence of any tangible adverse employment action; all that is required is the existence of a discriminatory and abusive work environment." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Just as importantly, in this case, the jury refused to find for Ms. Miro on her quid pro quo sexual harassment claim, the claim which required a finding of an adverse employment action, as one of only two elements. *See* Post-Trial Jury Instructions at 17–18 ("To establish a claim under this approach, Ms. Miro must prove, by a preponderance of the credible evidence, each of the

following elements: 1. That Ms. Miro's [sic] was subject to unwelcome sexual conduct; and 2. That her reaction to that conduct was used as a basis for an adverse employment action."); *see id.* at 18 ("A tangible employment action constitutes a significant change in employment status, such aa hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Consistent with the law, at least as reflected in numerous rulings by courts within the Second Circuit, if not the Second Circuit itself, other Circuit Courts around the country, as well as leading treatises, Ms. Miro's failure to prevail on her quid pro quo sexual harassment claim, the one with an adverse employment action component specifically addressing any alleged unlawful termination, leaves her without a viable remedy flowing from this alleged unlawful termination, even though she prevailed on her hostile work environment claim.[1] *See Dymskaya v. Orem's Diner of Wilton, Inc.*, 2015 WL 1038394, at *9–10 (collecting cases and black letter law from secondary sources); *see also Locicero v. New York City Transit Authority,* No. 06-CV-4793 (FB)(JO), 2010 WL 5135875 at *5 ("[T]hree courts of appeal have concluded that lost wages are not available as damages in the context of a meritorious hostile-work environment claim without a finding of wrongful termination" (citation omitted)). As a result, no hearing on Ms. Miro's alleged economic damages is necessary.

Accordingly, the Court will deny Ms. Miro's motion for a hearing on economic damages.

### B.  The Motion for Attorney's Fees and Litigation Costs

In Title VII actions, the "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-

---

[1] Significantly, Ms. Miro's alleged economic damages on her hostile work environment claim, including any "alleged loss of income," Mot. for Hearing at 2, are inextricably linked to an "adverse employment action." *Id.*; *see id.* ("The adverse employment action taken by the Defendant terminating the Plaintiff's position, resulted in a pecuniary loss.").

5(k). "The Supreme Court has held that a 'prevailing party' is one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought.").

Ms. Miro requests attorney's fees in the amount of $93,080 for the work of an attorney at a rate of $400 per hour. Mot. for Atty's Fees at 1, 11. The requested amount includes $3,200 for eight hours counsel spent preparing the motion for attorney's fees. Supp. Mot. for Atty's Fees at 3.

The City of Bridgeport does not contest that Ms. Miro is entitled to attorney's fees, nor does it contest that the $400 hourly rate is reasonable. Obj. at 3. The City of Bridgeport does, however, contest that Ms. Miro's counsel, Daly, Weihing & Bochanis, LLC, has expended a reasonable number of hours during this litigation. *Id.*

First, the City of Bridgeport argues that the Court should reduce the number of reasonable hours by fifteen hours because the request for attorney's fees includes fifteen hours spent on Ms. Miro's action pending in state court. Obj. at 4–5; Mot. for Atty's Fees, Bochanis Aff. at 22, 26 ("Bochanis Aff.").

Ms. Miro does not respond to this argument.

Second, the City of Bridgeport also argues that Ms. Miro's award of attorney's fees should be reduced to "exclude hours dedicated to severable unsuccessful claims." Obj. at 5.

6

In response, Ms. Miro argues that no reduction of fees is warranted as her unsuccessful claims were inextricably intertwined with her successful claim.

The Court agrees with the City of Bridgeport's first argument, but disagrees with its second one.

"A district court determines the proper amount of an attorney's fees award by multiplying 'all reasonable hours' expended by the prevailing party's attorney by a 'reasonable hourly rate.'" *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (emphasis omitted) (quoting *Di Filippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985)). "In calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Id*. (quoting *Di Filippo*, 759 F.2d at 236). Because Ms. Miro should not be awarded attorney's fees for work done on another litigation, the Court will reduce the number of reasonable hours by fifteen hours. *See Arclightz & Films Pvt. Ltd. v. Sheth*, No. 01-CV-7643 (DEW) (SMG), 2008 WL 11411314, at *3 (E.D.N.Y. Oct. 3, 2008) (finding that a slight reduction was warranted where plaintiff's counsel failed to subtract all entries related to work done on another litigation), *report and recommendation adopted*, No. CV 01-7643, 2008 WL 11411315 (E.D.N.Y. Dec. 10, 2008).

But "[t]he law in the Second Circuit is clear that a plaintiff may recover attorney's fees for 'hours spent on [the] unsuccessful claims . . . if the claims are inextricably intertwined and involve a common core of facts.'" *Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 338–39 (E.D.N.Y. 2014), *judgment entered sub nom. Douyon v. N.Y. Med. Health Care*, P.C., No. CV 10-3983 AKT, 2015 WL 5821499 (E.D.N.Y. Sept. 30, 2015) (quoting *Reiter v. Metro. Transp. Auth. of the State of N.Y.*, No. 01 Civ. 2762, 2007 WL 2775144, at *13 (S.D.N.Y. Sept.

25, 2007)). In other words, the "lodestar should not be adjusted downward to account for the related unsuccessful claims" where all claims "involve a common core of facts or were based on related legal theories[.]" *Aiello v. Town of Brookhaven*, No. 94-CV-2622(FB) (WDW), 2005 WL 1397202, at *4 (E.D.N.Y. June 13, 2005) (internal quotation marks omitted) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998)).

Ms. Miro's Revised Complaint includes five causes of action, all of which relate to John Ricci's alleged unwanted sexual conduct.[2] *See Otero*, 2003 WL 22288647, at *2 ("The original claims all revolve around an accusation of theft and termination resulting from such accusation."); *see also* Rev. Compl. As to Count Two of the Revised Complaint, Ms. Miro's hostile work environment claim under Title VII was not factually or legally distinct from her hostile work environment claim under the Connecticut Fair Employment Practices Act ("CFEPA"). *See Martinez v. Connecticut, State Libr.*, 817 F. Supp. 2d 28, 55 (D. Conn. 2011) ("The standards governing discrimination, retaliation, and hostile work environment under CFEPA are the same as those governing Title VII.").

And although Ms. Miro alleged additional facts in pleading Counts Three through Five of her Revised Complaint, as required by the legal theories relied on, those counts were not predicated on a discrete or distinct set of facts. *Otero*, 2003 WL 22288647, at *2 ("Defendants in no way argue that the individual counts involve discrete factual predicates . . . ."); *cf. Chauca v.*

---

[2] In Count One of her Revised Complaint, Ms. Miro alleged that John's Ricci's unwanted sexual conduct created a hostile work environment in violation of Title VII. Rev. Compl. ¶¶ 5–14. In Count Two, Ms. Miro alleged that John's Ricci's unwanted sexual conduct created a hostile work environment in violation of the Connecticut Fair Employment Practices Act. Rev. Compl. ¶¶ 15–19. In Count Three, Ms. Miro alleged that Ms. Miro's denial of John Ricci's unwanted sexual conduct was used as a basis for the decision to deny Ms. Miro a salary, benefits, and unionization allegedly promised to her constituting quid pro quo sexual harassment. Rev. Compl. ¶¶ 20–28. In Count Four, Ms. Miro alleged that she was terminated as a result of her complaining about John Ricci's unwanted sexual conduct in violation of Title VII. Rev. Compl. ¶¶ 29–33. In Count Five, Ms. Miro alleged that she was terminated as a result of her complaining about John Ricci's unwanted sexual conduct in violation of the Connecticut Fair Employment Practices Act. Rev. Compl. ¶¶ 34–35.

*Park Mgmt. Sys.*, LLC, No. 10-CV-05304 (ENV) (RER), 2016 WL 8117953, at *3 (E.D.N.Y. July 18, 2016) ("[W]here claims 'distinct in all respects' are pursued, no fees should be awarded for unsuccessful claims."). Under the applicable legal standard, this Court must "consider whether the legal theories are related, not whether they raise identical legal issues." *Holick v. Cellular Sales of New York*, LLC, 48 F.4th 101, 107 (2d Cir. 2022), *cf. Aiello*, 2005 WL 1397202, at *4 (finding deductions appropriate where it was "not difficult for the Court to divide the hours expended on a claim-by-claim basis" and where the plaintiffs' unsuccessful state law claims were not shown to be inextricably intertwined with their federal cause of action, which the plaintiffs had already prevailed on when "they began focusing their efforts on the state-law claims").

Here, Ms. Miro's claims do involve a common core of facts or related legal theories, militating against reducing her award of attorney's fees. *See Douyon*, 49 F. Supp. 3d at 339 (finding that the plaintiff's deceptive and unlawful practices, intentional infliction of emotional distress, and slander claims were "necessarily interconnected" with her negligence and negligent hiring, retention, training and supervision claims as they were all rooted in the defendants' attempts to collect a medical debt allegedly owed by the plaintiff); *see also Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996) ("The question of attorneys' fees, including fees with respect to unsuccessful claims, is an issue left to the discretion of the district court.").

Accordingly, the Court will award Ms. Miro the attorney's fees requested—including the amount requested for counsel's preparation of the motion for attorney's fees[3]—reduced by the fifteen hours spent litigating her state court action, totaling $87,080.

---

[3] *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (stating that the plaintiff was "entitled to attorney's fees for time reasonably spent in . . . defending his initial fee application.").

**III.     CONCLUSION**

For the foregoing reasons, Ms. Miro's motion for a hearing on economic damages is

**DENIED**. Ms. Miro's motions for attorney's fees are **GRANTED**, and the Court awards Ms.

Miro **$87,080**.

**SO ORDERED** at New Haven, Connecticut, this 26th day of January, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE